IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------X

ESTER LELCHOOK, individually and as personal representative of the Estate of David Martin Lelchook; MICHAEL LELCHOOK; YAEL LELCHOOK; ALEXANDER LELCHOOK; AND DORIS LELCHOOK,

               Plaintiffs,

               - against -

THE ISLAMIC REPUBLIC OF IRAN; THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN (a/k/a Bank Markazi Jomhouri Islami Iran); BANK SADERAT IRAN; AND BANK SADERAT, PLC,

               Defendants.

-------------------------------------------------------------------X

Case No: 1:15-CV-13715 (PBS)

ORAL ARGUMENT ORDERED

**MEMORANDUM OF LAW OF BANK SADERAT PLC IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT (D. MASS.) FOR LACK OF PERSONAL JURISDICTION**

PEPPER HAMILTON LLP
Jeremy D. Frey (pro hac vice)
William Taylor (BBO#624981)
125 High Street
19th Floor, High Street Tower
Boston, MA 02110
617.204.5100

*Attorneys for Bank Saderat PLC*

#40748509 v8

In a seven count first amended complaint ("complaint" or "FAC") in the District of Massachusetts, plaintiffs seek recovery from defendant Bank Saderat PLC ("BSPLC") under the Anti-Terrorism Act (18 U.S.C. § 2333(a)) ("ATA") (counts 3 and 4) and Israeli and Massachusetts tort law (counts 5-7) for injuries arising from the tragic death of David Lelchook during the Second Lebanon War in Israel.[1] Plaintiffs seek damages for wrongful death, personal injury and other claims.

BSPLC is a bank incorporated in England and Wales, and is a wholly-owned subsidiary of the private Iranian commercial bank Bank Saderat Iran ("BSI"). BSPLC denies the complaint's allegations and moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(2).[2]

A. Introduction

As we have noted in other documents filed in this case, the same plaintiffs filed essentially the same complaint against BSPLC in the District of Columbia in 2010 as a closely related case to *Kaplan v. Central Bank*, Civ. No. 10-483 (D.D.C. 2010). In *Kaplan v. Central Bank*, 961 F. Supp. 2d 185 (D.D.C. 2013), the Court ruled that the ATA's act of war ("AOW") limitation barred those plaintiffs' ATA claims, and dismissed the other supplemental jurisdiction counts against BSPLC. The D.C. *Lelchook* case, which presented these plaintiffs' claims, was essentially identical to *Kaplan*, and had been stayed pending rulings in *Kaplan*. Since the Court in *Kaplan* resolved the ATA claims on the AOW limitation (as well as resolving all other claims against BSPLC and BSI), the *Lelchook* complaint was dismissed on the merits and with prejudice. No appeal was ever taken, and no defendant was ever served, though a first amended

---

[1] BSPLC is not joined in counts 1 or 2, which are FSIA counts against governmental entities.

[2] As directed by the Court (Docket #79), BSPLC is bringing only its Rule 12(b)(2) motion at this time. BSPLC preserves and does not waive any of its other defenses in this case, including all those under Fed. R. Civ. P. 12 and otherwise, which shall be moved and presented, if at all, as may be subsequently ordered by the Court.

*Lelchook* complaint was re-filed in D.C. in 2014, and ultimately dismissed again by the Court in 2015. Then the present *Lelchook* action was again filed, for the third time, but in the District of Massachusetts. Because re-filing *Lelchook* in Massachusetts is intended to seek a different ruling to the final judgment of the Court in D.C., BSPLC moved to transfer *Lelchook* back to D.C. where it had been dismissed on the merits, which was denied. After the Court ordered BSPLC to bring any Rule 12(b)(2) motion,[3] plaintiffs filed their Massachusetts FAC (the fourth version of the complaint) on September 9, 2016, and the current motion follows.

