UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-----------------------------------------------------------------------X

ESTER LELCHOOK, individually and as personal representative of the Estate of David Martin Lelchook; MICHAL LELCHOOK; YAEL LELCHOOK; ALEXANDER LELCHOOK; and DORIS LELCHOOK,

                  Plaintiffs,

                  -against-

THE ISLAMIC REPUBLIC OF IRAN; THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN (a/k/a Bank Markazi Jomhouri Islami Iran); BANK SADERAT IRAN; and BANK SADERAT, PLC,

                  Defendants.

-----------------------------------------------------------------------X

Docket No:
15-CV-13715 (PBS)

# PLAINTIFFS' SURREPLY TO DEFENDANT BANK SADERAT PLC's MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION

THE BERKMAN LAW OFFICE, LLC
Robert J. Tolchin (*pro hac vice*)
Marna F. Berkman
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
718-855-3627

*Attorneys for the Plaintiffs*

Pursuant to this Court's order of September 1, 2016 (DE 79), plaintiffs file this surreply to Bank Saderat PLC's ("BSPLC") reply (DE 93) with regard to its motion to dismiss plaintiffs' First Amended Complaint ("FAC") pursuant to Rule 12(b)(2) (DE 88) for lack of personal jurisdiction.

## SURREPLY

### A. Plaintiffs Have Satisfied Their 12(b)(2) Burden Under First Circuit Case Law

On a Rule 12(b)(2) motion to dismiss, the plaintiffs are required to make a prima facie showing of personal jurisdiction through an evidentiary submission that goes beyond the pleadings. *U.S. v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618-19 (1st Cir. 2001); *Hasbro, Inc. v. Clue Computing, Inc.*, 994 F. Supp. 34, 39 (D. Mass. 1997). The court must "take the plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim." *Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC*, CV 15-13546-PBS, --- F. Supp. 3d ---, 2016 WL 3561863, at *2 (D. Mass. June 27, 2016) (citations and internal quotations omitted); *see also Merced v. JLG Industries, Inc.*, 170 F. Supp. 2d 65, 69 (D. Mass 2001). The court may also consider facts presented by defendants, but only to the extent they are uncontroverted. *See Photographic Illustrators*, 2016 WL 3561863 at *2.

Plaintiffs have met their prima facie burden here. They have supported their allegations of personal jurisdiction with the detailed declarations of Patrick L. Clawson, Gary N. Kleiman and Carole Basri, as well as with additional documents attached to the Declaration of Robert J. Tolchin. BSPLC has submitted no evidence to the contrary. Accordingly, by failing to even attempt to rebut plaintiffs' evidence, or proffer its own version, BSPLC has effectively conceded the facts supporting personal jurisdiction and its 12(b)(2) motion must be denied.

In the First Circuit, courts apply a three part test to ascertain whether the defendant's jurisdictional contacts satisfy constitutional due process – (1) whether the claim arises out of or relates to the defendant's forum activities, (2) whether the defendant's contacts with the forum represent purposeful availment; and (3) whether the exercise of jurisdiction is reasonable. *Photographic Illustrators*, 2016 WL 3561863 at *3. "Purposeful availment represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 555 (1st Cir. 2011).

Plaintiffs offer two bases for specific personal jurisdiction over BSPLC here: (1) BSPLC aimed its conduct at the United States—the so co-called "effect test" for purposeful availment—by participating in a conspiracy with the other defendants to target the United States through provision of funding to Hezbollah, a designated FTO[1] which Iran created for the purpose of carrying out terrorist attacks against the United States and its allies; and (2) BSPLC purposely availed itself of the forum (the United States) by directing the transfer of $50 million to Hezbollah accounts in Lebanon through the United States financial system, including for clearing and settlement and through correspondent accounts in the United States.

Unable to challenge plaintiffs' overwhelming factual showing, BSPLC simply ignores the facts and intentionally misstates plaintiffs' arguments. For example, BSPLC does not dispute any of the following facts:

- Since 1979, Iran has an official policy to use terrorism to attack the U.S. and its allies. DE 90 at 4-5.

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in plaintiffs' filed opposition (DE 90).

- Iran created Hezbollah (a designated FTO) to carry out its official policy of using terrorism to attack the U.S. and its allies. *Id*.

- Hundreds of Americans have been killed in Hezbollah terrorist attacks. *Id*. at 5.

- During the relevant time period, BSI and BSPLC were both wholly owned and controlled by Iran through stock ownership and control over management and board of directors. *Id*.

