UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
-------------------------------------------------------------------X

ESTER LELCHOOK, individually and as personal representative of the Estate of David Martin Lelchook; MICHAL LELCHOOK; YAEL LELCHOOK; ALEXANDER LELCHOOK; and DORIS LELCHOOK,

                  Plaintiffs,

-against-

THE ISLAMIC REPUBLIC OF IRAN; THE CENTRAL BANK OF THE ISLAMIC REPUBLIC OF IRAN (a/k/a Bank Markazi Jomhouri Islami Iran); BANK SADERAT IRAN; and BANK SADERAT, PLC,

                  Defendants.

-------------------------------------------------------------------X

Docket No:
15-CV-13715 (PBS)

## PLAINTIFFS' MEMORANDUM REGARDING FED R. CIV. P. 4(k)(2)

Plaintiffs file this memorandum in response to the Court's statements on the record at the November 2, 2016 hearing and its electronic order that same day (DE 96) requesting further briefing on the applicability of Fed. R. Civ. P. 4(k)(2) in this case.

### INTRODUCTION

Plaintiffs are the family members of David Martin Lelchook who was killed by a Hezbollah rocket while riding his bicycle near his home in the North of Israel. Defendant BSPLC is a bank incorporated in the United Kingdom and the wholly owned subsidiary of Bank Saderat Iran ("BSI") which is owned and controlled by the government of Iran, a designated state sponsor of terror that uses Hezbollah to carry out its terrorist agenda against the United States

and its allies around the world. Based on high level intelligence, the U.S. Department of Treasury found that, between 2001 and 2006, BSI transferred $50 million to Hezbollah in Lebanon through BSPLC.

In response to BSPLC's 12(b)(2) motion to dismiss for lack of personal jurisdiction plaintiffs presented evidence, *inter alia*, that BSPLC purposely availed itself of the U.S. banking system in making these transfers. Specifically, plaintiffs provided documents showing that during the relevant period BSI and BSPLC exploited their relationships with international banks operating in the U.S. to transfer dollars through the U.S. in a manner designed to avoid detection by U.S. regulators. Plaintiffs also provided the declaration of Carole Basri explaining that it is not possible to transfer millions of dollars through the international banking system without the transactions passing through the U.S. financial system through correspondent banks and for clearing and settlement. Significantly, BSPLC, which has full knowledge of the details of the transfers, has not denied any of these facts. As the Court noted, this evidence points to the obvious conclusion that the $50 million which the U.S. government found BSI and BSPLC transferred to Hezbollah in 2001-2006 was secretly routed through the U.S. banking system. *See* 11/2/16 Tr. at 10-14 (Court: "Even if the money went back to Lloyds and back to the bank, that's forum contact.")

But because all of the documentation concerning the transfers is in the possession, custody and control of BSPLC (and that of the participating banks), plaintiffs do not know exactly how the money flowed and are unable to prove these facts in detail. Moreover, BSPLC has outright denied that it is subject to personal jurisdiction in New York. *See* 11/2/16 Tr. at 7-8; 16. Accordingly, based on the information readily available to plaintiffs, while BSPLC is not necessarily subject to suit in the courts of general jurisdiction of any specific state, its purposeful

2

availment of the U.S. financial system in making the transfers is sufficient to satisfy constitutional due process. Thus, if the Court finds that plaintiffs have met their prima facie burden on personal jurisdiction, then, under First Circuit case law, the Court must deny BSPLC's motion to dismiss and is not required to assess whether or not the New York long arm statute might apply.

## ARGUMENT

### A. Under *Swiss American*, it is Defendant's Burden to Prove That Personal Jurisdiction Exists in One of the Fifty States

1. Plaintiffs Have Satisfied Their Prima Facie Burden on Jurisdictional Contacts; BSPLC has Defaulted on its Burden to Prove Contacts with one of the Fifty States

Rule 4(k)(2) provides for personal jurisdiction in any federal court for a claim arising under federal law when:

> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Rule 4(k)(2) functions as a "species of federal long-arm statute," to enable plaintiffs to sue for federal law violations where there is no specific statutory provision for service of process, as long as constitutional due process is satisfied. *U.S. v. Swiss American Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999). Here, the Court has already held that Rule 4(k)(1) does not apply because BSPLC was served overseas. *See* 11/2/16 Tr. at 5.

