```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


_____
                                       )
ESTER LELCHOOK, individually and       )
as personal representative of the      )
Estate of David Martin Lelchook;       )
MICHAEL LELCHOOK; YAEL LELCHOOK;       )
ALEXANDER LELCHOOK; and                )
DORIS LELCHOOK,                        )
                                       )
                    Plaintiffs,        )
                                       )    Civil Action
          v.                           )    No. 15-13715-PBS
                                       )
THE ISLAMIC REPUBLIC OF IRAN;          )
THE CENTRAL BANK OF THE ISLAMIC        )
REPUBLIC OF IRAN;                      )
BANK SADERAT IRAN; and                 )
BANK SADERAT, PLC,                     )
                                       )
                    Defendants.        )
_____)
```

## MEMORANDUM AND ORDER

December 20, 2016

Saris, C.J.

### INTRODUCTION

David Lelchook, an American citizen, was killed by a rocket fired by Hezbollah into northern Israel during the summer of 2006. His relatives, the plaintiffs here, allege that the defendants -- the Islamic Republic of Iran ("Iran"), the Central Bank of the Islamic Republic of Iran ("CBI"), Bank Saderat Iran ("BSI"), and Bank Saderat, PLC ("BSPLC") -- helped wire money to Hezbollah. The plaintiffs have brought claims under the Foreign

1

Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq., and the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 et seq., as well as supplemental tort claims under Israeli and Massachusetts law. BSPLC now moves to dismiss for lack of personal jurisdiction. The Court **DENIES** the defendant's motion (Docket No. 88) and **TRANSFERS** the case to the Eastern District of New York pursuant to 28 U.S.C. § 1631.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has traversed a long and torturous path. The plaintiffs initially filed this lawsuit in the District Court for the District of Columbia. See Lelchook v. Cent. Bank of the Islamic Republic of Iran, Civ. No. 10-1184 (RCL) (D.D.C. Aug. 20, 2013) ("Lelchook I"). In that case, the plaintiffs brought the same claims as those brought here: FSIA claims, ATA claims, and Israeli tort claims. While the plaintiffs' claims were pending in Lelchook I, another group of plaintiffs brought the same set of claims against the same four defendants. See Kaplan v. Cent. Bank of the Islamic Republic of Iran, 961 F. Supp. 2d 185, 190 (D.D.C. 2013). The claims at issue in Kaplan involved different rocket attacks during the same 34-day conflict along the border between Israel and Lebanon. Id. at 188. The Kaplan court dismissed all claims against BSPLC and BSI, including the claims against BSPLC at issue here: that BSPLC had violated the ATA by aiding and abetting, or directly engaging in,

2

international terrorism. Id. at 206. The court reasoned that the ATA's "act of war" exception precluded liability against BSPLC. Id. at 199-201; see also 18 U.S.C. § 2336(a) ("No action shall be maintained . . . for injury or loss by reason of an act of war."). The court did not address whether it had personal jurisdiction over BSPLC at the time of its dismissal.

Citing its decision in Kaplan, but without affording the Lelchook I plaintiffs a separate opportunity to brief the applicability of the "act of war" exception, the court dismissed all of the plaintiffs' claims against BSI and BSPLC. See Lelchook I, slip op. at 2. Specifically, the court dismissed "plaintiffs' FSIA claims against BSI," "all of plaintiffs' ATA claims" against BSPLC, and all "Israeli Tort claims against BSI and BSPLC." Id. Again, the court did not address personal jurisdiction with respect to BSPLC.

After this adverse ruling in the District of Columbia, the plaintiffs refiled the case here on November 2, 2015. BSPLC then moved to transfer this case under 28 U.S.C. § 1404(a) back to the District of Columbia. After extensive briefing and two hearings, the Court denied BSPLC's motion to transfer. Lelchook v. Islamic Republic of Iran, No. CV 15-13715-PBS, 2016 WL 4203415, at *1 (D. Mass. Aug. 9, 2016). The Court incorporates and assumes familiarity with that opinion.

