UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ESTER LELCHOOK, individually and as personal
representative of the Estate of David Martin Lelchook,
MICHAL LELCHOOK, YAEL LELCHOOK,
ALEXANDER LELCHOOK, and DORIS LELCHOOK,

                Plaintiffs,                MEMORANDUM AND ORDER
                                                 16-CV-07078

  - against -

THE ISLAMIC REPUBLIC OF IRAN, THE
CENTRAL BANK OF THE ISLAMIC REPUBLIC
OF IRAN (a/k/a Bank Markazi Jomhouri Islami Iran),
BANK SADERAT IRAN, and BANK SADERAT, PLC,

                Defendants.
-----------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiffs Ester Lelchook, individually and as representative of the Estate of David Martin Lelchook ("Lelchook"), Michal Lelchook, Yael Lelchook, Alexander Lelchook, and Doris Lelchook[1] (collectively, "Plaintiffs") brought claims pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2331, *et seq.*, Israeli negligence laws, and Massachusetts tort law against Defendants Islamic Republic of Iran, Central Bank of the Islamic Republic of Iran, Bank Saderat Iran ("BSI"), and Bank Saderat, PLC ("BSPLC"). (ECF No. 81 "Amended Complaint"). On August 10, 2018, BSPLC's attorney moved to withdraw from this action on the basis that BSPLC discharged him. (ECF No. 135-1). After finding that the same attorney is representing BSPLC in another matter and BSPLC "simply directed it to cease working on the Lelchook case," Chief Magistrate Judge Mann warned BSPLC that should its counsel withdraw, the Court will enter a default judgment

---

[1] Doris Lelchook, the late mother of David Lelchook, was alive when this action was filed but died on December 5, 2018. On February 24, 2019, the Court substituted Alexander Lelchook, the Executor of Doris Lelchook's estate, as plaintiff.

1

against the unrepresented entity. (ECF No. 143). On August 30, 2018, BSPLC's counsel confirmed its withdrawal. (ECF No. 147). On September 28, 2018, the Clerk of the Court entered a Certificate of Default. Pending now before the Court is Plaintiffs' motion for default judgment against BSPLC pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (ECF No. 154). For the reasons explained below, Plaintiffs' motion is **GRANTED** as to liability, and in accordance with Rule 55(b)(2) and 28 U.S.C. § 636(b)(1)(A), the issue of damages is respectfully referred to Chief Magistrate Judge Mann to hear and determine.

## BACKGROUND

On August 2, 2006, Lelchook was riding his bicycle on a kibbutz in Israel when he was struck and killed by a rocket fired by the Hezbollah terrorist organization, which was established by the Islamic Republic of Iran in 1982. (Amended Complaint ¶¶ 1, 26). Since 1982, Hezbollah has been operated, controlled, and funded by Iran through Iran's wholly-owned banks, including Defendant BSI and its subsidiary BSPLC. (*Id.* at ¶¶ 13-15, 27). Hezbollah requires financial support to (a) build and maintain its operational infrastructure for the planning and execution of terrorist attacks, (b) purchase and store weapons, explosives, and other material used to commit terrorist attacks, (c) pay, train, transport, and shelter its terrorists, and (d) carry out specific terrorist attacks. (*Id.* at ¶ 110). Between 2001 and 2006, Defendants, including BSPLC, provided Hezbollah with over 50 million United States Dollars ("USD") in the following manner: the Central Bank of Iran transferred Iran's USD funds to BSI, BSI transferred those funds to BSPLC in London, BSPLC transferred the funds to BSI's branches in Lebanon, which are controlled by Hezbollah, and Hezbollah received the funds from there. (*Id.* at ¶¶ 110-11). The purpose of those transfers was to accomplish the objectives listed above, which advances Iran's policy and goal of intimidating and influencing the United States government and the public at large. (*Id.*).

The United States government confirmed those money transfers and in September 2006, BSI and BSPLC were sanctioned and banned from accessing the United States financial system. One year later, in October 2007, then-President George W. Bush designated the banks as Specially Designated Global Terrorists based on "grave acts of terrorism" and an "unusual and extraordinary threat . . . to the national security, foreign policy, or economy of the United States." (Amended Complaint ¶¶ 45-55). Plaintiffs, who are Lelchook's Estate and family members, claim that the $50 million transfer facilitated the Hezbollah rocket attack that killed Lelchook in August 2006, which caused them financial and emotional harm. (*Id.* at ¶¶112-14).

