UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ESTER LELCHOOK, *et al.*,

                Plaintiff,

      -against-

THE ISLAMIC REPUBLIC OF IRAN, *et al.*,

                Defendants.

Case No.
16-Civ.-7078 (ILG)(rlm)

------------------------------------------------------------------X

## PLAINITFFS' MEMORANDUM OF LAW IN SUPPORT OF A DETERMINATION OF DAMAGES, AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT AGAINST DEFENDANT BSPLC

### PRELIMINARY STATEMENT

On June 27, 2019, Judge Glasser granted the plaintiffs' motion for judgment by default on liability against defendant Bank Saderat PLC ("BSPLC"), and referred the determination of plaintiffs' damages to Chief Magistrate Judge Mann "in accordance with Rule 55(b)(2) and 28 U.S.C. § 636(b)(1)(A)." (DE 156 at 12). This submission is respectfully made in support of Plaintiffs' claim for damages.

As discussed below, the plaintiffs respectfully request that this Court adopt the damages awards already made by the U.S. District Court for the District of Columbia in the plaintiffs' action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, against the Syrian Arab Republic. *Lelchook, et al. v. Syrian Arab Republic,* 16-cv-1550-RC-RMM (D.D.C.). Additionally, and as detailed further *infra*, plaintiffs respectfully request that this Court award the widow of the decedent, plaintiff Ester Lelchook (who lacked a federal cause of action in her

personal capacity in the FSIA action), an individual award of damages in the amount typically awarded by courts in this circuit to spouses of individuals murdered in terrorist attacks.

## PROCEDURAL POSTURE

Judge Glasser's June 27, 2019 order stated that the reference to this Court was to "hear and determine." (DE 156 at 12). However, the "determine" aspect of that order is problematic, since most federal courts that have addressed the issue have held that a magistrate judge lacks authority to enter a final default judgment absent consent of the defendant to the referral. *See e.g. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1355 (11th Cir. 2010) ("because the district court never adopted or approved of the magistrate judge's final judgment for Saperstein, and the parties never consented to the final judgment, we determined that the judgment was not binding."); *In re Pringle,* 495 B.R. 447, 457-462 (9th Cir. BAP 2013) (collecting cases and noting that the defendant's prior consent, *vel non*, to the referral, is likely dispositive); *but see Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F. Supp. 2d 90, 99 (D.D.C. 2011) (magistrate ruled that he had authority to enter default judgment despite the lack of consent by the defendant to the referral). To the best of plaintiffs' knowledge, the Second Circuit has not decided this issue.

Notably, in this case, the reference to Chief Magistrate Judge Mann to determine damages was made only *after* BSPLC defaulted and ceased participation in the case. Thus, at the time the reference was made the defendant was not present by counsel to agree to the reference.

In order to avoid all doubt, ensure finality, and prevent subsequent direct attack on the judgment (in this Court) or collateral attacks on the judgment (*e.g.*, in other jurisdictions during enforcement proceedings), plaintiffs respectfully request that the magistrate judge issue a recommendation on damages to be reviewed by the district judge pursuant to Fed. R. Civ. P. 72,

and that thereafter final judgment by default against defendant BSPLC be entered by the district judge.

## DISCUSSION OF DAMAGES

**A. This Court Should Adopt the Damages Findings and Awards Made by the D.C. District Court in Plaintiffs' FSIA Action Against Syria**

On March 25, 2019, the U.S. District Court for the District of Columbia entered a decision finding Syria liable under the FSIA for the plaintiffs' injuries resulting from the rocket attack in which decedent David Martin Lelchook was murdered. *Lelchook v. Syrian Arab Republic*, 2019 WL 2191177 (D.D.C. Mar. 25, 2019). On April 8, 2019, the D.C. court directed the plaintiffs to submit written damages evidence. *Lelchook*, Civ. No. 16-1550, Minute Order, 4/8/2019.

On July 15 and September 5, 2019, the plaintiffs submitted their damages evidence in the FSIA action (*id*. at DE 28-29), which consisted of the following documents:

   a) Expert Declaration of Dr. Rael Strous (attached hereto as Exhibit A);
   b) Declaration of Alexander K. Lelchook (attached hereto as Exhibit B);
   c) Declaration of Doris E. Lelchook (attached hereto as Exhibit C);
   d) Declaration of Michal Lelchook (attached hereto as Exhibit D);
   e) Declaration of Yael Lelchook Galili (attached hereto as Exhibit E); and
   f) Expert Report of Chad Staller and Stephen Dripps (attached hereto as Exhibit F).

