UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ESTER LELCHOOK, *et al.*,

                Plaintiff,

-against-

THE ISLAMIC REPUBLIC OF IRAN, *et al.*,

                Defendants.

------------------------------------------------------------------X

Case No.
16-CV-7078 (ILG)(rlm)

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING DAMAGES, IN FURTHER SUPPORT OF THEIR MOTION FOR JUDGMENT BY DEFAULT AGAINST DEFENDANT BSPLC**

**INTRODUCTION**

The plaintiffs respectfully submit this Supplemental Memorandum pursuant to the Order entered by Chief Magistrate Judge Mann on June 1, 2020 (DE 166) (the "Order"), and in further support of their motion for judgment by default against defendant Bank Saderat PLC ("BSPLC").

**DISCUSSION**

**A. The Expert Forensic Economic Report Has Been Supplemented**

The Order found that the expert forensic economic report submitted by Ester Lelchook as the personal representative of the Estate of David Lelchook, in support of her claim for economic damages caused by David Lelchook's death, lacked a sufficient evidentiary basis because "plaintiff's expert provides no basis for his assumptions as to the decedent's earnings or eligibility to receive pension benefits." (Order at 2-3).

The lacuna identified by the Court has been remedied. Attached hereto is the revised Expert Report of Chad L. Staller and Stephen M. Drips, dated July 10, 2020 (Exhibit A), which is based

upon facts and data provided in the Declaration of Itzhar Slotski, dated June 18, 2020 (Exhibit B). Mr. Slotski is the manager of Kibbutz Saar Western Galilee, where the decedent worked. The revised expert economic report establishes that the economic loss to the Estate of David Lelchook is $299,986. This sum comes to $899,958.00 after being trebled pursuant to ATA § 2333.

**B. Ester Lelchook's Individual Claim As a "Survivor" Under the ATA**

The ATA provides in relevant part that, "Any national of the United States injured in his or her person … by reason of an act of international terrorism, *or* his or her estate, *survivors*, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees." 18 U.S.C. § 2333 (emphasis added).

Until recently, every court to have considered the question has held that ATA § 2333 – the the plain language of which permits a claim by "survivors" of U.S. nationals, without reference to their citizenship – allows ATA claims by the non-American family members (such as spouses) of U.S. citizens killed in terrorist attacks. *See Ungar v. Palestinian Authority*, 304 F. Supp. 2d 232, 271 (D.R.I. 2004) ("18 U.S.C. § 2333(a) contains no requirement that the survivors or heirs of a United States national killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute."); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 620 (E.D.N.Y. 2006) (Sifton, *S.D.J.*), (rejecting defendant's argument that "survivors" of U.S. victims must themselves be Americans, and holding that: "plaintiff Matanya Nathansen, a citizen of Israel, sues as the father of U.S. citizen Tehilla Nathansen. Julie Averbach, an Israeli citizen, sues as the wife of U.S. citizen Steve Averback. Amichai, Nava, Orit and Netanel Steinmetz sue as the children of U.S. citizens Jacob and Deborah Steinmetz, and Nevenka Gritz, a French citizen, sues as the mother of U.S. citizen David Gritz.

2

Accordingly, these plaintiffs have sufficiently alleged that they are the heirs or survivors of U.S. nationals and may sue under 2333(a)."); *Weinstock v. Abu Marzook*, 2019 WL 1470245, at *4 (S.D. Fla. Apr. 3, 2019) ("Dov Weinstock, who was not a United States citizen, is included among those permitted to bring claims under Section 2333. As Yitzchak's father, Dov, was a "survivor" of a United States national who was murdered in the terrorist attack. The ATA "contains no requirement that the survivors or heirs of a United States national killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute." (quoting *Ungar*).

Thus, though Ester Lelchook is not a U.S. citizen her late husband David Lelchook was, and Ester is entitled to prosecute an ATA action as a "survivor" of her husband. Accordingly, Ester Lelchook asserted ATA claims against BSPLC in this action. (*See* First Amended Complaint ("FAC"), DE 81 at pp. 48-49, third and fourth claims for relief, brought "On Behalf of All Plaintiffs," under ATA § 2333).