  B. <u>No Personal Jurisdiction over BSPLC in Massachusetts</u>

There is no personal jurisdiction over BSPLC in Massachusetts. The Supreme Court's recent decision in *Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115 (2014), makes clear that constitutional limitations on specific personal jurisdiction require, in this context, more than allegations of adverse effects upon residents of the forum. This case involves the tragic death of a U.S. citizen, Mr. Lelchook, in Israel occurring during a foreign conflict known as the Israel–Lebanon War and Second Lebanon War. *Kaplan v. Central Bank*, 961 F. Supp. 2d at 203. The complaint alleges that Mr. Lelchook was injured in the course of hostilities from a barrage of rockets and missiles fired by Hezbollah in Lebanon at northern Israel. These facts and the alleged conduct of BSPLC in providing indirect overseas financial services to "Hezbollah fronts" provide no basis for personal jurisdiction in the U.S.

---

[3] In denying BSPLC's transfer motion, on August 9, 2016 the Court directed that briefs on BSPLC's Rule 12(b)(2) motion be filed within 14 days, be limited to 10 pages, and with no reply brief to be filed. After the FAC was filed by plaintiffs on September 9, 2016, the Court entered its scheduling order and provided for a reply and sur-reply. Since no mention was made of page length in the Court's scheduling order and in light of the FAC being filed, for this brief BSPLC has employed the customary page length limits provided by the local rules. We trust this is in accordance with the Court's expectations.

To establish personal jurisdiction over a defendant, due process requires a plaintiff to establish (1) that a defendant has certain minimum contacts with the forum and (2) that the exercise of jurisdiction is reasonable. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Here, personal jurisdiction over BSPLC depends on applicable constitutional due process principles regarding specific personal jurisdiction.[4]

In their filings, plaintiffs have acknowledged that to acquire specific personal jurisdiction, they must employ the national contacts test for any chance of success. Plaintiffs' Memorandum of Law, Docket #30 at p. 2. This means the Court (and the parties) may dispense with analysis of Massachusetts' long-arm statute otherwise required under Fed. R. Civ. P. 4(k)(1) as moot. A Massachusetts long-arm analysis would be limited to whether there are minimum contacts in Massachusetts. *See Sawteelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Accordingly, the issue of personal jurisdiction must be addressed under Rule 4(k)(2), which requires a plaintiff to establish that a defendant's contacts with the nation as a whole satisfy applicable constitutional requirements. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999); *In re Terrorist Attacks on Sept. 11, 2001*, 392 F. Supp. 2d 539, 557 (S.D.N.Y. 2005).

The inquiry here is whether (1) the claim "directly arise[s] out of, or relate[s] to, the defendant's forum activities;" (2) defendant's in-forum contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of that [forum's] law and making the defendant's involuntary presence

---

[4] Plaintiffs do not assert BSPLC is subject to the Court's general personal jurisdiction, nor could they. BSPLC is a U.K. incorporated bank that resides in the U.K. and has been barred from all unlicensed dealings with U.S. persons since about 1987, pursuant to the U.S. trade sanctions program. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014); *see also* Plaintiffs' Submission, Docket #47 at pp. 7-8 (claiming specific personal jurisdiction over BSPLC); FAC at ¶¶ 15, 16 (alleging specific personal jurisdiction).

before the courts foreseeable;" and (3) the exercise of jurisdiction is reasonable. *C.W. Downer v. Bioriginal Food*, 771 F.3d 59, 65 (1st Cir. 2014). *See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Under Rule 12(b)(2), plaintiffs have the burden of making a *prima facie* showing of personal jurisdiction. *U.S.S. Yachts, Inc., v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990). In that context, the Court is also not to "credit conclusory allegations or draw farfetched inferences." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

Specifically, to establish purposeful availment for minimum contacts, plaintiffs advance that BSPLC and its co-defendants expressly aimed their subject tortious conduct at the United States. FAC ¶ 15. They rely here, in short, on the so-called "effects test" of specific personal jurisdiction. *See* Plaintiffs' Submission, Docket #47 at pp. 7-8. This theory, however, does not provide any basis for specific personal jurisdiction over BSPLC in *Lelchook*.