- Iran uses its banks, including BSI and BSPLC, as proxies to serve its foreign policy goals, including attacking the U.S. and its allies. *Id*. at 6.

- Iran used BSI and BSPLC to pursue terror funding, including to transfer $50 million to Hezbollah accounts in Lebanon between 2001 and 2006. *Id*. at 7.

- During the relevant time period, BSI and BSPLC had access to correspondent accounts in the U.S. through their banking relationships with non-U.S. banks. *Id*. at 8.

- BSI and BSPLC directed the transfers to Hezbollah through correspondent accounts located in the U.S. *Id*.

- BSI and BSPLC made these $50 million in transfers to further Iran's foreign policy goal of supporting Hezbollah, including attacking the U.S. and its allies, and not to further their own commercial interests. *Id*. at 8-9.

- As a result of the transfers, BSI and BSPLC suffered commercially, including through U.S. sanctions and the loss of correspondent banking and customer relationships. *Id*.

- These transfers to Hezbollah were intended by BSI and BSPLC to harm the U.S. and did in fact harm the U.S. *Id*. at 9-11.

- The transfers increased Hezbollah's military capabilities and facilitated the Hezbollah rocket attack that killed David Martin Lelchook. *Id*. at 10.

BSPLC's failure to even attempt to rebut plaintiffs' factual showing is particularly significant with regard to the facts about the money transfers passing through correspondent accounts in the United States because these are facts which BSPLC, as the party in control of the documents and information regarding the transfers, could easily rebut if they were untrue. Thus, the Court should deny BSPLC's motion and allow this case to proceed on the merits.

## B. The Congressional Findings in JASTA with Regard to Personal Jurisdiction are Highly Relevant to the Issues Here

Whether or not a particular defendant is subject to personal jurisdiction in the United States is a matter of constitutional Due Process. In this case that requires assessment of whether BSPLC's contacts with the United States as a whole provided it with "fair warning" that by transferring $50 million to Hezbollah it would be subject to personal jurisdiction in the United States. *See Mwani v. Bin Laden*, 417 F.3d 1, 11 (D.D.C. 2005). The "fair warning" requirement is satisfied where the defendant "purposefully directed his activities at residents of the forum." *Id.* (Citations and internal quotations omitted). This is a question of fact. *See, e.g., Branch Bank & Trust v. Engine Components, Inc.*, 394 F. Supp. 2d 859, 861 (S.D.W.V. 2005). For purposes of this motion to dismiss, the Court is entitled to rely on various types of materials in deciding this factual question, including the allegations in the complaint, the evidence submitted by plaintiffs and the Congressional finding contained in JASTA. And, as plaintiffs explained in their opposition, Congressional findings, particularly on matters of national security are entitled to great deference. DE 90 at 12-13.

As it relates to the issue of personal jurisdiction here, in JASTA Congress made a factual finding that *directly or indirectly* providing material support to terrorist entities like Hezbollah—an FTO which in fact and by definition threatens the security of the United States—"necessarily direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States to answer for such activities." S. 2040, § 2(a)(6). This is highly relevant to this Court's assessment of whether BSPLC aimed its conduct at the United States when it transferred $50 million to Hezbollah. BSPLC all but ignores this finding, and instead, in an attempt to distract the Court from the real issue, focuses on a *separate* finding contained in S.

4

2040, § 2(a)(7), not relevant to this motion, concerning the U.S.'s interest in providing U.S. citizens injured in terror attacks in the U.S. with full access to U.S. courts. DE 93 at 3.

### C. Plaintiffs Have Made a Prima Facie Showing for Personal Jurisdiction Under the Effects Test

As explained in their opposition, plaintiffs' theory under the "effects test" is that for decades Iran has used terrorism **to harm the United States by attacking the United States and its allies**, and has done so in concert with Iranian proxies which share Iran's goal of **harming the United States by attacking the United States and its allies.** Those proxies include Hezbollah, which is the actual "triggerman"; and BSPLC and BSI, who served as the "bagmen," by transferring funds from defendant Central Bank of Iran to Hezbollah. DE 90 at 13; 14-18. BSPLC intentionally misstates and contorts plaintiffs' theory of jurisdiction in an attempt to squeeze it into *Walden*. DE 93 at 3 ("According to plaintiffs, when Hezbollah proximately causes and injury to an American-national ATA plaintiff, there is categorical personal jurisdiction over Hezbollah . . ."). In fact, of course, plaintiffs never said any such thing.