But as the Court noted at the November 2, 2016 hearing (11/2/16 Tr. at 26-27), in addition to the constitutional requirement, Rule 4(k)(2) requires that there be no jurisdiction "in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2). While normally, the plaintiff bears the burden of proving personal jurisdiction, courts have recognized that it is unfair for plaintiffs to have the burden of proof of 4(k)(2)'s negation requirement, particularly since the

3

information to prove 4(k)(2) is typically in defendant's control. *See Swiss American Bank*, 191 F.3d at 40. Therefore, the First Circuit has developed a burden shifting framework whereby

> We hold that a plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule. This includes a tripartite showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. The plaintiff, moreover, must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state. *If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient. . . . Should the defendant default on its burden of production, the trier may infer that personal jurisdiction over the defendant is not available in any state court of general jurisdiction.*

*Swiss American Bank*, 191 F.3d at 41. (Emphasis added). Plaintiffs have met their prima facie burden here. Clearly, the first two elements of the tripartite test are satisfied because plaintiffs' claims arise under federal law – the Antiterrorism Act – and there is no situation-specific federal statute that provides for personal jurisdiction. As to the issue of constitutional due process, plaintiffs provided sufficient evidence of BSPLC's purposeful availment of the U.S. banking system in connection with its transfers of $50 million to Hezbollah between 2001 and 2006. As explained below, the fact that BSPLC availed itself of the service of banks in New York can satisfy *constitutional* Due Process without giving rise to jurisdiction under New York state *statutory* law. That is so because New York's long-arm statute is stricter than the Due Process Clause.

Accordingly, the burden has shifted to BSPLC to produce evidence to show that "one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." Although, as the defendant, BSPLC is in control of the

4

relevant jurisdictional evidence, it has made a strategic decision to deny jurisdiction in any state (Frey: "No, I believe there is no jurisdiction in New York." 11/2/16 Tr. at 7), and to rely on its claim that plaintiffs' evidence is insufficient to make out a prima facie case for constitutional due process in the United States as a whole. Plaintiffs should not be prejudiced by BSPLC's tactical decision to deny jurisdiction across the board when BSPLC holds the relevant evidence. Therefore, under *Swiss American*, the Court should find that plaintiffs have satisfied their prima facie burden on **constitutional** personal jurisdiction, and that the defendant's failure to come forward with evidence of **statutory** jurisdiction in a particular state mandates that the Court deny BSPLC's motion to dismiss. This result is both appropriate and possible because, as discussed below, New York's personal jurisdiction statute is not co-extensive with, and is narrower than, Due Process.

### 2. New York Long Arm Statute Is Stricter Than Constitutional Due Process

It is well established that the test for New York long arm jurisdiction under CPLR 302 is narrower than that for due process under the constitution:

> The minimum contacts test of *International Shoe* sets the outer limits of personal jurisdiction that may be exercised under the Constitution. New York, however, has not seen fit to allow its courts to exercise the full range of personal jurisdiction permitted by the Constitution. . . rather than codifying the *International Shoe* minimum contacts test, the New York legislature enacted a narrower long arm statute, CPLR 302, which requires that a defendant's minimum contacts with New York meet one of the additional enumerated factors before a New York court will be permitted to exercise specific personal jurisdiction over that defendant. In consequence, any exercise of jurisdiction consistent with CPLR 302 a fortiori is consistent with due process.

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 174 F. Supp. 2d 170, 173 (S.D.N.Y. 2001); *see also Jarolim v. Akris Inc.*, 2015 WL 5821094, at *5, n. 3 (S.D.N.Y. Sept. 9, 2015); *CFTC v. Wilson*, 27 F. Supp. 3d 517, 531 (S.D.N.Y. 2014).

Here, because plaintiffs have satisfied their prima facie constitutional burden under Rule 4(k)(2) and BSPLC has not argued that New York's statutory long arm jurisdiction applies to negate the application of Rule 4(k)(2), there is no need for the Court to also consider whether or not the New York long arm statute might apply under these facts.

Moreover, the issue of personal jurisdiction need not be finally resolved at the outset of the case. Under First Circuit precedent, a finding of personal jurisdiction under the prima facie standard is an "implicit deferral until trial of the final ruling on [personal] jurisdiction." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992); *Neelon v. Krueger*, 2015 WL 4576825, *10 (D. Mass. July 30, 2015). Therefore, the Court can find that plaintiffs have satisfied their prima facie burden for purposes of this motion to dismiss, and if after discovery, it becomes clear that jurisdiction should be based on the New York long arm statute (in tandem with Rule 4(h)(2), which permits service outside the United States on foreign corporations) the Court can revisit the issue of personal jurisdiction at that point.

### B. In the Alternative, the Court Should Order Jurisdictional Discovery

Alternatively, if the Court finds that plaintiffs have not made a prima facie constitutional jurisdictional showing, or that it must address statutory New York long arm jurisdiction, it should order jurisdictional discovery. As the Court itself acknowledged, the record is not sufficiently developed to assess the applicability of the New York long arm statute – Court: "I think there's a possibility that the New York long arm covers it. I'm not sure I have the record yet". *See* 11/2/16 Tr. at 27.

In the First Circuit, jurisdictional discovery is appropriate where, as here, the plaintiffs makes out a "colorable case" for in personam jurisdiction, the facts supporting jurisdiction are "in the hands of the defendant, and the defendant does not deny the relevant jurisdictional facts."