3

The plaintiffs then filed an amended complaint. This latest iteration provides two bases for personal jurisdiction: First, the plaintiffs argue that the rocket attack that killed David Lelchook was directed at the United States. Second, the plaintiffs assert that some or all of the $50 million transferred between BSPLC and its parent bank -- and that was ultimately wired to Hezbollah -- was processed through the United States. BSPLC now moves to dismiss for lack of personal jurisdiction asserting that neither theory provides a basis for jurisdiction.

## DISCUSSION

### I. Standard of Review

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendant. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) ("Swiss Am. Bank III"). The prima facie standard "permits the district court to consider only whether the plaintiff has proffered evidence that, if credited, is

4

enough to support findings of all facts essential to personal jurisdiction." Daynard, 290 F.3d at 51 (quotation marks omitted). The Court "must accept the plaintiff's (properly documented) evidentiary proffers as true," and "construe them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quotation marks omitted). The facts put forward by the defendants "become part of the mix only to the extent that they are uncontradicted." Id.

## II. First Theory of Jurisdiction: Rocket Attack Targeted Forum

The plaintiffs' first theory is that the rocket that Hezbollah fired from Lebanon into Israel directly targeted the United States.

In federal question cases, like this one, "the constitutional limits of the court's personal jurisdiction are drawn in the first instance with reference to the due process clause of the fifth amendment." Lorelei Corp. v. Cnty. of Guadalupe, 940 F.2d 717, 719 (1st Cir. 1991). "In such circumstances, the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum state (as would be required in a diversity case)." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992). "The defendant's national contacts take center

5

stage because the rule applies only to situations in which federal courts draw jurisdictional authority from the federal sovereign (unreinforced by 'borrowed' state statutes), and, thus, the applicable constitutional requirements devolve from the Fifth rather than the Fourteenth Amendment." United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 36 (1st Cir. 1999) ("Swiss Am. Bank I"). The analysis under the two due process clauses is otherwise the same. See Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016) ("[W]e conclude that the minimum contacts and fairness analysis is the same under the Fifth Amendment and the Fourteenth Amendment in civil cases and proceed to analyze the jurisdictional question."). Non-sovereign entities, even those with governmental attributes, have due process rights under the Fifth Amendment. See id. at 329.

This "constitutional inquiry proceeds in three steps: relatedness, purposeful availment, and reasonableness." Swiss Am. Bank I, 191 F.3d at 36. The First Circuit has explained the steps as follows:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

6

Adelson, 510 F.3d at 49 (quotation marks and internal citations omitted).[1] The plaintiff "must succeed on all three prongs in order to establish personal jurisdiction." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). If the plaintiff fails to satisfy the first two prongs, the Court need not reach the issue of reasonableness. Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995) ("[T]he gestalt factors come into play only if the first two segments of the test for specific jurisdiction have been fulfilled.").

The relatedness prong is a "flexible, relaxed standard," which "requires the plaintiff to show a demonstrable nexus

---

[1] The plaintiffs assert that the recent passage of the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016), changes the inquiry. Congress passed JASTA in part to allow suits against Saudi Arabia for the September 11 attacks. JASTA amends the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A, to allow suits under the ATA against foreign states and to permit ATA liability for aiding and abetting international terrorism. The plaintiffs say that JASTA also broadened the reach of a federal court's exercise of personal jurisdiction, citing the act's non-binding findings of fact. See Pub. L. No. 114-222, § 2(a)(6), 130 Stat. 852, 852 (2016) ("Persons, entities, or countries that knowingly or recklessly contribute material support or resources, directly or indirectly, to persons or organizations that pose a significant risk of committing acts of terrorism that threaten the security of nationals of the United States . . . necessarily direct their conduct at the United States, and should reasonably anticipate being brought to court in the United States to answer for such activities."). Congressional findings of fact do not change the constitutional analysis in this case. See, e.g., Rothe Dev., Inc. v. U.S. Dep't of Def., 836 F.3d 57, 66 (D.C. Cir. 2016) ("Findings, like a preamble, may contribute to 'a general understanding of a statute,' but . . . they 'are not an operative part of the statute.'") (citation omitted).

between its claims and the defendant's forum-based activities, such that the litigation itself is founded directly on those activities." C.W. Downer, 771 F.3d at 66 (quotation marks, internal citations, and alterations omitted). "The purposeful availment prong represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." Id. (quotation marks, internal citations, and alterations omitted).