## LEGAL STANDARD

In deciding whether a default judgment should be entered following entry of a certificate of default, a court may accept as true all well-pleaded allegations in the unanswered complaint but must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."). A fact is not "well-pleaded" if it is inconsistent with other allegations in the complaint or is "contrary to uncontroverted material in the file of the case." *Chuchuca v. Creative Customs Cabinets Inc.*, No. 13-CV-2506 (RLM), 2014 WL 6674583, at *5 (E.D.N.Y. Nov. 25, 2014). Further, a pleading's legal conclusions are not assumed to be true. *Id.* Consequently, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. *Id.*

## DISCUSSION

Plaintiffs aver that because BSPLC's default is deemed an admission of all well-pleaded factual allegations and a waiver of its personal jurisdiction defense, "all that remains . . . is to

determine plaintiffs' damages." (ECF No. 155 at 2-4). While BSPLC conceded the truth of Plaintiffs' allegations and waived its defenses, the Court must still protect the integrity of its judgments and satisfy itself that Plaintiffs have established a sound legal basis upon which liability may be imposed. *Au Bon Pain Corp.*, 653 F.2d at 65. Further, Plaintiffs' Amended Complaint contains many legal conclusions, which are not taken as true for purposes of this motion. *Chuchuca*, 2014 WL 6674583, at *5. Accordingly, the Court will address BSPLC's liability as to each of Plaintiffs' claims below.

### I. Plaintiffs' International Terrorism Claims Under 18 U.S.C. § 2333(a)

The Antiterrorism Act ("ATA") provides that "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States . . . ." 18 U.S.C. § 2333(a). The ATA defines "international terrorism" to mean activities that

(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended—

    (i) to intimidate or coerce a civilian population;

    (ii) to influence the policy of a government by intimidation or coercion; or

    (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

18 U.S.C. § 2331(1). Initially, the ATA afforded relief only against the principal perpetrators of acts of international terrorism ("primary liability"), not against secondary actors who facilitated such acts by others. *Linde v. Arab Bank, PLC*, 882 F.3d 314, 320 (2d Cir. 2018). However, on September 28, 2016, Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA"), which expanded liability under the ATA to include "any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2) ("secondary liability"). JASTA expressly states that such aiding and abetting claims are not temporally limited to acts of international terrorism occurring after the statute's enactment, but can be asserted "as of the date on which such act of international terrorism was committed, planned, or authorized." *Id.* The amendment applies to any civil action "(1) pending on, or commenced after the date of JASTA's enactment; and (2) arising out of an injury . . . on or after September 11, 2001." *Linde*, 882 F.3d at 320.

Plaintiffs assert primary and secondary liability claims under the ATA. (Amended Complaint ¶¶ 184-202). In connection with their primary liability claim, they allege that BSPLC itself committed an "act of international terrorism" by providing $50 million to a known terrorist organization, which violated Sections 2339A, 2339B, and 2339C of Title 18 of the United States Code. (Amended Complaint ¶¶ 184-92). They claim that BSPLC did so with the specific intent to "intimidate or coerce a civilian population or to influence the policy of a government by intimidation or coercion" to further Iran's policy and goals by enabling Hezbollah to commit specific terrorist attacks, including the August 2, 2006 rocket attack in Israel. (*Id.* at ¶¶ 110, 188).

The question here is whether providing financial assistance to known terrorist organizations is a "violent act[] or act[] dangerous to human life" within the meaning of 18 U.S.C. § 2331(1). While the Second Circuit noted that providing routine financial support to terrorist

5

organizations is not "so akin to providing a loaded gun to a child," it did not preclude this Court from finding that such conduct is an act of "international terrorism." *Linde*, 882 F.3d at 327 ("We need not here decide whether we would . . . conclude that a jury could find that direct monetary donations to a known terrorist organization satisfy § 2331(1)'s definitional requirements for an act of terrorism."). This Court has made such a finding before, reasoning that when banks such as BSPLC route payments and maintain accounts for terrorist organizations to enhance their ability to commit terrorist attacks, they are committing "acts dangerous to human life." *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 45 (E.D.N.Y. 2019). The Court applies the same reasoning here. Further, BSPLC acted with the specific intent to "intimidate or coerce a civilian population or to influence the policy of a government by intimidation or coercion" and enabled Hezbollah to commit attacks primarily outside the territorial jurisdiction of the United States. Accordingly, BSPLC committed an act of "international terrorism" within the meaning of 18 U.S.C. § 2331(1).