After carefully considering and analyzing this evidence, the D.C. district court determined that the plaintiffs are entitled to compensatory damages awards for their emotional distress resulting from the murder of David Martin Lelchook, in the following amounts:

| | |
|---|---|
| Alexander Lelchook | $2,750,000 |
| Estate of Doris Lelchook | $5,000,000 |
| Michal Lelchook | $6,250,000 |
| Yael Lelchook | $6,250,000 |

*See Lelchook*, 2019 WL 4673849, at *5-9.

The D.C. district court also awarded plaintiff Ester Lelchook, in her capacity as personal representative of the Estate of David Martin Lelchook, damages in the amount of $285,655, as compensation for the economic harm caused by David's untimely death. *Id*., at *3.[1]

For the reasons below, the plaintiffs respectfully request that this Court adopt the damages findings and awards made in the FSIA action:

*First*, it is well established that the self-same *types* of damages awarded to the plaintiffs in their FSIA § 1605A(c) action against Syria – *i.e.*, emotional distress due to the death of a family member in a terrorist attack, and economic losses suffered by the estate of the decedent – are available under ATA, 18 U.S.C. § 2333. *See e.g. Goldberg v. UBS*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) (citing cases and concluding that "every court that has construed § 2333(a)" has found that it permits both emotional and pecuniary damages); *Linde v. Arab Bank*, 384 F. Supp. 2d 571, 588-589 (E.D.N.Y. 2005) (same); *Sisso v. Islamic Republic of Iran*, 2007 WL 2007582, at *10 (D.D.C. 2007) ("injuries consisting of mental anguish and emotional pain and suffering… are cognizable under the ATA."); *Hurst v. Socialist People's Libyan Arab Jamahiriya,* 474 F.Supp.2d 19, 30 (D.D.C.2007) (holding that siblings and parents of individuals killed in terrorist attack could bring ATA claims for emotional distress); *Knox v. PLO*, 442 F. Supp. 2d 62, 78 (S.D.N.Y. 2006) (estate of terror victim entitled to economic damages under ATA).

Indeed, because the types of remedies available in ATA § 2333 actions and in FSIA § 1605A(c) actions are identical, courts hearing terrorism cases commonly consider and apply

---

[1] Ester Lelchook is also the sole heir of decedent David Martin Lelchook. *See* Exhibit G (certified translation of the Inheritance Order issued by the Inheritance Registar in Haifa, Israel).

Notably, Ester Lelchook did not seek an ***individual*** damages award in the FSIA action, and did not submit evidence of her damages as an individual, because FSIA § 1605A(c) does not provide a cause of action to individuals, like Ester, who are non-U.S. family members of U.S. citizens murdered in terrorist attacks. By contrast, as discussed below, the ATA ***does*** provide Ester with an individual cause of action.

damages findings from ATA cases in FSIA cases, and vice versa. *See e.g. Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2010 WL 11507790 (M.D. Fla. June 14, 2010) (using awards in prior FSIA and ATA cases interchangeably as guidance for determining award in ATA case); *Ungar v. Palestinian Authority*, 304 F. Supp. 2d 232, 267-77 (D.R.I. 2004) (same).[2]

***Second***, plaintiffs have submitted to this Court (as Exhibits A-F) the same damages evidence that they submitted to the D.C. district court in their FSIA action. This Court therefore can independently examine and assess that evidence, and ensure that it concurs with the findings and damages awards made in the FSIA action.

***Third***, it would be a clear waste of judicial and party resources, and an unnecessary and painful burden on the plaintiffs, to require them to make a new damages presentation in this Court. *Cf. Rubin v. Hamas*, 2004 WL 2216489, at *3 (D.D.C. Sept. 27, 2004) ("The plaintiffs indicate that any evidence that they would present in the instant [ATA] case would be identical to the evidence presented in [their FSIA case against Iran] and that a second hearing 'would be a massive waste of judicial resources, and would needlessly force the plaintiffs to relive and reiterate the emotionally excruciating testimony previously given by them.' The court agrees. Accordingly, the court uses its previous findings of fact from [the FSIA case] to calculate appropriate damages.").