However, the Court's Order of June 1, 2020 points out that a decision issued earlier this year in the Southern District of New York, *Averbach v. Cairo Amman Bank*, 19-cv-4-GHW, 2020 WL 1130733, at *2 (S.D.N.Y. Mar. 9, 2020), *adopting* 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020), diverged from the consensus of authority, and held that ATA claims cannot be asserted "by foreign nationals, who were survivors of U.S. nationals killed in a terrorist attack." (DE 166 at 2).

As discussed below, the decision in *Averbach* cannot undermine Ester Lelchook's individual ATA claims in this action, for several interrelated reasons.[1]

---

[1] The Court's June 1, 2020 Order stated that, "Assuming *arguendo* that Ester Lelchook, in her individual capacity, does not have a cause of action under the ATA, she may nevertheless be entitled to

1.  *Judge Glasser's Opinion Finding BSPLC Liable to All Plaintiffs Under the ATA Is the Law of the Case*

On June 27, 2019, Judge Glasser granted the plaintiffs' motion for judgment by default on liability against defendant BSPLC. (DE 156). Judge Glasser did so only after carefully examining the FAC and the relevant law relevant "to each of Plaintiffs' claims," as he explained:

> Plaintiffs aver that because BSPLC's default is deemed an admission of all well-pleaded factual allegations and a waiver of its personal jurisdiction defense, "all that remains . . . is to determine plaintiffs' damages." While BSPLC conceded the truth of Plaintiffs' allegations and waived its defenses, ***the Court must still protect the integrity of its judgments and satisfy itself that Plaintiffs have established a sound legal basis upon which liability may be imposed***. Further, Plaintiffs' Amended Complaint contains ***many legal conclusions, which are not taken as true for purposes of this motion***. Accordingly, the Court will address BSPLC's liability ***as to each of Plaintiffs' claims below***.

DE 156 at 3-4 (emphasis added, citations omitted).

After conducting this exhaustive inquiry, Judge Glasser found BSPLC liable to *all* the plaintiffs—without distinction—for primary and secondary liability under the ATA. (*Id.* at 4-8). Thus, Judge Glasser has already determined that BSPLC is liable to Ester Lelchook under the ATA, and that determination is the law of the case. "As the Supreme Court has stated, the law of the case doctrine posits that when a court decides a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case … [A] court may depart from the

---

recover damages on account of BSPLC's negligence under Israeli law. Plaintiffs have not, however, addressed damages under Israeli law." *Id*. at 2 (citations omitted).

Plaintiffs' counsel accordingly contacted Dr. Boaz Shnoor, a professor of tort law in Israel who has provided expert opinions on Israeli law in a number of similar cases in U.S. courts. Dr. Shnoor informed counsel that his schedule is extremely impacted at this time (due to COVID-19 exigencies) and that he would be able to provide an opinion only in September. Given this circumstance, plaintiffs respectfully request that the Court defer the issue of Ester's damages under Israeli law until after it has ruled whether she has a claim under the ATA (a ruling which, if affirmative, will moot the issue of Israeli law).

law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice." *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 428 (E.D.N.Y. 2011) (citations and quotation marks omitted).

None of these exceptions to the law of the case doctrine apply here. The recent decision in *Averbach* obviously does not bind this Court, and there has been no "clear error" or "manifest injustice." While Judge Glasser's decision did not reference plaintiffs' respective citizenships, the FAC expressly alleged that David Lelchook was, and plaintiffs Michal, Yael, Alexander and Doris Lelchook are, United States citizens, but conspicuously omitted any such allegation regarding Ester Lelchook. (DE 81 at ¶¶ 4-5). Given Judge Glasser's stated intention to "protect the integrity" of the Court's judgments, and to "satisfy [him]self that Plaintiffs have established a sound legal basis upon which liability may be imposed" in respect to "each of Plaintiffs' claims" (DE 156 at 4), and the extent to which he scoured the FAC and analyzed its allegations in detail, it is impossible to conclude that Judge Glasser erroneously overlooked this issue.