In the litigation surrounding the September 11 terrorist attacks, the Second Circuit considered what constitutes purposeful direction of activity at the forum in its ruling affirming the dismissal under Rule 12(b)(2) of ATA and other claims brought against foreign individuals and institutions alleged to have financed the terrorist organization al Qaeda. *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 674 (2d Cir. 2013). In *O'Neill*, plaintiffs sued, among others, financial institutions and individual bank personnel for allegedly providing financial services to al Qaeda and al Qaeda front charities. The chain of interference was the same as here: the provision of alleged material support by financial institutions in indirectly supplying financial services to a terrorist organization ultimately produced U.S. injuries from terrorist acts.

The Second Circuit dismissed the claims against the banks and others for lack of personal jurisdiction. Citing *Calder v. Jones*, 456 U.S. 783, 789 (1984), the Court noted that plaintiffs were required to establish that defendant "expressly aimed intentional tortious acts at residents of the United States." *O'Neill*, 714 F.3d at 674. Regardless of bald assertions in the complaint, the Court found that allegations of "[p]roviding indirect funding to an organization that was openly hostile to the United States does not constitute this type of intentional conduct" that can give rise to personal jurisdiction. *Id*. at 675. It went on to elaborate, that "[i]t may be that, but for access to financial institutions, al Qaeda could not have funded its terrorist attacks. But that does not mean that [they] 'purposefully directed'" their activities to New York. *Id*. The Court cited with approval the proposition that "we decline to say. . . that the provision of financial services to an entity that carries out a terrorist attack on [U.S.] citizens could make [a defendant]. . . subject to the jurisdiction of American courts." *Id*. at 676.

The argument against jurisdiction is stronger in this case than *O'Neill*, since *O'Neill* - unlike *Lelchook* - involved attacks on U.S. citizens in New York. As such, personal jurisdiction over BSPLC is denied in this case under the reasoning of *O'Neill*. *See also In re Terrorist Attacks on September 11, 2001*, 538 F.3d 71 (2d Cir. 2008) (abrogated on other grounds); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) (embracing *O'Neill* and *In Re Terrorist Attacks* as being insufficient under the effects test); *Waldman v. PLO*, 2016 U.S. App. LEXIS 16089, *46 (2d Cir. Aug. 31, 2016) (same).

Since *O'Neill*, BSPLC's claim that there is no personal jurisdiction over it has grown stronger after *Walden v. Fiore*, 134 S. Ct. 1115 (2014). In *Walden*, the Court revisited *Calder* and, while affirming and embracing the result in *Calder*, qualified and limited *Calder's* reach. *Walden* involved the seizure of funds in Georgia by a DEA agent from a Nevada resident.

-5-

The DEA agent later prepared an affidavit relating to the seizure that the plaintiff asserted was false. The DEA agent was sued in Nevada. The Court found that that there was no personal jurisdiction over the defendant in Nevada. In doing so, the Court clarified several points regarding minimum contacts. First, "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. at 1121. Second, "the relationship must arise out of contacts that the '*defendant himself*'" has with the forum. *Id*. at 1122 (emphasis in original). Third, the minimum contacts analysis "looks to the defendant's contacts with the [forum] itself, not the defendant's contacts with persons who reside there." *Id*. As a result, the Court overturned the Ninth Circuit's ruling under *Calder* that petitioner had "expressly aimed" his conduct with knowledge that the conduct would affect persons with a significant connection to Nevada. *Id.* at 1118.

       The *Walden* Court reviewed its earlier decision in *Calder* and found it consistent with these principles in part because *Calder's* defendant had direct forum contacts other than just the effects of tort on the plaintiff, including phone calls to California sources and writing the libelous story in California. *Id.* at 1123. In overturning the Ninth Circuit, *Walden* was also careful to limit the importance of *Calder's* outcome to its facts: "The crux of *Calder* was that the reputation based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort." *Id.* at 1123-24. "C*alder* made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 1123; *Skyworks Solutions, Inc. v. Kinetic Techs. HK Ltd,* No. 13-10655-GAO, 2015 U.S. Dist. LEXIS 13209, at *9-11 (D. Mass. Feb. 4, 2015)(same).