Rather, as plaintiffs have consistently argued, BSPLC's conduct that subjects it to personal jurisdiction here is its provision of material support (*i.e.*, $50 million) to the terrorist organization Hezbollah (a designated FTO[2]) which exists to target the U.S. and its allies—*which conduct BSPLC did for the purpose of harming the U.S*. DE 90 at 14-15. Under the case law, it is clear that there is no need to establish "physical contacts" with the forum as long as it is foreseeable that the terrorist acts will cause injury in the forum. *Id*. at 15-16; *see also Sturm*

---

[2] BSPLC's designation as an FTO is significant not because of "the political affiliation of a groups of fighters launching missiles in Lebanon at Israel," as BSPLC argues (DE 93 at 3), but because the designation itself indicates that the organization threatens the security of the United States. *See* 8 U.S.C. § 1189 (a)(1)(C); DE 90 at 17. Thus, providing funds to the organization, as BSPLC did, also threatens the security of the United States.

5

*Ruger & Co., Inc. v. Armscor Precision International, Inc.*, 2015 WL 4563005 (D.N.H. July 28, 2015) (reaffirming holding in *Calder* that physical contacts of tortfeasor with the forum not required, even after *Walden*). In *Sisso*, the court found it foreseeable that a Hamas terrorist attack in Israel would have an effect in the U.S. even in the absence of physical contacts because "[t]he ripples of harm that flow from such barbarous acts rarely stop at the banks of the Mediterranean Sea or the Jordan River." *Sisso v. Islamic Republic of Iran,* 448 F. Supp. 2d 76, 90 (D.D.C. 2006). That was the case even though there was no evidence that Hamas was targeting or intending to harm the U.S. All the more so where, as here, BSPLC provided funding to Hezbollah for the purpose of harming the U.S.

There is simply no basis for BSPLC's claim that because ***the physical locations*** of its wire transfers to Hezbollah and the firing of the rockets occurred outside the U.S. (DE 93 at 4), the undisputed fact that BSPLC intended to harm the United States by funding Hezbollah cannot give rise to specific jurisdiction. As the Tenth Circuit explained in response to an analogous assertion regarding the "physical direction" of a defendant's conduct:

> Defendants submit that plaintiffs have failed to meet the "expressly aiming" standard, pointing to the uncontested fact that they sent their NOCI . . . not to plaintiffs in Colorado but to eBay in California. Such ***focus on the physical direction of defendants' NOCI, however, does not tell the whole story***. …
>
> [W]hile, as defendants emphasize, the NOCI formally traveled only to California, it can be fairly characterized as an intended means to the further intended end of cancelling plaintiffs' auction in Colorado. In this way, it is something like a bank shot in basketball. A player who shoots the ball off of the backboard intends to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket. ***Here, defendants intended to send the NOCI to eBay in California, but they did so with the ultimate purpose of cancelling plaintiffs' auction in Colorado***. Their "express aim" thus can be said to have reached into Colorado in much the same way that a basketball player's express aim in shooting off of the backboard is not simply to hit the backboard, but to make a basket.

6

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008) (citations omitted) (emphasis added); *See also 1st Source Bank v. Village of Stevensville*, 905 F. Supp. 2d 898, 909–10 (N.D. Ind. 2012) (Defendants' actions directed at the Village of Stevensville, in Michigan, gave rise to specific jurisdiction in Indiana, because defendants intended their actions directed at the Village in Michigan to have an effect in Indiana.).

BSPLC's reliance on cases against the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") which were dismissed for lack of personal jurisdiction and are now at various stages of appeal, is misplaced. DE 93 at 4. Unlike with the PA and PLO, Iran has had an open and public anti-American foreign policy since 1979 and uses Hezbollah, BSI and BSPLC to carry out terrorism to harm the U.S. (DE 90 at 4), facts which BSPLC cannot and does not dispute and which were totally absent in the cases involving the PA and PLO. As the *Waldman* court noted in its discussion of *O'Neill*: "[t]he Court looked at the aim of the group receiving support—particularly that al Qaeda was known to be targeting the United States []." Likewise, Hezbollah "is known to target the United States." DE 90 at 4; 15.