6

*25 CP, LLC v. Firstenberg Machinery Co.*, 2009 WL 4884483, at *10 (D.N.H. Dec. 8, 2009) (citations and internal quotations omitted); *see also, e.g., Marks v. Andersen Windows, Inc.*, 2014 WL 2547558, at *2-3 (D. Mass. June 4, 2014); *Cambridge Place Investment Management, Inc. v. Morgan Stanley & Co., Inc.,* 794 F. Supp. 2d 265, 267-68 (D. Mass. 2011) (same); *New England College v. Drew University*, 2009 WL 395753, at *4 (D.N.H. Feb. 17, 2009) (same). The decision whether to grant or deny jurisdictional discovery is within the Court's discretion. *See, e.g., Marks*, 2014 WL 2547558 at *3; *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp.2d 153, 180-81 (D. Mass. 2008).

Here, plaintiffs have argued that BSPLC is subject to specific personal jurisdiction in the United States because the $50 million they transferred to Hezbollah accounts in Lebanon were processed through the United States for clearing and settlement and through correspondent bank accounts in the United States. Plaintiffs supported these claims with (1) the declaration of Carol Basri and (2) deferred prosecution and settlement agreements between the U.S. government and several banks operating in the U.S. that provided banking services to Iranian banks, including Bank Saderat Iran and BSPLC in violation of U.S. sanctions against Iran. As explained in their opposition to BSPLC's motion to dismiss (DE 90 at 20), BSPLC is subject to personal jurisdiction if even some of the funds passed through the U.S. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013); *Strauss v. Credit Lyonnais, S.*A., 2016 WL 1305160, at 9-12 (E.D.N.Y. March 31, 2016); *Weiss v. Nat'l Westminster Bank PLC*, 2016 WL 1305157, at *8-9 (E.D.N.Y. Mar. 31, 2016); *Gucci America, Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 94 (S.D.N.Y. 2015); *Al Rushaid v. Pictet & Cie*, --- N.E.3d ---, 2016 WL 6837930 (N.Y. Nov. 22, 2016).

In light of the evidence plaintiffs have already presented, plaintiffs are entitled to jurisdictional discovery from BSPLC concerning the route of the $50 million in transfers to Hezbollah accounts in Lebanon, *i.e.*, which banks and correspondent accounts these transfers were routed through and BSPLC's utilization of the services of U.S.-based financial institutions in order to effectuate these transfers. Jurisdictional discovery in these circumstances is roughly analogous to the jurisdictional discovery which is normally granted in the context of claims of illegal file sharing, where the plaintiffs knows the IP address of the defendant but not where the defendant is located. *See, e.g., London-Sire Records,* 542 F. Supp.2d at 157-58; 180-81; *Maverick Entertainment Grp., Inc. v. Does 1-4,350*, 770 F. Supp. 2d 332, 346-348 (D.D.C. 2011); *Sony Music Entertainment, Inc. v. Does 1-40*,326 F. Supp.2d 556, 567 (S.D.N.Y. 2004).

### C. To the Extent Jurisdictional Discovery is Needed, Such Discovery Should Proceed in the Eastern District of New York

The instant case is now one of at least *three* ATA actions arising from BSPLC's provision of funding to Hezbollah. This Court is already aware of the *Freeman* case pending in the Eastern District of New York. Subsequent to the November 2, 2016 hearing, a third case was filed against BSPLC by victims of Hezbollah attacks in Iraq. *See Martinez, et al. v. Deutsche Bank AG, et al*., Case 3:16-cv-01207-JPG-DGW (S.D. Ill.). Accordingly, plaintiffs will shortly file a motion pursuant to 28 U.S.C. § 1407 with the Multi District Litigation panel to consolidate the cases pending against BSPLC before Judge Irizzary in the EDNY. Because the factual issues related to jurisdiction and other threshold issues are identical and will involve the same kinds of discovery as in this case, plaintiffs believe it would be most efficient for one court to resolve these issues. Plaintiffs will propose in their motion to the MDL panel that this case and *Martinez* be transferred to the Eastern District of New York since that case was the first filed, has the largest number of plaintiffs, and is at a more advanced stage than the others.

**D. Conclusion**

BSPLC's motion to dismiss should be denied. Alternatively, this Court should order jurisdictional discovery, or await the disposition of plaintiffs' motion to the MDL.

Dated: Brooklyn, New York
November 30, 2016

    Yours,

    THE BERKMAN LAW OFFICE, LLC
    *Attorneys for the Plaintiffs*

    by: _____
           Robert J. Tolchin

    111 Livingston Street, Suite 1928
    Brooklyn, New York 11201
    718-855-3627

## **CERTIFICATE OF SERVICE**

    I hereby certify that this pleading filed through the ECF system is expected to be sent electronically to the registered participants as identified on the court's docket.

                                            s/Robert J. Tolchin
                                            Robert J. Tolchin