In assessing the purposeful availment prong, the proper object of the analysis is the forum itself, not the forum's residents. See Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014). In Walden, the Supreme Court held that a Nevada district court lacked personal jurisdiction over a Georgia police officer who seized cash from individuals in the Atlanta airport during their return trip to Nevada. The Court explained that "our 'minimum contacts' analysis looks to the defendant's contacts <u>with the forum State itself, not the defendant's contacts with persons who reside there.</u>" Walden, 134 S. Ct. at 1122 (emphasis added). "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Id. at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the

8

State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Id. at 1123 (internal citation omitted). The "same principles apply when intentional torts are involved." Id.

The plaintiffs argue that a rocket sent from Lebanon into Israel directly targeted the United States. The plaintiffs' allegation is that BSPLC helped funnel funds from Iran to Hezbollah. Hezbollah then fired rockets into Israel. One of the rockets struck and killed an American. The plaintiffs do not allege any facts that would plausibly demonstrate that Hezbollah purposely directed the rocket at the United States or American citizens abroad. The plaintiffs' allegations are inadequate to establish personal jurisdiction.

A number of post-Walden decisions confirm this result. The District Court for the District of Columbia recently concluded that the "argument that specific jurisdiction may be based on the effects of the Palestinian Authority's acts on the U.S. citizens living in Israel is vitiated by the Supreme Court's holding in Walden." Livnat v. Palestinian Authority, 82 F. Supp. 3d 19, 32 (D.D.C. 2015), appeal docketed, No. 15-7024 (D.C. Cir. Mar. 18, 2015) (emphasis in original). The court explained:

> Plaintiffs claim that by attacking a group of Jewish worshippers in the West Bank -- without any actual knowledge or even a reason to believe that those victims were connected to the United States -- the Palestinian Authority was attempting to influence U.S. government

9

> policy towards Israel. Because this claim does not allow the Court to conclude that 'defendant's conduct connects [it] to the forum in a meaningful way,' it is an insufficient basis for specific personal jurisdiction.

Livnat, 82 F. Supp. 3d at 33 (quoting Walden, 134 S. Ct. at 1125). Other decisions in the District Court for the District of Columbia have reached the same conclusion. See Estate of Klieman v. Palestinian Auth., 82 F. Supp. 3d 237, 245-46 (D.D.C. 2015), appeal docketed, No. 15-7034 (D.C. Cir. Apr. 8, 2015); Safra v. Palestinian Auth., 82 F. Supp. 3d 37, 47-48 (D.D.C. 2015), appeal docketed, No. 15-7025 (D.C. Cir. Mar. 18, 2015).

Citing Walden and these three district court cases, the Second Circuit recently reversed a jury verdict against the Palestinian Authority and the Palestine Liberation Organization, holding that the district court lacked personal jurisdiction over the defendants. Waldman, 835 F.3d at 327-41. After holding that the district court's exercise of general personal jurisdiction over the defendants was in error, the court assessed and rejected the plaintiffs' assertion of specific personal jurisdiction:

> In short, the defendants were liable for tortious activities that occurred outside the United States and affected United States citizens only because they were victims of indiscriminate violence that occurred abroad. The residence or citizenship of the plaintiffs is an insufficient basis for specific jurisdiction over the defendants. A focus on the relationship of the defendants, the forum, and the defendants' suit-related conduct points to the conclusion that there is no

10

>specific personal jurisdiction over the defendants for the torts in this case.

Id. at 337.

Based on Walden and its progeny, the Court concludes that exercising jurisdiction on the basis of the plaintiffs' first theory would violate due process.