Plaintiffs must also establish that the unlawful act of international terrorism was the proximate cause of their injuries. *Freeman v. HSBC Holdings PLC*, No. 14-CV-6601 (DLI) (CLP), 2018 WL 3616845, at *12 (E.D.N.Y. July 27, 2018); 18 U.S.C. § 2333(a) (limiting recovery to injuries sustained "by reason of an act of international terrorism."); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019) (noting that "when Congress uses the phrase 'by reason of' in a statute, it intends to require a showing of proximate cause."). Probable cause in this context means the conduct was a "substantial factor in the sequence of responsible causation" and the Court must determine "whose injury was reasonably foreseeable or anticipated as a natural consequence." *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013). Without monetary support from BSPLC and the other Defendants, it is unlikely that Hezbollah would have had the means to plan for and carry out the August 2, 2006 rocket attack that resulted in Lelchook's death. Accordingly,

6

BSPLC's conduct was a substantial factor in the sequence of carrying out that attack and it was reasonably foreseeable that the attack would cause injury to him and his family. Therefore, the Court finds that BSPLC's act of international terrorism was the proximate cause of Plaintiffs' injuries and BSPLC is primarily liable under the ATA.

Even if the Court concluded that BSPLC's monetary support is not considered an act dangerous to human life, the Court finds that BSPLC is liable under JASTA's secondary aiding and abetting provision.[2] JASTA defines an act of "international terrorism" as one that is "committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act . . . as of the date on which such act of international terrorism was committed, planned, or authorized." 18 U.S.C. § 2333(d)(2). Since 1997, the United States government has continuously designated Hezbollah as a foreign terrorist organization, (Amended Complaint ¶ 31), and Hezbollah committed an act of international terrorism through its rocket attack. Under JASTA, "any person who aids and abets, by knowingly providing substantial assistance" to the organization who committed an act of international terrorism can be found liable under the ATA. 18 U.S.C. § 2333(d)(2).

The proper legal framework for determining aiding and abetting liability under the ATA is set forth in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), which described three elements needed to establish liability: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury," (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and (3) "the defendant must

---

[2] Plaintiffs filed their Amended Complaint against BSPLC on September 9, 2016, approximately three weeks before JASTA's enactment. (ECF No. 81). Given that this action was "pending" when JASTA was enacted and the claims arise out of a terrorist attack that occurred in 2006, Plaintiffs' claims are covered by JASTA. *Freeman*, 2018 WL 3616845, at *14 (noting that Congress "intentionally enact[ed] JASTA to retroactively apply . . . .").

knowingly and substantially assist the principal violation." *Freeman*, 2018 WL 3616845, at \*18. To establish BSPLC's "awareness" of its role, Plaintiffs need not establish the specific intent required for criminal aiding and abetting or prove that BSPLC knew of a specific terrorist attack. *Id.* at \*19. The Court need only find that BSPLC was "generally aware" that it was playing a "role" in Hezbollah's violent or life-endangering activities. *Id.* Applying those elements here, the Court finds that Hezbollah performed a wrongful act that caused Plaintiffs' injuries and BSPLC was more than generally aware that it was playing a significant role in financing that wrongful act.

In determining the third element, whether BSPLC knowingly and substantially assisted Hezbollah's rocket attack, the Court looks to the following factors: "(1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance." *Miller*, 372 F. Supp. 3d at 47 (citing Halberstam, 705 F.2d at 483-84). Providing banking services, "in an unusual way under unusual circumstances for a long period of time," supports the inference that the defendant provided knowing assistance. *Id.* For that reason, in addition to the reasons noted above, the circumstances indicate that BSPLC knowingly and substantially assisted Hezbollah's rocket attack that killed Lelchook. Accordingly, the Court finds BSPLC liable under JASTA's secondary aiding and abetting provision to the ATA.

II.   **Plaintiffs' Ester, Michal, and Yael Lelchook's Negligence Claim Under Israeli Law**

Plaintiffs Ester, Michal, and Yael Lelchook, who are Lelchook's wife and daughters, respectively, bring this negligence claim under Section 35 of the Israeli Civil Wrongs Ordinance ("CWO"), which provides, in relevant part

> Where a person does some act which in the circumstances a reasonable prudent person would not do, or fails to do some act which in the circumstances such a

> person would do, . . . then such act or failure constitutes carelessness and a person's carelessness as aforesaid in relation to another person to whom he owes a duty in the circumstances not to act as he did constitutes negligence. Any person who causes damage to any person by his negligence commits a civil wrong.[3]

Israeli law imposes liability for negligence in a manner similar to American tort law, requiring a duty and a breach of that duty which causes injury to another. *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 57–58 (D.D.C. 2010). However, the question of foreseeability, which in American tort law is asked only when considering legal causation, is asked in Israeli law when considering both duty and causation. *Id.* at 58.