Accordingly, the plaintiffs respectfully request that this Court adopt the damages findings and awards made by the D.C. district court in their action against Syria. Section 2333 of the ATA

---

[2] In his June 27, 2019 decision, Judge Glasser found that plaintiffs had established BSPLC's liability not only under the ATA, but also under Israeli and Massachusetts law. However, because the ATA's remedies are so broad, any remedies available under those Israeli and Massachusetts causes of action would be duplicative of remedies available under the ATA. Therefore, plaintiffs have no reason to, and so do not, seek awards under Israeli or Massachusetts law.

also provides for treble damages. Therefore, pursuant to 18 U.S.C. § 2333, the compensatory awards made by the D.C. district court should be trebled in this case. *Cf. Rubin*, 2004 WL 2216489, at n.2 (trebling awards previously made in FSIA action, when entering judgment in ATA action).

### B. The Court Should Award Ester Lelchook, in Her Individual Capacity, Compensatory Damages in the Amount of 12.5 Million Dollars.

In addition to the award to plaintiff Ester Lelchook in her capacity as personal representative (and heir) of the Estate of David Martin Lelchook, discussed above, plaintiffs respectfully request that the Court award Ester Lelchook damages in her *individual* capacity, as David's widow and "survivor" within the meaning of 18 U.S.C. § 2333.

As noted above, plaintiff Ester Lelchook, the widow of decedent David Martin Lelchook, did not seek or receive an individual damages award in the Syria action, because FSIA § 1605A(c) does not provide a cause of action to individuals, like Ester, who are non-U.S. family members of U.S. citizens murdered in terrorist attacks. But the provision governing *this* case, 18 U.S.C. § 2333, is very different. Section 2333 of the ATA expressly provides that: "Any national of the United States injured in his or her person… by reason of an act of international terrorism, or his or her estate, *survivors*, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333 (emphasis added).

The courts in this district and across the country have held unanimously that the plain language of ATA § 2333 – which permits a claim by "survivors" of U.S. nationals – provides a federal cause of action for the non-American family members (such as spouses) of Americans killed in acts of international terrorism. *See e.g. Ungar v. Palestinian Authority*, 304 F. Supp. 2d 232, 271 (D.R.I. 2004) ("18 U.S.C. § 2333(a) contains no requirement that the survivors or heirs

of a United States national killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute."); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006) (the term "survivor" in ATA § 2333 means a claimant with "a familial relationship, such as that of child, parent, spouse, or sibling of a U.S. national.").

In support of Ester Lelchook's individual claim for damages in this action, plaintiffs respectfully submit the attached Declaration of Ester Lelchook, dated November 14, 2019 (Exhibit H), and the attached Expert Declaration of Dr. Rael Strous, dated November 2, 2019 (Exhibit I).

As detailed in her declaration, Ester was 53 years-old, and she and David had been married for 25 years, when her husband was struck and murdered by a Hizbollah rocket. Ex. H at ¶¶ 2, 4. On the day of the attack she heard that missiles were landing near their kibbutz, and tried unsuccessfully to reach David by phone. *Id*. at ¶¶ 10-12. The crushing news of her husband's death was not conveyed to her in person, but in a telephone call. *Id*. at ¶¶ 11. Ester was asked to identify David's body at the forensic department; her last view of David, which she believes will never leave her mind, is of David's head crushed and his eyes fixed open. *Id*. at ¶ 13.

Ester's grief and sadness over David's brutal murder has been and remains profound, pervasive and overwhelming, notwithstanding the extensive grief and mental health counseling she has received. *Id*. at ¶ 14-21. It has disrupted both her professional life and her relationships with her family members. *Id* at ¶ 15. She experiences "traumatic memories of the day of [David]'s death" which are "particularly difficult at family get-togethers or family milestones." *Id*. at ¶ 18. Ester explains that: "Even on times when I should be happy, such as the day of the birth of a grandchild, I would feel profound sadness and pain." *Id.* She has also suffered

flashbacks and dreams frequently of David, as if he were still alive. *Id*. at ¶ 20. Since, and because of, the murder, she has difficulty sleeping, chronic lack of appetite, and palpitations. *Id*. at ¶¶ 19-20. She also "stopped caring about [her] personal hygiene and appearance." *Id*. at ¶ 19. Ester further explains that while trying to cope "with [her] own grief and sadness" she has also needed to try to help her two daughters, who were "were suffering terribly," with their own pain and grief. *Id*. at ¶ 17. Ester "tried to keep [their] family unit together but it has been and continues to be very difficult." *Id*. Now 66, widowed for over 13 years, Ester has not remarried. *Id*. at ¶ 8.