To the contrary, it appears clear either that Judge Glasser was aware of and agreed with the decisions in *Ungar*, *Weiss* and *Weinstock* holding that ATA § 2333 permits claims by all "survivors" of U.S. terrorism victims, or that Judge Glasser simply read § 2333 as did the judges in *Ungar*, *Weiss* and *Weinstock*, and declined, as they did, to legislate from the bench by reading into the statute a citizenship limitation that Congress declined to include.

Accordingly, Ester Lelchook's individual right to recover under the ATA was already determined and is the law of the case, and that determination should not be disturbed.

5

### 2. *Ester Lelchook's Standing to Sue Under the ATA Goes To the Sufficiency of Her Claims, Not Damages, and Is Not Encompassed Within the Referral to the Magistrate Judge*

The question of whether Ester Lelchook is entitled to bring an action under the ATA as the "survivor" of U.S. citizen David Lelchook, despite the fact that she is not a U.S. national, is a question **regarding the sufficiency of her claims, not her damages**. While the question of Ester's entitlement to damages under the ATA turns on the answer to the logically prior question of whether as a non-U.S. national she can state a claim under the ATA in the first place, the former question cannot even be asked, unless and until the latter question is answered in the affirmative.

Therefore, the question raised by the Court in its June 1, 2020, Order, in light of the recent decision in *Averbuch*, goes to **whether Ester Lelchook can state a claim under the ATA**.

That question, respectfully, is not within Judge Glasser's narrow and specific referral to Chief Magistrate Judge Mann of "the issue of damages." (*See* DE at 2, 12).[2]

For this reason, too, *Averbach* is irrelevant at this stage of the case.

### 3. *Alternatively, <u>Averbach</u> Is Erroneous On the Merits*

In the alternative (*i.e.*, if the Court finds that Ester Lelchook's right to assert ATA claims as David Lelchook's "survivor" is neither the law of the case nor beyond Judge Glasser's referral to Judge Mann), the Court should reject the holding in *Averbach*, and adopt the holdings in *Ungar*, *Weiss* and *Weinstock*, on the merits, for the reasons set forth below:

#### a. The "Plain Language" Rule Supports *Ungar*

Courts are required to apply the fundamental rule that, "in any case of statutory construction, we start our analysis with the language of the statute. Where the statutory language

---

[2] Nor was there any need for a referral on this issue, since Judge Glasser's finding that BSPLC is liable under the ATA to all plaintiffs **necessarily** means that all plaintiffs state valid ATA claims.

6

provides a clear answer, our analysis ends there." *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (citations, quotation marks and ellipsis omitted). *See also e.g. Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Fed. Hous. Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 141 (2d Cir. 2013) ("In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning.").

The court in *Ungar* and its progeny followed this "plain language" rule; the *Averbach* court violated it. Section 2333 of the ATA provides in relevant part—very plainly—that: "Any national of the United States injured … by reason of an act of international terrorism, ***or*** his or her estate, survivors, or heirs, may sue therefor…". 18 U.S.C. § 2333 (emphasis added). The *Ungar* court read this provision, observed that "survivors" contains no nationality restriction, and correctly declined to read into the plain statutory language a limitation that Congress elected not to include. *Ungar*, 304 F. Supp. 2d at 271 ("18 U.S.C. § 2333(a) contains no requirement that the survivors or heirs of a United States national killed by an act of international terrorism must themselves be citizens of the United States, and this court will not read such a requirement into the statute.").

The decision of the *Averbach* court to insert such a restriction into the ATA violated not only the plain language canon, but also the rule that Congress is presumed to act intentionally, when it employs disparate language. "[W]e ordinarily resist reading words or elements into a statute that do not appear on its face. … Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997) (brackets and quotation marks omitted).