-6-

Plaintiffs' theory of personal jurisdiction in FAC ¶ 15 rests on the effects upon U.S. citizens of conduct occurring outside the United States. Under *Walden*, this is not sufficient for personal jurisdiction. *See also Waldman v. PLO*, 2016 U.S. App. LEXIS 16089, *42-46 (2d Cir. Aug. 31, 2016). Further, under the effects test as limited by *Walden*, there is no basis for finding specific personal jurisdiction over BSPLC because there is no basis for finding that BSPLC's alleged conduct created a "substantial connection" with the forum. *Id.* at 1121 (defendant's conduct must create "substantial connection with the forum"). This case "arises from the terrorist murder of [Mr. Lelchook….] on August 2, 2006. On that date [Mr. Lelchook] was riding his bicycle at Kibbutz Saar in Israel, when he was struck by a rocket fired from Lebanon by the Hezbollah terrorist organization (hereinafter the 'Rocket Attack'). The Rocket Attack was one of thousands of rocket and missile attacks against civilians in Israel carried out by Hezbollah between July 12 and August 14, 2006." FAC at ¶ 1. For its part, BSPLC is alleged to have provided financial services, with other defendants, to enable and cause "Hezbollah to carry out terrorist attacks against American and Israeli targets in order to advance Iran's Policy and Goals." *Id*. at ¶ 110. Defendants are alleged to have acted with the specific intent and purpose of "intimidating and influencing the United States government and public and thereby weakening, harming and undermining the United States…." *Id.* In short, plaintiffs' basis for personal jurisdiction is that the Rocket Attacks were part of the defendants' expressly aimed conduct at the United States.

This claim, however, does not allow this Court to conclude that defendant's conduct connects it to the forum in the "substantial" way required by *Walden*. The Rocket Barrage involved a cross-border exchange of munitions between Lebanon and Israel, and did not involve the United States. As alleged, the Rocket Barrage involved thousands of rockets and

missiles fired from Lebanon into northern Israel. That some among those unfortunately injured and killed by the Rocket Barrage were U.S. citizens such as Mr. Lelchook provides no tangible basis for any inference that the conduct was expressly aimed at this forum. The opposite is true. Launching missiles from a foreign nation into the territory of another foreign nation provides no basis for any inference of purposeful availment. *See Waldman v. PLO*, 2016 U.S. App. LEXIS 16089, *45-47 (2d Cir. Aug. 31, 2016) (that "U.S. citizens might be wronged in a foreign country" does not comport with *Walden*).

Further, *Walden* is explicit that focus on the defendant's knowledge of possible effects upon a forum resident is impermissible, as this improperly shifts "the analytical focus from petitioner's contacts with the forum to his contacts with respondents. Rather than assessing petitioner's own contacts with Nevada, the Court of Appeals looked to petitioner's knowledge of respondents' 'strong [Nevada] connections'….This approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." 134 S. Ct. at 1124-1125.

*Walden* makes clear that the question is not whether the defendant's conduct created a substantial connection to the forum's residents, but to the forum itself. Surely the plaintiffs do not seriously allege that there is jurisdiction over BSPLC arising from injuries sustained during an overseas armed conflict between military forces because one of the combatants is a national ally of the United States. The focal point of the conflict at issue was Israel and surely not the United States. Indeed, the Rocket Barrage which is the subject of this case involved acts of war involving Israel as part of an armed conflict between foreign military forces. *Kaplan v. Central Bank*, 961 F. Supp. 2d 185, 203 (D.D.C. 2013) (applied to the D.C.

-8-

*Lelchook* case). *Compare Mwani v. Bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) (reversing trial court and finding purposeful availment where subject of bombing was American embassy in Kenya).

On the issue of purposeful availment, the very context of the conflict is instructive. As found by the Court in *Kaplan* and *Lelchook*, the subject conflict began when "Hezbollah militants entered Israeli territory from Lebanon and kidnapped and killed several Israeli soldiers." *Kaplan*, 961 F. Supp. 2d at 189. Thereafter, "Israeli military forces entered Lebanese territory in response and instituted a bombing campaign. The United Nations brokered a cease fire ending the conflict on August 14, 2006." *Id.* These facts supply no inferential basis for BSPLC's conduct being substantially connected to the forum as required.