BSPLC also persists in its mischaracterization of *O'Neill* (DE 93 at 4-5). As plaintiffs explained in their opposition (DE 90 at 19-20), the *O'Neill* court **refused** to dismiss claims against defendants who had provided material support to al Qaeda front organizations at a time "when it was publicly known that al Qaeda was engaged in a global terrorist agenda directed at the United States." *In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 659, 678-79 (2d Cir. 2013). The *O'Neill* court found that jurisdictional discovery was required to establish whether the support was "expressly aimed" at the United States. *Id*. Here, it is undisputed that Hezbollah has been engaged in "global terrorist agenda directed at the United States" from its very inception, beginning with its murder of hundreds of U.S. Marines in Beirut in 1983, and

7

continuing ever since. Furthermore, plaintiffs have clearly shown that BSPLC's conduct was aimed at the United States, and that it served as a proxy of Iran to further its anti-American foreign policy goals—including funding terrorism intended to harm the U.S.

> **D. Plaintiffs have Made a Prima Facie Showing of Personal Jurisdiction Based on BSPLC's Purposeful Availment of the U.S. Financial System to Effect the Transfers to Hezbollah**

BSPLC's focus on proximate cause for the relatedness prong here is wrong as a matter of law because the test for relatedness in the First Circuit is a "flexible, relaxed standard." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014); *Merced*, 170 F. Supp. 2d at 73-74 (noting that plaintiff can satisfy relatedness inquiry even if defendant's actions outside the forum caused plaintiff's harm and that First Circuit does not require "strict adherence to proximate cause standard"). BSPLC's citations to *Rothstein* and *Al Rajhi Bank* in this context are even more perplexing as those cases do not concern personal jurisdiction at all. The proximate cause discussion in *Rothstein* was in the context of Article III standing and causation under 18 U.S.C. § 2333(a), noting that the causation required for standing is less than that required for the claim itself. *Rothstein v. UBS AG*, 708 F.3d 82, 93-94 (2d Cir. 2013). In any event, *Rothstein* involved an additional link in the causal chain, not present here. Unlike here, the transfers at issue in *Rothstein* were not directly to Hamas, or even to a Hamas front group, but to Iran, which supported Hamas. *Id.* at 85-87. Similarly, *Al Rajhi Bank* addressed proximate cause in the context of a 12(b)(6) motion to dismiss for failure to state a claim. *See In re Terrorist Attacks on Sept. 11, 2001 v. Al Rajhi Bank*, 714 F.3d 118, 122 (2d Cir. 2013).

BSPLC unsuccessfully attempts to distinguish *Licci*. In *Licci*, just like here, plaintiffs injured by Hezbollah rocket attacks in Israel alleged that the defendant bank transferred funds to Hezbollah accounts in Lebanon through a correspondent bank in New York. The court held that

8

"the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs" constituted purposeful availment of the privilege of doing business in New York and satisfied the relatedness prong for purposes of constitutional Due Process. *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171-73 (2d Cir. 2013).

Here, plaintiffs alleged that BSPLC exploited its relationships with other banks that had correspondent accounts in the United States to transfer the Hezbollah dollar transfers through the U.S. banking system. FAC at ¶¶ 141-152; DE 90 at 8. Plaintiffs further allege that based on the way the banking system operates, BSPLC could not have transferred such large sums of USD currency to Hezbollah accounts in Lebanon without the money passing through the U.S. financial system. DE 90 at 20; Basri Decl. at ¶¶ 14-15; 25. The deferred prosecution and settlement agreements attached to the Tolchin Declaration further reflect that these transfers were deliberately routed through the U.S. financial system in such a way as to benefit Iranian banks like BSPLC, while avoiding detection by U.S. regulators. Tolchin Decl. Exs. E-I. Even if, as BSPLC claims, these documents "address alleged specific legal issues regarding disclosures that arose in the permissible handling by non-U.S. banks of non-U.S. banking orders. . ." (DE 93 at 6-7), they are still relevant here to show BSPLC's deliberate use of the U.S. banking system to accomplish transfers to Hezbollah. *Cf* 10/17/16 Decision & Order in *U.S. v. Zarrab*, 15 cr 867 (RMB) (S.D.N.Y.) at 9-10; 13-15, Ex. A to Supplemental Declaration of Robert J. Tolchin (allegations similar to those against BSPLC here, where U.S. bank cleared payment originating and ending at foreign bank, upheld as basis for criminal prosecution for conspiracy to violate U.S. sanctions related to Iran). Under the *Licci* line of cases, what is important is not the existence of the correspondent account, but the defendant's use of it in the forum state. *Licci*, 732 F.3d at 171.