**III. Second Theory of Jurisdiction: Wire Transfers Processed Through New York**

The plaintiffs' second theory of personal jurisdiction is that the wire transfers at issue were processed through the U.S. banking system.

A district court cannot exercise personal jurisdiction over a defendant unless two conditions are satisfied: (1) a "statute or rule authorizes the forum court to exercise its dominion over the defendants," and (2) the "court's exercise of that jurisdiction would comport with due process." Swiss Am. Bank I, 191 F.3d at 35-36. As the statutory basis for jurisdiction, the plaintiffs rely on Rule 4(k)(2). Rule 4(k)(2) states:

>For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>    (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>    (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) is a catch-all personal jurisdiction provision that "functions as a sort of federal long-arm statute." Swiss Am. Bank I, 191 F.3d at 36. The rule

11

ensures that foreign defendants who lack "single-state contacts sufficient to bring them within the reach of a given state's long-arm statute," but who have "had enough contacts with the United States as a whole to make personal jurisdiction over them in a United States court constitutional" are held responsible for civil violations in federal court (e.g., a defendant that bombs an American embassy abroad may lack minimum contacts with any particular state, but the defendant has established the requisite contacts with the nation as a whole). Id. at 40.

The First Circuit has explained that "three elements are required for the exercise of personal jurisdiction under Rule 4(k)(2): (1) the plaintiff's claim must arise under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction (the 'negation requirement'); and (3) the exercise of jurisdiction must not violate the defendant's rights under the Constitution or federal law." Swiss Am. Bank III., 274 F.3d at 617.

The first requirement is not in dispute. The claim at issue is brought under the ATA, a federal statute. See 18 U.S.C. § 2333(a).

However, the plaintiffs have not satisfied the second requirement. To establish a prima facie case under Rule 4(k)(2), the First Circuit requires that a plaintiff "certify that, based on the information that is readily available to the plaintiff

12

and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." Swiss Am. Bank I, 191 F.3d at 41. Without such a certification, Rule 4(k)(2) does not apply. See, e.g., Acushnet Co. v. Zimventures, LLC, 155 F. Supp. 3d 97, 106 (D. Mass. 2015) ("As the Court has already concluded that the Moving Defendants had sufficient contacts with Massachusetts to give rise to jurisdiction under the Massachusetts long-arm statute, Rule 4(k)(2) is inapposite here."); In re Lupron Mktg. & Sales Practices Litig., 245 F. Supp. 2d 280, 302-03 (D. Mass. 2003) ("The Rule requires plaintiffs to certify that to their knowledge, based on information that is 'readily available,' [the defendant] is not subject to the jurisdiction of any state court. This they have not done."); Richards v. Tsunami Softgoods, Inc., 239 F. Supp. 2d 80, 83 (D. Me. 2003) ("Because a party may invoke Rule 4(k)(2) only where no individual state may properly exercise personal jurisdiction over a defendant, the Court will first consider whether jurisdiction is properly exercised under the Maine long-arm statute.").

  The plaintiffs have failed to make an express certification here. See Docket No. 99 at 6. The plaintiffs have presented facts, however, that would plausibly support jurisdiction in New York. The plaintiffs have rested their second theory of personal jurisdiction on BSPLC's alleged use of the New York

13

banking system. The thrust of the plaintiffs' claim is that BSPLC, a foreign bank based in the United Kingdom, transferred funds to another foreign bank located abroad en route to Hezbollah in Lebanon. These funds were denominated in U.S. dollars. According to the plaintiffs' complaint, "[p]ayment transactions in the Eurodollar market are not typically settled by the physical transfer of US-denominated banknotes from one counterparty to another." Docket No. 81 at ¶ 133. "Instead, Eurodollar transactions are settled electronically in New York through a bank-owned clearinghouse, and then maintained by book entries of credits and debits in the respective counterparties' accounting system . . . ." Id. (emphasis added). "[N]early all U.S. dollar transfers initiated through banks outside the United States are processed electronically by correspondent banks in the United States, almost exclusively in New York." Id. ¶ 139 (emphasis added). "U.S. 'dollar clearing and settlement' -- primarily (in this case) through the Clearing House Interbank Payments System in New York or 'CHIPS-NY' system and the Federal Reserve Bank of New York ('FRB-NY') -- is an elaborate inter-bank system in the U.S. by which banks clear and settle credits and debits in their Eurodollar accounts with other banks all across the globe on a daily basis." Id. ¶ 141 (emphasis added). According to the plaintiffs, this clearing and settlement system is critical even for purely foreign transactions between two