Whether a duty exists depends on foreseeability and judicial policy considerations. *Id.* Section 36 of the CWO elaborates on the foreseeability requirement and provides that "[f]or the purposes of Section 35, every person owes a duty to all persons whom . . . a reasonable person ought in the circumstances to have contemplated as likely in the usual course of things to be affected by an act, or failure to do an act, envisaged by that section." CWO § 36 (New Version) § 36 (2015). The factors to consider for judicial policy considerations include "the freedom of activity of potential defendants; the protection of both the personal integrity and the property of potential plaintiffs; the financial burden that would be imposed upon potential defendants if a duty of care were to be imposed; the possible influence of the court's decision on social behaviour; the extent to which the risk that resulted in the damage was unusual and unreasonable; the relative ability of the parties to spread the losses; the fear of burdening the courts with excessive litigation; and the fear of groundless or fraudulent claims." *Wultz*, 755 F. Supp. 2d at 59.

The Court finds that BSPLC had a duty to Plaintiffs because it provided financial support to Hezbollah with full knowledge that its support would be used to commit terrorist attacks against

---

[3] Plaintiffs cite to Civil Wrongs Ordinance (New Version) 1968 for its negligence claim, but the Court will rely on the latest version from 2015 to determine BSPLC's liability.

9

innocent victims like Lelchook. Therefore, BSPLC not only could have, but did, foresee the injurious result of its monetary support to Hezbollah. Further, under Israeli law, "a duty attaches to banks under a theory of negligence in cases where there is a direct relationship between the bank's functions and property interest." *Id.* at 60. "Usually, such relationships exist directly between a bank and its customers, but it can involve third parties who rely on the proper conduct of a bank's operations or whose financial interests may be directly affected by the bank's conduct." *Id.* That reasoning applies here and BSPLC was under a duty to refrain from providing financial support to Hezbollah when it knew that its support would result in violent terrorist attacks, injuring the public at large. BSPLC acted unreasonably in providing that support, committing a breach, which facilitated the August 2006 rocket attack and caused Plaintiffs' injuries. Accordingly, BSPLC is liable for negligence under CWO § 35.

 III. **Plaintiffs' Ester, Michal, and Yael Lelchook's Aiding and Abetting Claim Under Israeli Law**

Plaintiffs Ester, Michal, and Yael Lelchook also bring an aiding and abetting claim under Section 12 of the CWO, which provides that "any person who joins or aids in, authorizes, counsels, commands, procures or ratifies any act done or to be done, or any omission made or to be made, by any other person will be liable for such act or omission." Having already found that BSPLC intentionally aided Hezbollah in committing violent terrorist attacks, the Court finds that BSPLC is liable under CWO § 12.

 IV. **Plaintiffs Doris and Alexander Lelchook's Intentional Infliction of Emotional Distress Claim Under Massachusetts Law**

Plaintiff Doris Lelchook, who was Lelchook's mother, claims that BSPLC intended to cause her emotional distress when it provided financial support to Hezbollah to carry out the

August 2006 rocket attack. Under Massachusetts law, "[t]o sustain a claim of intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress." *Roman v. Trustees of Tufts Coll.*, 461 Mass. 707, 717–18, 964 N.E.2d 331, 341 (2012). Liability for "extreme and outrageous" conduct "cannot be predicated upon mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities, nor even is it enough that the defendant . . . intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort; rather, liability may be found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

The Court already found that BSPLC should have known that providing Hezbollah with the necessary funds to plan for and commit violent acts of terrorism would cause emotional distress to the attack's victims and their family members. In reviewing the standing requirements under the ATA, this Court noted that "[f]amily members do not need to be present for the terrorist attacks to recover under the ATA, because a terrorist attack is precisely the sort of situation in which presence at the time is not required in light of the severity of the act and the obvious range of potential grief and distress that directly results from such a heinous act." *Miller*, 372 F. Supp. 3d at 41. It is that reasoning which leads the Court to conclude that BSPLC's conduct was so outrageous in character and was intended to cause severe emotional distress to Lelchook's family

11

members. Because its rocket attack did cause such distress, (Amended Complaint ¶ 225), BSPLC is liable for intentional infliction of emotional distress under Massachusetts law.

## CONCLUSION

For the reasons set forth above, Plaintiffs motion for a default judgment against BSPLC is GRANTED as to liability, and in accordance with Rule 55(b)(2) and 28 U.S.C. § 636(b)(1)(A), the issue of damages is respectfully referred to Chief Magistrate Judge Mann to hear and determine.

SO ORDERED.

Dated:      Brooklyn, New York
            June 27, 2019

/s_____
I. Leo Glasser                    U.S.D.J.