Additional details and a thorough clinical analysis of the impact of David's murder on Ester are provided in the attached Expert Declaration of Dr. Rael Strous. Ex. I. Dr. Strous is a highly qualified, U.S.-board certified psychiatrist. *Id*. at pp. 1-3. He is employed as the Director of the Department of Psychiatry at the Maayenei Hayeshua Medical Center in Israel, and also serves as Full Professor, Department of Psychiatry at the Faculty of Medicine at the Tel Aviv University and maintain a small private practice in clinical psychiatry. *Id*. Dr. Strous has approximately 150 peer-reviewed research publications to his name, including several in the field of chronic post-traumatic stress disorder (PTSD), and has provided expert testimony and opinions in numerous cases in the United States and Israel. *Id*.

Dr. Strous examined Ester Lelchook in-person on two different occasions, administered several standardized tests, and reviewed the records prepared by the mental health professionals who provided treatment to Ester Lelchook since the murder. *Id*. at pp. 3-5. Dr. Strous sets forth his clinical findings and analysis in great detail. *See* Psychiatric Evaluation dated October 30, 2019 (attached to the Expert Declaration of Dr. Rael Strous (Ex. I) as Exhibit 2), *passim*.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

Courts hearing ATA and FSIA cases typically award spouses of individuals murdered in terrorist attacks damages for emotional distress (also known as "solatium") in amounts ranging between $8 million and $12.5 million. *See e.g. In re Terrorist Attacks on Sept. 11, 2001*, 2016 WL 8711419, at *8 (S.D.N.Y. Oct. 14, 2016), *report and recommendation adopted*, 2016 WL 6465922 (S.D.N.Y. Oct. 31, 2016) (citing cases, and awarding spouses of Americans killed in terror attack $12.5 million each); *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 2010 WL 11507790, at *3 (M.D. Fla. June 14, 2010) (collecting cases, and concluding that "it is reasonable to award non-economic damages of $12,000,000.00 to Judith Janis, as spouse.").

In determining an appropriate award of damages to the family member of a person murdered in a terrorist attack within the establish range (here, in the case of a spouse, between $8 and $12.5 million), courts look to "medical proof of severe pain, grief or suffering on behalf of the claimant." *Relvas v. Islamic Republic of Iran*, 2018 WL 1092445, at *4 (D.D.C. Feb. 28, 2018) (citations omitted). ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

In light of the precedent cited above, and the extreme emotional distress, grief and anguish which plaintiff Ester Lelchook has suffered and will continue to suffer due to the murder of her husband, the plaintiffs respectfully request the maximum award of $12.5 million for plaintiff Ester Lelchook to compensate her for the severe pain and grief she has suffered as a result of the murder of her husband. *Cf. In re Terrorist Attacks*, 2016 WL 8711419, at *8. Pursuant to 18 U.S.C. § 2333, that award should be trebled.

**WHEREFORE**, plaintiffs respectfully request that the magistrate judge issue a decision awarding damages in the amounts set forth above, to be reviewed by the district judge pursuant to Fed. R. Civ. P. 72, and that thereafter final judgment by default against defendant BSPLC be entered by the district judge.

Dated:   Brooklyn, New York
           December 23, 2019

                                                    Respectfully submitted,

                                                    THE BERKMAN LAW OFFICE, LLC
                                                   *Attorneys for the Plaintiff*

                                           by: _____
                                                     Robert J. Tolchin

                                                   111 Livingston Street, Suite 1928
                                                   Brooklyn, New York 11201
                                                   718-855-3627

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date indicated below a true copy of the foregoing was served on defendant Bank Saderat PLC as follows:

**BY FIRST CLASS MAIL TO:**

Bank Saderat, PLC
5 Lothbury
London, EC2R 7HD
United Kingdom

**BY EMAIL TO:**
borhani@saderat-plc.com

Dated:   Brooklyn, New York
         December 23, 2019

_____
Robert J. Tolchin