Furthermore, *Averbach* ignores the fact that the two sections of § 2333 at issue (*i.e.*, "national of the United States" *or* his or her "survivors") are separated by the term "or." This is significant, because "or" "is almost always disjunctive, that is, the words it connects are to be given separate meanings." *United States v. Woods*, 571 U.S. 31, 45 (2013) (quotation marks and citation omitted); *United States v. Awan*, 607 F.3d 306, 313 (2d Cir. 2010) ("Canons of statutory construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise.") (brackets omitted). Moreover, the term "or" as specifically used in ATA § 2333 has consistently been held to be disjunctive. *Lelchook v. Commerzbank AG*, 2011 WL 4087448, at *3 (S.D.N.Y. Aug. 2, 2011) (Hellerstein, D.J.) (noting that § 2333 uses "the disjunctive article 'or'" and holding that: "The fair meaning is that any national, or that national's estate, heirs or survivors may sue. This fair interpretation implements the congressional intent to interpret the statute broadly."); *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1338 (D. Utah 2006) ("Congress chose to write the statute in the disjunctive.").

Thus, because the ATA grants a cause of action to a "national of the United States" ***or*** her "survivors," these terms are to "be given separate meanings," *Awan*, 607 F.3d at 313, and there is no basis to read a U.S. nationality requirement into the term "survivors."

### b. The Construction in *Averbach* Renders the Term "Survivor" Superfluous

It is black letter law that statutes should be construed so as "to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and citation omitted); *see also United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992) (noting the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect"). Indeed, rendering a term in a statute superfluous "is fatal" to any proposed construction of the statute, because "[w]e are obliged to give effect, if possible, to

8

every clause and word of a statute, and to render none superfluous." *Tablie v. Gonzales*, 471 F.3d 60, 64 (2d Cir. 2006) (ellipsis, quotation marks and citation omitted).

*Averbach* held that the term "survivors" in § 2333 should be parsed to mean "survivors" of U.S. national terror victims, who are *themselves* U.S. nationals. This construction must be rejected because it would render the term "survivors" entirely unnecessary and superfluous. A U.S. national whose family member was killed in a terrorist attack **has an independent claim under the ATA, by virtue of being a U.S. national**. "Courts that have considered this issue universally allow ATA claims based on the emotional distress that U.S. nationals experience as a result of the death or injury of their family members." *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 516, n.8 (S.D.N.Y. 2014). Indeed, a U.S. national is entitled to bring an ATA action for the terrorist murder of a family member, even if the deceased victim was **not** an American:

> It is clear that Ms. Biton cannot recover under the ATA as a representative of Mr. Biton's estate or as his survivor, because he was not a U.S. national. If Ms. Biton sues as the principal victim herself, however, she may be able to state a claim if she can allege a cognizable injury that arose by reason of an act of international terrorism. 18 U.S.C. § 2333(a). The amended complaint avers that Ms. Biton is "an American citizen" and that her husband's death resulted from "a bombing attack on an Israeli civilian vehicle traveling in the Gaza Strip." …
>
> The Court concludes that Ms. Biton has properly alleged an "injur[y] in ... her person" for purposes of the ATA. *Id.* The statute does not specifically require that a plaintiff suffer *physical* harm prior to filing suit. Moreover, the term "personal injury" means "[a]ny invasion of a personal right, including mental suffering and false imprisonment." Black's Law Dictionary (7th ed. 1999). Ms. Biton's alleged injuries fall within this widely-accepted definition. … Similarly, "mental anguish, emotional pain and suffering, [and] loss of society, companionship, comfort, protection, marital care, attention, advice or counsel" are harmful. *Brooks v. Bienkowski,* 150 Md.App. 87, 818 A.2d 1198, 1200 (2003) (defining solatium). These injuries are cognizable under the plain language, as well as a common-sense interpretation, of the ATA.

9

*Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F. Supp. 2d 172, 181–82 (D.D.C. 2004) (footnotes omitted). *See also Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005) (Gershon, *D.J.*) (agreeing with *Biton* and finding that "plaintiffs, who are U.S. citizens suing for various non-physical injuries, such as emotional distress and loss of consortium, after their family members, who were not U.S. nationals, became victims of acts of international terrorism" were entitled to bring independent claims under the ATA); *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 426 (E.D.N.Y. 2009) (Sifton, *S.D.J.*) (endorsing *Biton* and *Linde*, finding that American wife and children of Canadian citizen killed in terrorist attack could bring ATA claims, and noting that "every court that has construed § 2333(a) has reached the same conclusion"); *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 30 (D.D.C. 2007) (same).

Since a U.S. national whose family member was killed in a terrorist attack **already** has a cause of action under the ATA by dint of being a U.S. national, the term "survivors" would be completely superfluous if it were construed to include only "survivors" who are U.S. nationals. Simply put, if Ester Lelchook were American, she would be entitled to bring an ATA action as a "U.S. national," and would not need to resort to a derivative action as a "survivor."

Thus, construing "survivors" to include a U.S. nationality requirement, as per *Averbach*, renders that term superfluous—which "is fatal" to such a construction. *Tablie*, 471 F.3d at 64. Indeed, ***only*** by construing "survivors" as encompassing non-U.S. nationals can that term be given "some operative effect." *U.S. v. Nordic Vill.*, 503 U.S. at 36.

### c. Legislative History Supports *Ungar*'s Construction

Since, as demonstrated above, the plain language of ATA § 2333 and the rules of statutory construction allow only one interpretation of the term "survivors," it would not be appropriate to consult legislative history. *U.S. v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) ("We resort to

10

legislative history only if, after consulting canons of statutory instruction, the meaning remains ambiguous."); *Lotes v. Hon Hai Precision Indus.*, 753 F.3d 395, 406 (2d Cir. 2014) ("courts do not resort to legislative history to cloud a statutory text that is clear.") (quotation marks omitted).

If the Court nevertheless finds that the legislative history of ATA § 2333 must be consulted, that history clearly supports the construction of § 2333 adopted in *Ungar* and its progeny.

As originally drafted, ATA § 2333 referenced only "any national of the United States." The Justice Department proposed that Congress modify the text of the bill to allow suits by the family members of the U.S. national. Specifically, the Justice Department suggested "that this provision be amended to include, in addition to the individual directly affected, such additional parties as the estate of the decedent, survivors, and heirs. This will ensure that the bill is fully protective of **the interests of <u>all</u> relevant parties to the civil suit.**" Statement of Deputy Assistant Attorney General Steven R. Valentine, July 25, 1990, *Antiterrorism Act of 1990: Hearing Before the Subcomm. on Courts & Admin. Practice of the Senate Comm. on the Judiciary,* 101st Congress 8 (1990) at 38 (emphases added). *See also id.* at 34 ("The Department supports legislation to provide a new civil remedy against terrorists … for the families and relatives of victims.").

Thus, the term "survivors" was added to the ATA in order to be "protective of the interests of all relevant parties to the civil suit," including "the families and relatives" of U.S. victims. Clearly, the family members of U.S. terror victims are among "all relevant parties" to an ATA suit, even if they themselves are not U.S. nationals. This legislative history strongly supports the holding in *Ungar* that a nationality requirement should not be read into the term "survivors."

Nor is it in any way surprising or illogical that Congress chose to protect all family members of U.S. citizens, regardless of their own citizenship. Aside from the obvious humanitarian goal of not leaving the widows or orphans of U.S. citizens murdered in terrorist attacks without

11

recourse or remedies, allowing ATA suits by such family members—*i.e.*, increasing the financial exposure and liability of terrorists and their supporters—serves the overarching purpose of the ATA. "[T]he ATA's legislative history reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement. One of the Act's sponsors … declared that the Act would 'empower[ ] victims with all the weapons available in civil litigation['] … The District Court here appropriately recognized the important U.S. interests at stake in arming private litigants with the 'weapons available in civil litigation to deter and punish the support of terrorism." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013). *See also Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 149, n.10 (D.C. Cir. 2011) ("The ATA's legislative history confirms that the primary purpose of the statutory multiplier is to deter future acts of terrorism"); *Weiss v. Arab Bank, PLC*, 2007 WL 4565060, at *5 (E.D.N.Y. Dec. 21, 2007) ("purpose of the ATA [is] to deter terrorist activity and hold liable those who engage in it."); *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62, 75 (S.D.N.Y. 2006) ("the underlying purpose of the ATA [is] to deter and punish acts of international terrorism.").

### C. There Is No Basis for an Offset in This Action

The Court's Order of June 1, 2020 notes that the plaintiffs herein were also plaintiffs in *Lelchook v. Syrian Arab Republic*, Civ. No. 16-1550 (D.D.C.) ("Syrian Action") and in *Lelchook v. Commerzbank AG*, 10-cv-5795 (S.D.N.Y.) ("Commerzbank Action"), and directs plaintiffs to "(a) identify each case in which that person, as an individual or representative of an estate, has secured a judgment for damages and/or monetary compensation through settlement for such injuries, (b) specify the amounts awarded and/or received, and (c) address whether it is appropriate for the Court to apply an offset for amounts collected against those judgments/settlements.

Plaintiffs should also brief the imposition of joint and several liability in the context of judgments entered in different districts." (DE 166 at 3).

In respect to the Court's question (a): as confirmed in the attached Declaration of Noel J. Nudelman ("Nudelman") none of the plaintiffs herein, as an individual or representative of an estate, has secured a judgment for damages and/or monetary compensation through settlement for such injuries, except in the Syrian Action and Commerzbank Action. (Nudelman at ¶ 10).

In respect to the Court's question (b): In the Commerzbank Action plaintiffs received a single, unsegregated settlement payment ▮. (Nudelman at ¶ 5). This sum was divided among plaintiffs by agreement as follows: Ester Lelchook ▮; Michal Lelchook ▮; Yael Lelchook ▮; Doris Lelchook ▮; Alex Lelchook ▮. (*Id.*). In the Syria Action the plaintiffs have not received any recovery. (*Id.* at ¶ 8).

In respect to the Court's question (c): it would **not** be appropriate to grant BSPLC an offset in this case for the settlement amount received by the plaintiffs in the Commerzbank Action, for the reasons set forth below:

*First*, as a threshold matter, the Court should not *sua sponte* award BSPLC an unsought offset. BSPLC litigated this action for years, and ultimately elected to cease participation, withdraw its counsel, and intentionally default the case. "[T]he burden rests squarely upon" BSPLC to assert and prove a claim of offset. *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 483 (E.D.N.Y. 2013). "In choosing not to participate in the litigation, a defaulting party [such as BSPLC] eschews the opportunity to carry this burden, and therefore does not demonstrate its entitlement to, or deserve the benefit of, a set-off." *Id.* (collecting cases).

13

This Court need not, and should not, assume BSPLC's burden; nor should the burden be shifted to the plaintiffs to *disprove* BSPLC's entitlement to an offset.[3]

*Second*, Judge Glasser "found that BSPLC intentionally aided Hezbollah in committing violent terrorist attacks." (DE 156 at 10). The common law does not permit offsets for the benefit of intentional tortfeasors. *See e.g. Evans v. Dean Witter* 116 Nev. 598, 609-10, 5 P.3d 1043, 1050 (2000) ("We conclude that, as a matter of law, intentional tortfeasors … may not apply credit from settlements by their joint tortfeasors … in reduction of judgments against them arising from the intentional misconduct."); *Klosterman v. Fussner*, 99 Ohio App. 3d 534, 539–40, 651 N.E.2d 64, 68 (1994) ("a joint tortfeasor who acted intentionally should be treated differently as to damages from one who was merely negligent… we hold that the rationale of the traditional collateral source rule should be applied to cases which involve joint tortfeasors, one or more of whom acted intentionally, even though the traditional collateral source rule itself would not apply.").

*Third*, because this is a suit under a federal cause of action (*i.e.*, the ATA), any offset would be governed by "proportionate liability" under federal common law, not by a dollar-for-dollar (pro tanto) reduction. "The Second Circuit has recognized that federal common law governs whether a defendant in an action brought under federal law is 'entitled to a credit against judgment for the settlement by another party to the dispute.' *Singer v. Olympia Brewing Co.,* 878 F.2d 596, 599 (2d Cir. 1989) … The United States Supreme Court has held that the amount of any set-off of a damage award should be determined by the jury's allocation of proportionate responsibility to the released defendant. *See McDermott, Inc. v. Amclyde,* 511 U.S. 202, 213–14, 114 S.Ct. 1461, 128 L.Ed.2d

---

[3] Plaintiffs recognize that the Court's Order directing the present briefing regarding an offset has already shifted BSPLC's burden to them to some extent. However, that burden-shifting will be exacerbated if the magistrate judge recommends an offset, because plaintiffs will then need to file objections, and potentially an appeal—which would further unjustifiably shift BSPLC's burden to them.

14

148 (1994); *see also Bragger v. Trinity Capital Enter. Corp.,* 30 F.3d 14, 17 (2d Cir. 1994) (applying *McDermott* set-off rule to a securities class action); *Gravatt v. City of New York,* 73 F.Supp.2d 438 (S.D.N.Y. 1999) (recognizing *McDermott* governs federal actions brought in New York)." *Chloe v. Zarafshan*, 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009).

The Second Circuit explicitly held in *Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017) that when a non-settling defendant fails to prove the proportionate liability of settling defendant, and the liability of the settling defendant has never been established, a set off should not be allowed. "'Under the proportionate share approach, the allocation will take place at trial.' *McDermott*, 511 U.S. at 217 … That is, the jury is to decide the relative faults of the tortfeasors. The State has never been found to have been at fault, as it was sued under and settled pursuant to a state law that provided for compensation without any showing of fault by the State ... Further, Volpe did not seek to introduce evidence tending to show that the State bore a share of the responsibility for plaintiffs' incarceration, nor did he request an instruction that the jury should determine the State's proportionate share of liability or consider the effect of a prior settlement when determining damages. For these reasons, there is no basis for applying a setoff to the damages awarded on Restivo and Halstead's Section 1983 claims." *Restivo*, 846 F.3d at 586-87.

Exactly so here: BSPLC has failed to even attempt to prove Commerzbank's proportionate liability, and Commerzbank's liability has never been established elsewhere. To the contrary, in agreeing to settle with the plaintiffs, Commerzbank denied "any admission of liability," and stated that it was making an offer "of compromise of disputed claims for which liability is expressly

15

denied by the Parties." (Nudelman at ¶ 7 (quoting Settlement Agreement)). Therefore, "there is no basis for applying a setoff" in this action. *Restivo*, at 587. [4]


Dated:   Brooklyn, New York
         July 16 , 2020

                                          Respectfully submitted,

                                          THE BERKMAN LAW OFFICE, LLC
                                          *Attorneys for the Plaintiff*


                                          by: _____
                                              Robert J. Tolchin

                                          111 Livingston Street, Suite 1928
                                          Brooklyn, New York 11201
                                          718-855-3627

---

[4] The Court directed plaintiffs to "brief the imposition of joint and several liability in the context of judgments entered in different districts." (DE 166 at 3). Plaintiffs did not locate cases discussing the entry of judgments in different *districts* per se, but *Restivo* indicates that for the purpose of an offset, defendants can be deemed jointly and severally liable even if they are sued in the courts of different *sovereigns*. In *Restivo*, the plaintiffs sued the settling defendant in the New York State Court of Claims, and the non-settling defendant in federal court. While the Second Circuit found that the offset was properly denied in the specific circumstances of that case, its very consideration of the question clearly implies that a judgment entered in one court (state or federal) may potentially serve as the basis for an offset in an action pending in a different court.