Further, *Walden* made clear that personal jurisdiction may not be based on a defendant's random, fortuitous or attenuated contacts with the forum. 134 S. Ct. at 1123. There is simply no basis for finding that the tort against Mr. Lelchook in Israel, and the family's derivative causes of action, arising from his tragic proximity to a falling missile can provide a basis for purposeful availment as to BSPLC. *See also Waldman v. PLO*, 2016 U.S. App. LEXIS 16089, *43-44 (2d Cir. Aug. 31, 2016).

The attenuated cause of action here against BSPLC arising from the tort against Mr. Lelchook can supply no basis for personal jurisdiction. This is not a case about personal jurisdiction over Hezbollah or even Iran, but of an alleged overseas provider of financial services remote from the conflict and the claimed torts. This is precisely why the holdings in *In re Terrorist Attacks, O'Neill* and *Waldman* govern. Specifically, the *Lelchook* FAC (¶¶ 111-112) alleges that, according to government sources, Iran and CBI forwarded dollar denominated funds to BSI (BSPLC's corporate parent), which forwarded them to BSPLC in the U.K., which forwarded them to BSI in Lebanon, which made them available in Lebanon to "Hezbollah

-9-

fronts." The Second Circuit has already twice held that "providing indirect funding to an organization that was openly hostile to the United States does not constitute this type of intentional conduct" for purposes of personal jurisdiction. *See In re Terrorist Attacks*, 538 F.3d at 95-96; *Waldman*, 2016 U.S. App. LEXIS 16089, *47-48.

In this regard, the attenuation of plaintiffs' theory for purposes of personal jurisdiction is fatal for finding personal jurisdiction as to BSPLC. After all, the complaint does not even allege with any support that BSPLC engaged in any transfer of funds to Hezbollah (as compared to transferring funds to BSI or "fronts"), much less commanded, directed or participated in the attack at issue. FAC ¶¶ 112, 113. In accord *In Re Terrorist Attacks,* 538 F.3d at 94-95 (no allegation Four Princes directed or commanded attacks; plaintiffs instead "rely on causal chain," which was insufficient as a "benchmark for exercising personal jurisdiction"); *Livnat v. Palestinian Authority*, 82 F. Supp. 3d 19 (D.D.C. 2015) (no specific personal jurisdiction over Palestinian Authority involving terrorist attack on U.S. citizen in West Bank of Israel; rejecting jurisdictional theory that attack was part of Authority's policy of encouraging terror to influence U.S. policy); *Estate of Klieman v. Palestinian Authority*, 82 F. Supp. 3d 237, 248 (D.D.C. 2015) (reversing prior ruling of personal jurisdiction and holding there was no specific personal jurisdiction over Palestinian Authority for terrorist attack on bus in West Bank of Israel; foreseeability of possible injury to American abroad insufficient under *Walden*; no plausibility that the attack was directed at U.S. policy; *Walden* denies personal jurisdiction where victim of a foreign attack happened to be an American); *Safra v. PLO,* 82 F. Supp. 3d 37, 48-50 (D.D.C. 2015); *Waldman*, 2016 U.S. App. LEXIS 16089, *46-48.

Minimum contacts also require sufficient relatedness of the subject conduct to the claimed tort and reasonableness. For similar reasons and others, these requirements are not met.

-10-

Asserting personal jurisdiction over BSPLC in Massachusetts in *Lelchook* is neither fair nor reasonable since, among other things, there is already a 2013 unappealed final judgment dismissing the case in D.C. As we have elaborated, there is no sufficient allegation of suit-related conduct by BSPLC creating a substantial connection to the U.S. and none arising out of contacts by BSPLC with this forum.

In this regard, plaintiffs also claim personal jurisdiction on grounds of BSPLC's alleged *indirect* dealings with the U.S. through foreign banks outside the U.S. that accessed their U.S. bank correspondent accounts in the U.S. in Eurodollar transactions. FAC ¶ 16. The complaint's theory is that by these means dollars could ultimately be transferred by Iran through the CBI to BSI, which transferred them to BSPLC in the UK, which in turn transferred them to BSI's account in Lebanon ultimately for the benefit of "Hezbollah fronts." FAC ¶¶ 111-113. Here, the complaint does not plead plausible facts to support personal jurisdiction.

In this regard, there is no allegation of any BSPLC bank account in New York. Nor any allegation of a BSPLC correspondent account in New York, nor any direct dealing by BSPLC in New York, nor any specific transaction involving BSPLC directly or indirectly routed through New York. What is alleged is that BSPLC dealt with non-U.S. banks outside the U.S., which, in turn, had correspondent banking relationships in New York used to fulfill U.S. dollar transactions. FAC ¶¶ 132, 144, 152. Just as much as with the "effects" test, these allegations provide no basis that BSPLC purposely availed itself of the forum. And there is no supported allegation that BSPLC or BSI directly transferred funds to Hezbollah. As for BSPLC, the allegation is only that BSPLC transferred funds to BSI in Lebanon.

For purposes of personal jurisdiction, the New York Court of Appeals recently considered what constitutes transacting business under New York law for a foreign bank in *Licci*

-11-

*v. Lebanese Can. Bank ("LCB"), SAL*, 20 N.Y.3d 327 (2012). In *Licci* (which is essentially the same case as both *Kaplan* and *Lelchook*),[5] plaintiffs claimed LCB, a Lebanese bank, facilitated financial transactions for Hezbollah and that there was personal jurisdiction under New York law. Like BSPLC, LCB did not have any place of business in the U.S. Unlike BSPLC, however, LCB had its own correspondent bank account in New York with AMEX, which it *directly* used to transfer funds to and from Hezbollah. *Id*. at 894, 899. The Court of Appeals held that under New York law having a correspondent bank account of its own in New York may be sufficient for jurisdiction if "the defendant's use of that account was purposeful" and sufficiently related to the claim. *Id*. at 899. Since LCB had its own correspondent account in New York and allegedly directed specific funds transfers through it to Hezbollah, personal jurisdiction was found.

In contrast to *Licci*, there is no allegation BSPLC had any correspondent account in New York, but instead the FAC alleges only that BSPLC had dealings outside the U.S. with other non-U.S. banks. There are no allegations of direct dealing by BSPLC in New York, nor could there be.[6] Plaintiffs broadly allege billions of dollars in Eurodollar transactions were effectuated by banks, including BSPLC, through banks in New York, FAC ¶¶ 143, 144, yet do not allege a single specific or direct transaction.[7] Allegations that unidentified U.S. dollar

---

[5] In *Licci v. LCB*, 2016 U.S. App. LEXIS 15534, *1-2 (2d Cir. Aug. 24, 2016), the Second Circuit found that *Kaplan's* AOW ruling collaterally estopped the *Licci* plaintiffs, and upheld dismissal of the case.

[6] U.S. sanctions generally prohibited U.S. persons from unlicensed trade-related transactions with an Iranian-owned bank such as BSPLC since 1987. 31 C.F.R. § 560.210, *et seq*.

[7] Plaintiffs seek to spin deferred prosecution agreements between the U.S. and six foreign banks as purported evidence of banking activity in the U.S. and BSPLC's purposeful availment of the forum. FAC ¶¶ 144-150. However, five of the six DPAs do not even mention BSPLC. *See* DPA, *US v. Credit Suisse AG*, 1:09-cr-00352 (D.D.C. Dec. 16, 2009); DPA, *US v. Commerzbank AG*, 1:15-cr-00031 (D.D.C. Mar. 12, 2015); DPA, *US v. Standard Chartered Bank*, 1:12-cr-00262 (D.D.C. Dec. 10, 2012); DPA, *US v. HSBC Bank USA N.A.,* et al, 1:12-cr-00763 (E.D.N.Y. Dec. 11, 2012); *US v. Barclays Bank PLC*, et al, 1:10-cr-00218 (D.C.C. Aug. 16, 2010). The sixth DPA, which concerns Lloyds, does not detail conduct of BSPLC, but activity of Lloyds relating to several Iranian banks. To the extent BSPLC is referenced, it

-12-

transactions processed in a manner that caused them to pass through New York in Eurodollar transactions involving other foreign banks, does not satisfy plaintiffs' burden that BSPLC purposefully was doing business in the forum. Any other result here would be something new for the world and an explosion of U.S. personal jurisdiction over foreign financial institutions and others. Without any allegation of a correspondent account in New York of its own and without proof of purposeful availment of that account directly by BSPLC (as in *Licci)*, the complaint fails to establish personal jurisdiction over BSPLC as a matter of law.

Even if BSPLC's alleged transactions with non-U.S. banks outside the forum could possibly constitute doing business (which they do not), personal jurisdiction over BSPLC is still foreclosed because plaintiffs have not adequately pled a plausible nexus between alleged forum activity and their claims. Unlike plaintiffs in *Licci*, who identified specific accounts with alleged ties to terrorism and specific dollar transactions, plaintiffs have not identified any BSPLC account holder, BSPLC account, or actual money transfer involving BSPLC and an account associated with terrorism routed through accounts in the U.S. Plaintiffs must, at a minimum, specify facts connecting direct transactions in the U.S. with terrorist acts to establish a nexus between the forum and their claims.

In *Tamam v. Fransabank SAL,* 677 F. Supp. 2d 720 (S.D.N.Y. 2010), plaintiffs sued Lebanese banks for dollar exchanges via their own correspondent bank accounts in New

---

is mentioned only collectively along with Iranian banks, their branches and corporate subsidiaries. *US v. Lloyds TSB Bank PLC*, 1:09-cr-00007 (D.D.C. Jan. 9, 2009). Plaintiffs' reference to these DPAs does not satisfy their burden of pleading specific facts to support their allegation that BSPLC "directed" illegal fund transfers to the U.S. A complaint that lumps actors together and fails to differentiate them, fails to state a claim for relief. *Gary v. McDonald*, 2014 U.S. Dist. LEXIS 65819, *3-4 (D. Mass. May 13, 2014) ("In order to satisfy the minimal requirements of notice pleading, a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'") (quoting *Bagheri v. Galligan*, 160 F. App'x 4, 5 (1st Cir. 2005)). Allegations of forum activity that do the same provide no basis for personal jurisdiction.

York benefitting Hezbollah. The Court declined personal jurisdiction over the banks because the complaint did not "set forth a 'substantial relationship' between the correspondent bank accounts and Hezbollah's terrorist activity." *Id.* at 727. The "events giving rise to the physical injuries and deaths for which Plaintiffs [sought] redress [were] missile attacks in Israel, not funds transfers in New York." *Id*. at 728. Since plaintiffs failed to connect the U.S. bank correspondent accounts in New York and any transfer involving Hezbollah, the court dismissed for lack of personal jurisdiction. *Id*. at 727, 734.[8]

Plaintiffs' allegations in *Lelchook* do not even rise to the level found insufficient in *Tamam* for a nexus between New York and the claims. In the FAC, plaintiffs fail to identify a single banking transaction routed through the U.S. involving BSPLC directly or indirectly, much less a banking transaction involving BSPLC and an account associated with terrorism.[9] Unlike *Licci's* complaint, which identified specific account holders, specific accounts with alleged ties to terrorism, and specific dollar transactions,[10] plaintiffs have not identified any BSPLC account holder or any BSPLC account at all. *See* complaint in *Licci* ¶¶ 44-56 (Exhibit 1). Plaintiffs have not established any nexus between BSPLC's supposed forum conduct and their claims. There is no personal jurisdiction "simply because [defendant's] contact with [the forum] was a link in a chain of events giving rise to the cause of action." *Tamam*, 677 F. Supp. at 729.[11] The

---

[8] *HSH Nordbank AG N.Y. Branch v. Street,* 2012 U.S. Dist. LEXIS 99830, *15 (S.D.N.Y. 2012) (*Tamam's* dismissal was because there were no "specific transfers through New York accounts").

[9] The press release concerning money transfers to Bank Saderat Iran's branch in Beirut, referenced in FAC ¶¶ 43, 44 does not claim these were U-turn transactions through New York or otherwise passed through New York.

[10] In distinguishing *Tamam*, the New York Court of Appeals in *Licci* noted that plaintiffs in *Tamam*, unlike in *Licci,* "did not allege actual transfers from Hizballah front group accounts in Lebanon through correspondent banks in New York." *Licci* at n.7.

[11] *Licci* did not overrule *Tamam*. Consistent with the outcome of *Licci*, *Tamam* held that direct "processing of … funds through [U.S.] correspondent banks may indicate that [the Lebanese banks]

-14-

allegations involving BSPLC are even more remote than those found inadequate in *Tamam*. There are no supported allegations of any direct forum contact by BSPLC.

Finally, based on plaintiffs' allegations, there is no basis for jurisdictional discovery in this case, which in any event, should not be addressed (if at all) until after resolution of the preclusive effect of the prior *Lelchook* judgment in D.C. The First Circuit requires that plaintiffs demonstrate a "colorable case for the existence of in personam jurisdiction" in order to obtain "a modicum of jurisdictional discovery." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001). However, even then there is no "entitlement." *Id.* Where "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Venmill Indus. v. ELM, Inc.*, 100 F. Supp. 3d 59, 73-74 (D. Mass. 2015). Plaintiffs' theory of personal jurisdiction refutes that discovery would be appropriate. *Accord Livnat v. Palestinian Authority*, 82 F. Supp. 3d at 36; *O'Neill*, 714 F.3d at 659, 678 (no jurisdictional discovery for financial institutions allegedly providing financial services to al Qaeda "fronts," but supported factual allegations of individual defendants who allegedly supplied *direct* support to al Qaeda, i.e., the Charity Officials and four others, warranted discovery);[12] *Waldman*, 216 U.S. App. LEXIS 16089 *47-48.

---

purposefully availed themselves of business opportunities in New York." *Tamam*, 677 F. Supp. 2d at 727.

[12] As noted by Court in *O'Neill*, 714 F.3d at 678, "…instead of knowingly sending money to purported charitable organizations that allegedly supported al Qaeda — like the defendants in *In re Terrorist Attacks III* — the Charity Official defendants and Al Kadi allegedly controlled and managed some of those 'charitable organizations' and, through their positions of control, they allegedly sent financial and other material support *directly* to al Qaeda when al Qaeda allegedly was known to be targeting the United States."

Finally, as we have noted, any claim to jurisdictional discovery should be addressed (if at all) after resolution of the preclusive effect of the *Lelchook* judgment in D.C. *See Williams v. Romarm S.A.*, 116 F. Supp. 3d 631 (D. Md. 2015) ("collateral estoppel bars Plaintiffs from relitigating the issue of whether [defendant] is a separate juridical entity from the Romanian government.  Therefore, the Court denies jurisdictional discovery on that question."); *Licci v. LCB*, 2016 U.S. App. LEXIS 15534, *1-2 (2d Cir. Aug. 24, 2016) (*Licci* plaintiffs collaterally estopped by AOW ruling in *Kaplan*).

    C.    <u>Conclusion</u>

There is no personal jurisdiction over BSPLC in Massachusetts based on the complaint's allegations and the plaintiffs' theories of personal jurisdiction.  Plaintiffs have provided no basis for finding that there is any required "substantial connection" between BSPLC's alleged conduct and the forum.   In accordance with *Kaplan*, the complaint should be dismissed as to BSPLC.

| | |
|---|---|
| Dated:  September 23, 2016 | Respectfully submitted, |
| On the Brief:<br>Jeremy D. Frey<br>Adam Michaels | /s/ William M. Taylor<br>PEPPER HAMILTON LLP<br>Jeremy D. Frey (pro hac vice)<br>William Taylor (BBO#624981)<br>125 High Street<br>19th Floor, High Street Tower<br>Boston, MA 02110<br>617.204.5100 |
| | *Attorneys for Defendant Bank Saderat PLC* |

## CERTIFICATE OF SERVICE

I, William M. Taylor, hereby certify that a true and correct copy of this Memorandum was served electronically via the Court's ECF system upon:

        Marna F. Berkman
        Robert J. Tolchin
        The Berkman Law Office, LLC
        111 Livingston Street
        Suite 1928
        Brooklyn, New York  11201
        Telephone: (718) 855-3627

        *Attorneys for the plaintiffs*

        /s/ William M. Taylor
        William M. Taylor

September 23, 2016