Significantly, BSPLC does not deny that it had correspondent banking relationships with banks operating in the United States or that the $50 million passed through the United States banking system, instead claiming that the money flow was too indirect and attenuated. The flow of the transfers is no different here than it was in *Licci*, except that in *Licci* the correspondent account in the U.S. was maintained by a U.S. bank in the defendant's name, whereas here the correspondent accounts in the U.S. were maintained by non-U.S. banks and were not in BSPLC's name due to U.S. regulations preventing BSPLC from having an account in its own name, which BSPLC needed, and intended, to evade. The fact that BSPLC was prohibited from having a correspondent account in the United States in its own name should in no way diminish its amenability to personal jurisdiction here where it found a way around this restriction and deliberately utilized the United States financial system to get money to Hezbollah.

The *Tamam* case relied upon by BSPLC (DE 93 at 7) is inapposite here as it addresses the standard for specific personal jurisdiction under New York's long arm statute, which is a stricter standard than that for constitutional Due Process. *Wallert v. Atlan*, 141 F. Supp. 3d 258, 274 (S.D.N.Y. 2015). Indeed, the full quote referenced by BSPLC is: "a defendant may not be subject to personal jurisdiction *under CPLR § 302(a)(1)* simply because [its] contact with New York was a link in a chain of events giving rise to the cause of action." *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 729 (S.D.N.Y. 2010). (emphasis added). In any event, *Licci* abrogated *Tamam* in this regard and made clear that New York's long arm statute does not require a causal link between the in forum activity and the injury, but a "relatedness between the transaction and the legal claims such that the latter is not completely unmoored from the former . . ." *Licci*, 732 F.3d at 168-69. The money transfers to Hezbollah in *Licci* satisfied relatedness for plaintiffs' claims of injury by Hezbollah rocket fire in Israel even under New York law. *Id*.

Defendants' citation to *O'Neill* in the context of their discussion about relatedness is misleading and incorrect (DE 93 at 7). As noted above, the *O'Neill* case addressed the "effects test," looking to whether conduct occurring outside the forum was aimed at the forum; but where the conduct supporting personal jurisdiction occurred in the forum, such as the millions of dollars of wire transfers through the United States here, the in forum effects of the conduct are irrelevant. *Licci*, 732 F. 3d at 173 (distinguishing *O'Neill*).

Moreover, BSPLC's attempt to portray the wire transfers here as "indirect" (DE 93 at 7) is unsupported by any evidence – such as a sworn declaration – and is a blatant distortion of the facts. As alleged in the FAC and supported by the Clawson declaration, the transfers went directly from BSPLC to Hezbollah accounts in Lebanon. FAC at ¶¶ 111-113; Clawson Decl. at ¶¶ 42-43. The directness of the money flows is not altered by the fact that the Hezbollah accounts that received the funds from BSPLC were maintained by defendant BSI. If a transfer to a terrorist group's bank account is viewed as a transfer to the *bank*, and not to the terrorist group itself, how could liability ever be imposed for transferring funds to a terrorist group?!

### E. Exercise of Personal Jurisdiction Over BSPLC Here is Reasonable

Courts consider five factors in assessing whether personal jurisdiction is reasonable:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Photographic Illustrators*, 2016 WL 3561863, at *6. These factors "play a larger role where the minimum contacts question is very close." *Id*. at *5; *see also Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.*, 901 F. Supp. 2d 255, 266 (D. Mass. 2012) (explaining that courts apply a sliding scale with regard to the reasonableness factors where "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less defendant need

11

show in terms of unreasonableness to defeat jurisdiction."). These factors are satisfied here where BSPLC aimed its conduct at the United States: it provided millions of dollars to Hezbollah, an FTO created to carry out terrorism against the United States and its allies and purposefully directed the transfers through the United States banking system in a manner designed to evade detection by U.S. regulators; and BSPLC did all that in order to harm the U.S. Plaintiffs, some of whom reside in this district, are entitled to relief. The fact that this case was originally filed in the District of Columbia has no bearing on the Court's reasonableness analysis here, particularly since BSPLC strategically chose not to participate in or appear in that case. *See* Exhibit B to Supplemental Tolchin Declaration.

### F. Conclusion

For the reasons discussed herein and in plaintiffs opposition (DE 90), plaintiffs respectfully request that the Court deny BSPLC's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

Dated: Brooklyn, New York
October 21, 2016

        Yours,

        THE BERKMAN LAW OFFICE, LLC
        *Attorneys for the Plaintiffs*

        by: _____
               Robert J. Tolchin

        111 Livingston Street, Suite 1928
        Brooklyn, New York 11201
        718-855-3627

## **CERTIFICATE OF SERVICE**

I hereby certify that this pleading filed through the ECF system is expected to be sent electronically to the registered participants as identified on the court's docket.

                                                                s/Robert J. Tolchin
                                                         Robert J. Tolchin