14

foreign banks when the transferred funds are denominated in U.S. dollars. See id. ¶ 142.

Furthermore, the plaintiffs have made representations to the Court that indicate that they believe jurisdiction is proper in New York. In a previous filing, the plaintiffs acknowledged that "the party invoking Rule 4(k)(2) . . . must certify that the defendant is not subject to personal jurisdiction in any of the fifty states," but stated that no such certification is possible here "because at least some of the wire transfers at issue likely passed through New York . . . thereby subjecting BSPLC to specific personal jurisdiction in New York." Docket No. 59 at 10. The plaintiffs explained that even "if only a subset of the total transfers passed through New York, BSPLC would still be subject to personal jurisdiction there." Id.

In their recently withdrawn 28 U.S.C. § 1407 motion before the Judicial Panel on Multidistrict Litigation, the plaintiffs further bolstered the case for jurisdiction in New York: "the $50 million BSPLC transferred to Hezbollah through the U.S. financial system was almost certainly routed through bank accounts in New York (which is the main, if not the exclusive, location of banks which perform such functions)." Docket No. 106 at 9.

New York law has supported the exercise of personal jurisdiction in corresponding circumstances. See Licci v.

15

Lebanese Canadian Bank, 984 N.E.2d 893, 901 (N.Y. 2012) (finding personal jurisdiction over a foreign bank that maintained and utilized a correspondent account in New York to process dollar-denominated transactions similar to those at issue here).

The plaintiffs ask -- if jurisdictional discovery were to be ordered by this Court -- to have that discovery performed in the Eastern District of New York because another case involving similar jurisdictional questions is already pending there. See Docket No. 99 at 8. Notably, the plaintiffs in that case invoke the New York long-arm statute as one basis of jurisdiction, citing the defendants' use of correspondent bank accounts in New York. See Freeman v. HSBC Holdings PLC, No. 14-cv-06601-DLI-CLP (E.D.N.Y. filed Nov. 10, 2014).

For these reasons, the Court concludes that Rule 4(k)(2) is not a proper basis for personal jurisdiction here because there is likely personal jurisdiction in New York.

* * *

The Court is left with two options: dismiss the case for lack of personal jurisdiction or transfer the case to a district where it could have been brought. Because the Court finds that the plaintiffs' jurisdictional allegations indicate that New York plausibly has jurisdiction over this case, see Licci, 984 N.E.2d at 901, and because the plaintiffs request that any jurisdictional discovery occur in the Eastern District of New

16

York, the Court finds that it is in the interest of justice to transfer this case to the Eastern District of New York pursuant to 28 U.S.C. § 1631. See Narragansett Elec. Co. v. EPA, 407 F.3d 1, 8 (1st Cir. 2005) ("28 U.S.C. § 1631 allows us to transfer a case over which we lack jurisdiction to any other court where the action originally could have been brought, so long as such a transfer is in the 'interest of justice.'"); see also Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 117 (1st Cir. 2016) (ruling that § 1631 permits "transfer where a court lacks either personal or subject matter jurisdiction"), cert. denied, No. 16-180, 2016 WL 4180211 (U.S. Oct. 11, 2016).

## ORDER

The defendant's motion to dismiss (Docket No. 88) is **DENIED**. The case is **TRANSFERRED** to the Eastern District of New York pursuant to 28 U.S.C. § 1631.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge