UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ESTER LELCHOOK, individually and as personal
representative of the Estate of David Martin Lelchook,
MICHAL LELCHOOK, YAEL LELCHOOK,
ALEXANDER LELCHOOK, individually and as the
Executor of the Estate of DORIS LELCHOOK,

                                  Plaintiffs,                 REPORT AND
                                                  RECOMMENDATION

                                                  16-CV-7078 (ILG)

            -against-

THE ISLAMIC REPUBLIC OF IRAN, THE
CENTRAL BANK OF THE ISLAMIC REPUBLIC
OF IRAN (a/k/a Bank Markazi Jomhouri Islami Iran),
BANK SADERAT IRAN, and BANK SADERAT, PLC,

                                Defendants.
------------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

       Plaintiffs Ester Lelchook (individually and as a representative of the estate of David

Lelchook), Michal Lelchook, Yael Lelchook, Alexander Lelchook (individually and as

Executor of the Estate of Doris Lelchook) -- the spouse, two daughters, brother, and (with

respect to Doris Lelchook) mother of David Lelchook, respectively -- brought claims pursuant

to the Anti-Terrorism Act (the "ATA"), 28 U.S.C. § 2331, Israeli negligence laws, and

Massachusetts tort law, against defendants Islamic Republic of Iran ("Iran"), Central Bank of

the Islamic Republic of Iran ("Central Bank of Iran"), Bank Saderat Iran ("BSI"), and Bank

Saderat, PLC ("BSPLC").   On September 21, 2018, United States District Judge I. Leo

Glasser directed the Clerk of the Court to enter a Certificate of Default against BSPLC for

failing to secure representation by counsel after its counsel's withdrawal from the case.   See

Order (Sept. 21, 2018), #150; Clerk's Entry of Default (Sept. 28, 2018).   On June 27, 2019,

Judge Glasser granted plaintiffs' motion for default judgment on liability and referred the issue

of damages to the undersigned magistrate judge.   See Order (June 27, 2019) ("6/27/19

Order"), DE #156.

     For the reasons that follow, this Court recommends that plaintiffs be awarded damages

in the amounts specified in this opinion, but that the individual ATA claim of Ester Lelchook

be dismissed, as the ATA does not provide remedies for non-U.S.-nationals claiming damages

for personal injuries.

## BACKGROUND

     On August 2, 2006, David Lelchook ("David") was struck and killed by a rocket fired

by the Hezbollah terrorist organization, while he was riding his bicycle on a kibbutz in Israel.

Amended Complaint (Sept. 9, 2016) ("Am. Compl.") ¶ 1, DE #81.   Hezbollah has long been

operated, controlled, and funded by Iran through Iran's wholly-owned banks, including

defendants BSI and BSPLC, its subsidiary.   Id. at ¶¶ 13-15, 27.   Hezbollah requires financial

support to (a) build and maintain its operational infrastructure for the planning and execution of

terrorist attacks, (b) purchase and store weapons, explosives, and other material used to

commit terrorist attacks, (c) pay, train, transport, and shelter its terrorists, and (d) carry out

specific terrorist attacks.   Id. at ¶ 109.   Between 2001 and 2006, defendants, including

BSPLC, provided Hezbollah with over $50 million by routing transfers from the Central Bank

of Iran to Hezbollah through BSI, and BSPLC in London.   Id. at ¶¶ 110-11.   Plaintiffs claim

that the $50 million transfer facilitated the Hezbollah rocket attack that killed David in August

2006, causing plaintiffs financial and emotional harm.  Id. at ¶¶ 112-14.   Accordingly, the Lelchook family now seeks damages for each of their claims under the ATA.

In 2018, after interposing jurisdictional challenges for several years in multiple jurisdictions, "BSPLC [] determined not to further participate in the proceedings in this case." Letter to the Honorable Roanne L. Mann (Aug. 16, 2018) ("8/16/18 Ltr."), DE #138, DE #139.   In his June 27, 2019 Order, Judge Glasser found BSPLC liable under the ATA, as well as under Israeli and Massachusetts law.   See 6/27/19 Order.   In their submissions regarding damages, plaintiffs rely on the same evidence that they proffered to the United States District Court for the District of Columbia in Lelchook v. Syrian Arab Republic, Civ. No. 16-1550 (the "D.C. Action"), an action they brought against the Syrian Arab Republic pursuant to the Foreign Sovereign Immunities Act (the "FSIA"), 18 U.S.C. § 1605A, in connection with the same rocket attack.   Further, plaintiffs request that this Court adopt the damages awarded by U.S. District Judge Rudolph Contreras in the D.C. Action.   See Lelchook v. Syrian Arab Republic, Civil Action No.: 16-1550 (RC), 2019 WL 4673849 (D.D.C. Sept. 25, 2019) ("Lelchook").

On June 1, 2020, this Court directed plaintiffs to supplement their submissions to address several issues: (1) whether Ester Lelchook, a foreign national, can recover under the ATA for her own injuries, (2) Ester Lelchook's claims for damages under Israeli law, (3) the basis for the assumptions contained in plaintiffs' expert forensic economic report, and (4) whether a set-off should be applied for amounts plaintiffs have already collected as compensation for the same injuries as those alleged herein.   See Scheduling Order (June 1,

2020) ("6/1/20 Order"), DE #166.

## DISCUSSION

### I.  Legal Standard

Following the Clerk's notation of a defendant's default, entry of a default judgment is appropriate provided the pleading properly states a claim upon which relief can be granted. See, e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116 (FB)(JMA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009).  If the allegations properly state a claim, the plaintiff must then establish damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]"  Id.  A default does not, however, establish "that the alleged facts constitute a valid cause of action[.]"  TAGC Mgmt., LLC v. Lehman, Lee & Xu, Ltd., 536 F.App'x 45, 46 (2d Cir. 2013) (internal quotation marks omitted).  Indeed, "before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law."  Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

"When deciding a [defendant's liability on a] motion for default judgment, courts have . . . looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]" Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, *3 (E.D.N.Y. Dec.

4

7, 2009).   On a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "FRCP"), courts follow a two-prong approach.   See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009).   First, the complaint's conclusions of law and formulaic recitations of elements of a cause of action should be disregarded.   See id. at 678.   Second, where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."   Id. at 679.

Because the extent of the damages pleaded by a plaintiff is not deemed to be established by the default, the court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty."   Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).   This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff in regards to the level of damages sought.   See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).   It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether or not to hold an evidentiary hearing.   See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).   The moving party is entitled to all reasonable inferences from the evidence it offers.   See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

## II.   Liability for Ester Lelchook's Individual ATA Claim for Emotional Injuries

### A.   Law of the Case

In finding BSPLC liable under the ATA as to each plaintiff, Judge Glasser recognized

in his 6/27/19 Order that the District Court must "satisfy itself that Plaintiffs have established a sound legal basis upon which liability may be imposed." 6/27/19 Order at 4. Following the filing of plaintiffs' original damages submissions, this Court raised the issue of whether Ester Lelchook, a foreign national, can bring a claim for personal injuries on her own behalf under the ATA. See 6/1/20 Order.

Plaintiffs argue that Judge Glasser's determination that BSPLC is liable to Ester Lelchook under the ATA is law of the case. See Memorandum in Support (July 16, 2020) ("Supp. Mem.") at 4, DE #170, DE #172. However, "the doctrine of law of the case comes into play only with respect to issues previously determined." Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979) (emphasis added); see 18 James W. Moore, et al., Moore's Federal Practice § 134.20[3] (3d ed. 2020) (the law of the case doctrine applies only to "issues that have actually been decided"). While Judge Glasser found BSPLC liable under the ATA as to all plaintiffs, he did not discuss whether Ester Lelchook suffered any actionable injury under the statute.

Moreover, the doctrine of law of the case is merely discretionary and "does not limit a court's power to reconsider its own decisions prior to final judgment." Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 97 (2d Cir. 2013) (internal quotation marks and citation omitted); accord Arizona v. California, 460 U.S. 605, 618 (1983) ("Law of the case directs a court's discretion, it does not limit the tribunal's power."). It is well settled that a default judgment that determines liability subject to a determination of damages at an inquest is not considered a final judgment. See Hood v. Ascent Med. Corp., 691 F. App'x 8, 9 (2d Cir.

6

2017); Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 336 (2d Cir.

1986).   In addition, under Rule 54(b) of the FRCP, non-final orders "may be revised at any

time before the entry of a [final] judgment."   Fed. R. Civ. P. 54(b); see Hood, 691 F.App'x

at 9.   Accordingly, "[a] district court may *sua sponte* . . . revisit an award of a default

judgment as to liability when a damages inquest has yet to be completed, as is the case here."

Lee v. Karaoke City, 18 Civ. 3895 (PAE) (SDA), 2020 WL 2036706, at *1 (S.D.N.Y. Apr.

28, 2020).

      B.   The ATA

      The ATA provides, in relevant part:

> Any national of the United States injured in his or her person, property, or
> business by reason of an act of international terrorism, or his or her estate,
> survivors, or heirs, may sue therefor in any appropriate district court of the
> United States and shall recover threefold the damages he or she sustains and the
> cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).

      Plaintiffs argue that the plain language of the statute allows for ATA claims to be

brought by the non-American family members of U.S. citizens killed in terrorist attacks.   See

Supp. Mem. at 2.   According to plaintiffs, Ester Lelchook is a "survivor" of a U.S. national

(David) within the meaning of the statute, which, they claim, does not require that the

"survivor" herself be a U.S. national.   See id.   First, plaintiffs contend that the use of the

disjunctive "or" separating "[a]ny national of the United States injured . . . by reason of an act

of international terrorism," and his or her "survivors" signifies that those provisions have

separate meanings, and there is no basis upon which to impose the U.S. nationality

requirement appearing in the first clause onto the term "survivors." Id. at 7-8. Plaintiffs further reason that since a U.S. national whose foreign national family member was killed in a terrorist attack already has a claim under the ATA by virtue of being a "national of the [U.S.]," it would be superfluous to include a U.S. nationality requirement for "survivors." See id. at 9-10.

As this Court observed in its 6/1/20 Order, in Averbach v. Cairo Amman Bank, 19-cv-0004-GWH-KHP, 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020), adopted, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020), Magistrate Judge Kathleen H. Parker and District Judge Gregory H. Woods interpreted the ATA's statutory language to preclude foreign national plaintiffs from bringing claims for their own personal injuries. There, U.S. nationals injured in a series of terrorist attacks, as well as the estates, heirs, and families of U.S. nationals killed or injured in those attacks, had sued Cairo Amman Bank under the ATA for aiding and abetting the terrorist organization Hamas. See id. at *1. The bank moved to dismiss the claims of foreign national plaintiffs suing for their own personal injuries under the ATA. In Averbach, as in this case, the plaintiffs argued that as "survivors and heirs of U.S. nationals killed" in terror attacks, they should be allowed to bring ATA claims on their own behalf, not just on behalf of their deceased family members. In recommending dismissal of the foreign national plaintiffs' individual claims, Judge Parker interpreted the language of the statute to require that the actionable injury be suffered by a "national of the United States" and that suit be brought only "by the injured [U.S.] national 'or his estate, survivors, or heirs' *for injuries to the U.S. national*." Id. at *9. In adopting Judge Parker's statutory interpretation over plaintiffs'

objections, Judge Woods concluded that "any United States national, or his estate, survivors, or heirs, may sue for any injuries that the national receives to his person, property, or business by reason of an act of international terrorism." 2020 WL 1130733, at *2. As Judge Woods opined, "[p]laintiffs' standing analysis is incoherent and simply does not accord with the plain text of the statute." Id.

Notwithstanding a split of authority within this District,[1] this Court concludes that the Averbach court's construction is the most natural reading of the ATA. The first clause of the statutory provision makes clear that the "injur[y]" to be compensated must have been suffered by a "national of the United States." Those who "may sue therefor" include both "any national of the United States" and that person's "estate, survivors, or heirs." There is no requirement that the "estate, survivors, or heirs" be U.S. nationals, so long as they "sue for any injuries that the [U.S.] national receives to his person, property or business." Indeed, the statute's authorization for "estate[s], survivors, or heirs" to bring suit is expressly limited to suits "therefor" – meaning, for injuries to U.S. nationals. Thus, the reference to a U.S. national's "estate, survivors, or heirs" plainly describes those who may sue on behalf of a U.S. national, for injuries suffered by a U.S. national. See Averbach, 2020 WL 486860, at *9; Rosenberg, 2016 U.S. Dist. LEXIS 87724, at *62 (finding that "the statute is clear that only claims brought on behalf of individuals who are United States nationals may proceed under the

---

[1] Compare Rosenberg v. Lashkar-e-Taiba, 10 CV 5381 (DLI) (CLP), 2016 U.S. Dist. LEXIS 87724, at *47 (E.D.N.Y. July 5, 2016) (claims "brought on behalf of noncitizens[] cannot proceed under the ATA"), adopted in relevant part, 2016 U.S. Dist. LEXIS 52116 (E.D.N.Y. Mar. 31, 2017), with Henkin v. Kuveyt Turk Katilim Bankasi, A.S., -- F.Supp.3d --, 2020 WL 6143654, at *5 (E.D.N.Y. Oct. 20, 2020) (concluding that under the ATA, the nationality of the decedent's children "makes no difference"). See infra pp. 12-13.

ATA"). The ATA does not include language authorizing foreign nationals to bring ATA claims in a U.S. court for their own injuries caused by an act of international terrorism.[2]

Plaintiffs argue that the aforesaid interpretation ignores the canon of statutory construction that words connected by the disjunctive "or" be given separate meanings. See Supp. Mem. at 8. In other words, the term "national of the United States" must be defined separately from "estate, survivors, or heirs," so that the latter has no nationality restriction. See id. Contrary to plaintiffs' contention, this Court's interpretation does give independent meaning to both phrases. A "survivor" need not be a "national of the United States" in order to sue for injuries suffered by a "national of the United States." Pursuant to section 2333(a), the "estate, survivors, or heirs" of a U.S. national may bring a claim for injuries to the decedent, *or* a U.S. national may bring a claim for his or her own injuries.

As noted above, plaintiffs argue that restricting "survivor" suits to U.S. nationals would render the term "survivors" superfluous because a U.S. national has an independent claim by virtue of the first clause of the statute. See id. at 8-9. However, Ester Lelchook's claims illustrate why plaintiffs' argument must fail. Here, Ester Lelchook, as David's sole heir, see Pl. Mem. at 4 n.1; Israeli inheritance certificate, DE #163-7, sues on behalf of David Lelchook's estate for economic damages. Even as a foreign national, she has a right to seek such damages under the ATA because she is an "estate, heir or survivor" of David, a U.S. national who was killed in a terrorist attack, and she seeks to recover for David's economic

---

[2] Similarly, Congress did not authorize foreign nationals to bring suit under the FSIA for their own injuries caused by the death of U.S. family members in terrorist attacks. See Pl. Mem. at 4 n.1 (noting that Ester Lelchook did not assert a claim under the FSIA in the D.C. Action).

injuries.[3]   In comparison, Ester also sues on her own behalf, not as a "survivor," but for her own "injur[ies] in [] her person, property or business by reason of an act of international terrorism"; under the plain language of the statute, because Ester is not a "national of the United States," she fails to satisfy the first statutory prong to establishing her entitlement to relief under the ATA for her own personal injuries.[4]

Indeed, in *dicta*, the Supreme Court recognized as much in <u>Jesner v. Arab Bank</u>, 138 S.Ct. 1386 (2018), where it compared the ATA to the Alien Tort Statute (the "ATS"), 28 U.S.C. § 1350, in determining that foreign nationals could not sue foreign banks under the ATS for their own injuries by terrorists overseas.   There, the Court stated that the ATA "provides a cause of action only to 'national[s] of the United States,' and their 'estate, survivors, or heirs[,]'" and "excludes foreign nationals (with the possible exception of foreign survivors or heirs)."   138 S.Ct. at 1404.   In fact, the Court opined that because the ATA "is part of a comprehensive statutory and regulatory regime that prohibits terrorism and terrorism financing[,]" to permit foreign plaintiffs to bring suit under the ATS would inappropriately "bypass Congress' express limitations on liability under the [ATA]."   <u>Id.</u> at 1405.

In initially responding to this Court's 6/1/20 Order, plaintiffs cited no case in this Circuit that had held that non-American family members of a U.S. citizen killed in a terrorist

---

[3] That a U.S. national is authorized to bring an ATA claim for her own personal injuries caused by the terrorist murder of a non-American family member does not make the converse true.   <u>See</u> <u>Linde v. Arab Bank, PLC</u>, 384 F.Supp.2d 571, 589 (E.D.N.Y. 2005) (U.S. citizens could sue under the ATA for emotional distress caused by terrorist attack killing non-U.S. family member).

[4] In contrast, the "estate" of Doris Lelchook, a U.S. national, properly brings a claim for her own injuries caused by her son's murder.

attack could bring a claim for their own personal injuries.    In Weiss v. National Westminster Bank LLC, 453 F.Supp.2d 609 (E.D.N.Y. 2006), the court merely addressed a procedural issue in concluding, on a motion to dismiss, that it was not necessary for plaintiffs to "specifically use the terms 'heirs' or 'survivors' in alleging their relationship to U.S. nationals."    Id. at 620.

Plaintiffs' supplemental memorandum relies on two out-of-circuit decisions, neither of which this Court finds persuasive.    In Estates of Ungar ex rel. Strachman v. Palestinian Authority, 304 F.Supp.2d 232, 271 (D.R.I. 2004), the magistrate judge, on a motion for a default judgment, found that the ATA permitted the children of a U.S. citizen, who were not themselves U.S. citizens, to recover for their own emotional injuries as "the survivors or heirs of a United States national killed by an act of international terrorism."    Id. at 270-71.    Ungar in turn relied on cases that do not, however, concern claims under the ATA; rather, both decisions cited in Ungar involved claims under the FSIA, which has entirely different statutory language.    See Anderson v. Islamic Republic of Iran, 90 F.Supp.2d 107, 113 (D.D.C. 2000) (finding that the FSIA confers jurisdiction over a claim if "either the plaintiff or the victim [is] a United States national at the time of the incident"); Cicippio v. Islamic Republic of Iran, 18 F.Supp.2d 62, 64, 68 n.7 (D.D.C. 1998) (same).    The district court in Weinstock v. Abu Marzook, No. 17-23202-CIV, 2019 WL 1470245 (S.D. Fla. Apr. 3, 2019), the other case cited by plaintiffs in their supplemental submission, largely followed the Ungar decision without undertaking an independent analysis.    See id. at *4 (citing Ungar and Weiss).

Last month, while plaintiffs' submissions were sub judice, plaintiffs filed a letter

alerting the Court to a recent ATA decision issued out of this District, Henkin v. Kuveyt Turk Katilim Bankasi, S.A., -- F.Supp.3d --, 2020 WL 6143654 (E.D.N.Y. Oct. 20, 2020).   See Letter Informing Court of Recent Decision (Oct. 20, 2020), DE #176.   In Henkin, Judge Brian M. Cogan held that the children and wife of a U.S. citizen killed during a terrorist attack in the West Bank were entitled to seek redress for their own injuries under the ATA, even though they were foreign nationals.   See Henkin, 2020 WL 6143654, at *5-6.   The Henkin opinion largely relies on the same cases cited by plaintiffs herein (i.e., Ungar, Weinstein and Weiss), see 2020 WL 6143654, at *5, and does not address or even acknowledge the contrary conclusions previously reached in this District and the Southern District of New York in Rosenberg and Averbach – or the Supreme Court's instructive language in Jesner.   Having considered the conflicting caselaw, this Court respectfully recommends adoption of the statutory construction embraced in Averbach and Rosenberg.

Assuming, arguendo, that the statutory language of the ATA may be regarded as ambiguous, the Court may then look beyond a plan reading of the statute and consider its legislative history and the public policy underlying the Act.   See United States v. Memorial Sloan-Kettering Cancer Ctr., 563 F.3d 19, 28-30 (2d Cir. 2015) (discussing legislative history in the alternative if the court had found the statute ambiguous); Greenery Rehabiliation Grp., Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1999).   Such an undertaking does not, however, change this Court's conclusion.   Nothing in the legislative history of the ATA referenced by plaintiffs or in Henkin suggests that Congress intended for the statute to provide a remedy to non-U.S. nationals in U.S. courts for injuries they suffered outside the United States.   See

13

generally 18 U.S.C. § 2331(1)(c) (providing that the acts must "occur primarily outside the territorial jurisdiction of the United States"). Indeed, a review of the legislative history clearly demonstrates that Congress intended non-U.S. family members to sue *only on behalf* of their U.S. national relative. See Averbach, 2020 WL 486860, at *9; Rosenberg, 2016 U.S. Dist. LEXIS 87724, at *63. As originally drafted, the provision that is now section 2333 allowed compensation only for "[a]ny national of the United States . . . ." Antiterrorism Act of 1990: Hearing Before the Subcomm. on Courts and Admin. Practice of the Senate Comm. on the Judiciary, 101st Congress 8 (1990) ("Legis. History"). Testimony by Lloyd Green, counselor to the Assistant Attorney General in charge of the Department of Justice's Civil Division, demonstrates that Congress' revision of the original text of the draft legislation, "expanding the definition of 'U.S. national' to include the estate of the decedents, survivors, and heirs," was intended to "make certain the ability of family members to file a lawsuit *on behalf of a slain or injured relative*." See Legis. History at 46 (emphasis added). Steven Valentine, the Civil Division's Deputy Assistant Attorney General, testified that this modification of the ATA's statutory language "provides a federal forum for any *national of the United States* to seek compensation . . . for injuries resulting from acts of international terrorism . . . ." Id. at 34 (emphasis added); see also id. at 4 (Statement of Strom Thurmond) ("Any national of the United States injured by an act of international terrorism may sue in U.S. district court . . . ."). In addition, President George H.W. Bush's statement upon the signing of the ATA proclaimed that the "bill explicitly authorizes an *American national* to file suit in the United States for the recovery of treble damages against the perpetrators of international

terrorism.   This will ensure that, if needed, a remedy will be available *for Americans injured abroad by senseless acts of terrorism.*"   Presidential Statement on Signing S. 1569, 1992, 28 Weekly Comp. Pres. Doc. 2212 (Oct. 29, 1992).   This legislative history demonstrates that Congress was concerned with authorizing suit only by U.S. nationals, or their family members on their behalf, for the U.S. national's own injuries.

Plaintiffs argue that it is not "surprising or illogical that Congress chose to protect all family members of U.S. citizens, regardless of their own citizenship."   Supp. Mem. at 11. However, as discussed above, plaintiffs cite no evidence of such statutory intent, nor has the Court's own research uncovered such evidence.   In fact, as plaintiffs recognize, in 2008, when Congress amended the FSIA to reaffirm the federal private right of action against the foreign state sponsors of terrorism, Congress "did not provide a cause of action to individuals, like Ester, who are non-U.S. family members of U.S. citizens murdered in terrorist attacks." Pl. Mem. at 4 n.1.[5]

For the foregoing reasons, this Court recommends denying Ester Lelchook's motion for a default judgment on her individual claim for damages pursuant to the ATA.[6]

## III.    Damages

Section 2333(a) of the ATA provides plaintiffs with a full range of economic and non-

---

[5] "[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand."   FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000).

[6] The Court invited plaintiffs to submit argument in favor of an award of damages for Ester Lelchook on her claims under Israeli law, see 6/1/20 Order at 2, but plaintiffs declined to do so, preferring to defer those supplemental submissions until after the Court ruled on Ester Lelchook's individual ATA claim.

economic pecuniary damages.  See Rosenberg, 2016 U.S. Dist. LEXIS 87724, at *74-75;

Goldberg v. UBS AG, 660 F.Supp.2d 410, 426 (E.D.N.Y. 2009) (citing cases and concluding

that "every court that has construed § 2333(a)" has found that it permits both emotional and

pecuniary damages); Linde, 384 F.Supp.2d at 588-589.   The economic damages available are

intended to compensate for "the present value of past and future lost earnings that the Decedent

might reasonably have been expected to earn but for the wrongful death."   Rosenberg, 2016

U.S. Dist. LEXIS 87724, at *74 (internal quotation marks omitted).   In addition, non-

economic damages are also available, including loss of companionship and society, and mental

anguish experienced by the victim's surviving family members.   See id. at *75-*76; In re

Terrorist Attacks on Sept. 11, 2001, No. 03 Civ. 9848(GBD)(FM), 2012 WL 3090979, at *5

(S.D.N.Y. July 30, 2012), adopted, 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012); Lelchook v.

Commerzbank AG, No. 10 Civ. 5795(AKH), 2011 WL 4087448, at *2 (S.D.N.Y. Aug. 2,

2011).   "Spouses and relative[s] in direct lineal relationships are presumed to suffer damages

for mental anguish. The testimony of sisters or brothers is ordinarily sufficient to sustain their

claims for solatium."   Knox v. Palestinian Liberation Org., 442 F.Supp.2d 62, 78 (S.D.N.Y.

2006) (internal quotation marks and citation omitted).

   A.   Estate of David Lelchook – Economic Damages

   "The report of a forensic economist may provide a reasonable basis for determining the

amount of economic damages."   Reed v. Islamic Republic of Iran, 845 F.Supp.2d 204, 214

(D.D.C. 2012); see also Belkin v. Islamic Republic of Iran, 667 F.Supp.2d 8, 24 (D.D.C.

2009) (relying on forensic economist's report in calculating economic damages).   A court may

rely on such a report after considering the "reasonableness and foundation of the assumptions relied upon by the expert." Roth v. Islamic Republic of Iran, 78 F.Supp.3d 379, 402 (D.D.C. 2015) (citing Reed, 845 F.Supp.2d at 214).

Plaintiffs submitted an economic expert report drafted by Chad Staller and Stephen Dripps, see Expert Report of Chad Staller and Stephen Dripps dated July 12, 2019 ("Economic Report"), DE #162-6, DE #163-6, and supplemented that report after the Court requested further submissions to substantiate certain assumptions therein in calculating decedent's lost earnings and lost pension benefits, see Supplemental Expert Report of Chad Staller and Stephen Dripps dated July 10, 2020 ("Supp. Economic Report"), DE #170-1, DE #172-1. Based on David Lelchook's lost earnings, lost pension benefits, and lost household services, and after accounting for personal maintenance expenses, plaintiffs' experts conclude that the total economic loss is $299,986 USD. See id. at 6-7. Judge Contreras in the D.C. Action adopted the conclusions in plaintiffs' original economic expert report in their entirety. See Lelchook, 2019 WL 4673849, at *3. This Court finds plaintiffs' economic expert report, as supplemented, to be based upon reasonable assumptions and calculations. Accordingly, the Court recommends that the Estate of David Lelchook be awarded $299,986 in economic damages.

B. Emotional Distress Damages

Plaintiffs request emotional distress damages for the mental anguish, bereavement, and grief experienced by close family members of David Lelchook on account of the 2006 rocket attack. As noted above, the ATA provides for emotional distress damages for surviving

family members who are U.S. nationals.   Emotional distress or "solatium" damages are compensation for the "'mental anguish, bereavement and grief that those with a close personal relationship to a decedent experience as a result of the decedent's death, as well as the harm caused by the loss of the decedent['s], society and comfort.'"   Estate of Hirschfeld v. Islamic Republic of Iran, 330 F.Supp.3d 107, 146 (D.D.C. 2018) (quoting Baker v. Socialist People's Libyan Arab Jamahirya, 775 F.Supp.2d 48, 83 (D.D.C. 2011)).   "'[T]he process of assessing pain and suffering is an imperfect science, as no amount of money can properly compensate a victim and his family for their suffering during and after a terrorist attack.'"   Bathiard v. Islamic Republic of Iran, Case No. 16-cv-1549 (CRC), Case No. 17-cv-2006 (CRC), 2020 WL 1975672, at *3 (D.D.C. Apr. 24, 2020) (quoting Goldstein v. Islamic Republic of Iran, 383 F.Supp.3d 15, 19 (D.D.C. 2019)).   "[C]ourts strive to maintain consistency of awards as between the specific plaintiffs and among plaintiffs in comparable situations."   Id. at *5.

Courts consider the following factors in determining solatium damages under the ATA:

(1) whether the decedent's death was sudden and unexpected; (2) whether the death was attributable to negligence or malice; (3) whether the claimants have sought medical treatment for depression and related disorders resulting from the decedent's death; (4) the nature (i.e. closeness) of the relationship between the claimant and the decedent; and (5) the duration of the claimant's mental anguish in excess of that which would have been experienced following the decedent's natural death.

Rosenberg, 2016 U.S. Dist. LEXIS 87724, at *104-105 (quoting Knox, 442 F.Supp.2d at 78) (citation omitted).

Plaintiffs request that this Court adopt the damages award entered by Judge Contreras under the FSIA in the D.C. Action (except for Ester, who did not seek damages on her own

behalf in that case).  Courts considering damages under the ATA have frequently considered damages awards in other terrorism cases.  See Knox, 442 F.Supp.2d at 78-80; Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F.Supp.2d 217, 234-35 (S.D.N.Y. 2003).  In the D.C. Action, Judge Contreras applied a framework commonly used for awarding damages to the families of victims of terrorist attacks, first set forth in Estate of Heiser v. Islamic Republic of Iran, 466 F.Supp.2d 229, 269 (D.D.C. 2006) ("Heiser I").  Under that framework, courts implement a baseline damages award based on the familial relationship between the plaintiff and the decedent, and permit upward or downward departures from the baseline.  See Lelchook, 2019 WL 4673849, at *4; Estate of Heiser v. Islamic Republic of Iran, 659 F.Supp.2d 20, 27 n.4 (D.D.C. 2009) ("Heiser II").  The Heiser framework essentially reflects a summary of solatium awards in prior cases.  See Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affairs, 892 F.3d 348, 361-62 (D.C. Cir. 2018). Awards in excess of those baselines are available in cases with aggravating circumstances, shown by "evidence establishing an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship[,]" Braun v. Islamic Republic of Iran, 228 F.Supp.3d 64, 85 (D.D.C. 2017) (internal quotations and citations omitted); "[t]estimony which describes a general feeling of permanent loss or change caused by decedent's absence"; or proof of "[m]edical treatment for depression and related affective disorders," Valore v. Islamic Republic of Iran, 700 F.Supp.2d 52, 85-86 (D.D.C. 2010) (same).  In determining damages for the relatives of victims who died in the September 11, 2001 terrorist attacks, courts in the Southern District of

New York have applied the same framework in assessing solatium damages,[7] which of course are unquantifiable.  See In re Terrorist Attacks on Sept. 11, 2001, 2012 WL 3090979, at *4-5; see also Knox, 442 F.Supp.2d at 79-81 (awarding spouse $10 million, child $5 million, parent $5 million and sibling $2.5 million); Smith, 262 F.Supp.2d at 239 (awarding spouse $10 million, child and parent $3 million each, and sibling $2 million).

In support of their requests for solatium damages, plaintiffs have provided declarations describing their experiences, the injuries they sustained, and the subsequent trauma they endured in the aftermath of David Lelchook's murder.

### 1. Alexander Lelchook

Alexander Lelchook, the older brother of David, seeks an award of damages for emotional distress in the amount of $2,750,000.  See Pl. Mem. at 3-4.

Alexander had an "extremely close" relationship with his younger brother, who "looked up to [him] as a mentor."  Declaration of Alexander K. Lelchook ("Alexander Decl.") ¶ 6, DE #163-2.  For several years following the terror attack, Alexander's thoughts about his brother's death interfered when he was engaged in activities that he had previously enjoyed.  See id. ¶ 8.  In fact, to this day, Alexander feels that the loss of David caused him to become "less happy-go-lucky" in his attitude toward life.  Id. ¶ 9.  Alexander is still "torment[ed]" by his brother's death and, at times, his "extreme distress" has made it difficult to carry on with his daily activities.  Id. ¶¶ 9, 12.  Alexander is particularly affected at family

---

[7] In the cases concerning the September 11th attacks, the courts have applied a significant upward adjustment for the unique effects on family members who experienced losses from those attacks.

holidays when he feels David's absence "immeasurably."  Id. ¶ 11.

Alexander's "chronic stress and frustration" have also impacted his physical health.

See id. ¶ 14.  Although Alexander did not suffer from any notable medical problems before

David's death, he has since developed high blood pressure and has trouble sleeping.  Id.  To

this day, talking about his brother makes Alexander very emotional and causes him to become

"sweaty, tense, emotional, and often cry."  Id. ¶ 15.  Despite the emotional distress he

describes, Alexander has decided not to seek treatment for the effects of his grief.  See Expert

Psychiatric Evaluation of Alexander Lelchook by Rael Strous, MD ("Strous Report re

Alexander") at 6-7, DE #162-1 at ECF pp. 82-83.  Plaintiffs' psychiatric expert opines that

Alexander's anxiety and depressive symptoms will "affect him for a long period of time."  Id.

at 9; Expert Declaration of Dr. Rael Strous ("Strous Decl.") ¶ 23, DE #162-1, DE #163-1.

Under the Heiser framework, a sibling ordinarily receives $2.5 million.  See In re

Terrorist Attacks, 2012 WL 3090979, at *5; Heiser I, 466 F.Supp.2d at 269.  As noted

above, "[t]he testimony of sisters or brothers is ordinarily sufficient to sustain their claims for

solatium."  Knox, 442 F.Supp.2d at 78.  This Court has no doubt that Alexander has

experienced a profound loss, entitling him to solatium damages.  Nevertheless, unlike Judge

Contreras, who applied a ten percent enhancement over the baseline award to a sibling, see

Lelchook, 2019 WL 4673849, at *8, this Court concludes that plaintiffs have not demonstrated

the kind of aggravating circumstances that distinguish Alexander's loss from those suffered by

the siblings of other victims whose lives were cut short in terrorist attacks.  Although the

brothers had a "double" wedding in 1981, they lived several thousand miles apart from 1982

21

until David's death.  See Alexander Decl. ¶ 7; Declaration of Ester Lelchook ("Ester Decl.")

¶¶ 4, 5, DE #163-8.   Plaintiffs' expert opines that Alexander "displays some form of

Adjustment Disorder, Post-traumatic Stress Disorder and Persistent Complex Bereavement

Disorder either currently or in the past" as a result of his brother's death.   See Strous Decl.

¶ 22.   Similar expert conclusions from the same psychiatrist have been rejected as the sole

basis for an upward adjustment.   See Braun, 228 F.Supp.3d at 85-86 (ruling that diagnosis of

Persistent Complex Bereavement Disorder, Post-traumatic Stress Disorder and Persistent

Depressive Disorder were "less severe than those found to warrant a significant damages

enhancement").   In short, no proof was adduced that Alexander suffers from a condition that

requires medical or psychiatric treatment or from a permanent loss or change beyond what he

would have experienced had his brother died of natural causes.   See Oveissi v. Islamic

Republic of Iran, 768 F.Supp.2d 16, 29-30 (D.D.C. 2011) (in awarding upward departure,

discussing circumstances that "amplified the effects of the grief that any family member of a

victim of a terrorist plot would naturally suffer"); Valore, 700 F.Supp.2d at 85, 86 (awarding

sibling upward enhancement for emotional suffering that "st[ood] out as particularly

devastating").   In keeping with the equitable principle that awards should be commensurate

with those in similar cases, see Knox, 442 F.Supp.2d at 80, this Court declines to apply an

enhancement, and respectfully recommends an award of $2.5 million, see Colvin v. Syrian

Arab Republic, 363 F.Supp.3d 141, 162-63 (D.D.C. 2019) (awarding $2.5 million to terrorist

victim's sister, who described her sister as her "best friend, idol and confidant"); Pescatore v.

Palmera Pineda, 345 F.Supp.3d 68, 77, 78 (D.D.C. 2018) (awarding three siblings $1 million

each and noting that "they were all adults and lived separate lives"); <u>Estate of Hirschfeld v. Islamic Republic of Iran</u>, 330 F.Supp.3d 107, 147-48 (D.D.C. 2018) (awarding each of 12 siblings $2.5 million, noting "special bonds" between victim and siblings); <u>Fraenkel v. Islamic Republic of Iran</u>, 316 F.Supp.3d 284, 291 (D.D.C. 2018) (awarding $750,000 to each sibling); <u>Knox</u>, 442 F.Supp.2d at 80-81 (awarding $2.5 million to siblings of decedent with whom they "had extremely close relationships").

### 2.  Estate of Doris Lelchook

The Estate of Doris Lelchook, David's mother, seeks an award of damages for her emotional distress in the amount of $5,000,000, consistent with the *Heiser* framework.  <u>See</u> Pl. Mem. at 3-4.

Doris Lelchook was alive at the time of her son's death, but has since passed away.  In her declaration, she stated that her son's death caused her "extraordinary grief, mental anguish, and emotional distress" that "made it difficult at times" for her to carry out her "daily functions."  Declaration of Doris Lelchook ¶¶ 6–7, DE #163-3.  As a result of the pain she experienced, Doris received mental health counseling for more than two years.  <u>See id.</u> ¶ 6; Declaration of Yael Lelchook ("Yael Decl.") ¶ 5, DE #163-5.  Although plaintiffs were unable to obtain an expert psychological evaluation before Doris Lelchook passed away, Alexander Lelchook states that his mother went into a "deep depression," "experienced sleeplessness and anxiety" and "became quieter and more solitary" as a result of David's death.  <u>See</u> Alexander Decl. ¶¶ 16, 17.

Based on the pain and suffering Doris Lelchook endured because of her son's death,

her estate is entitled to solatium damages.   This Court finds that the damages award requested ($5 million) is both reasonable and commensurate with awards in similar cases.   See Bathiard, 2020 WL 1975672, at *6 (adopting recommendation to award parent of terrorist victim $5 million); Estate of Hirschfeld, 330 F.Supp.3d at 147-48 (awarding $5 million to each parent of terrorist victim); Knox, 442 F.Supp.2d at 80 (awarding $5 million to each parent of terrorist victim who had "an extremely close relationship" with his parents); Smith, 262 F.Supp.2d at 239 (awarding $3 million to father of terrorist victim, noting "very close relationship" between them).

### 3.   Michal Lelchook

Michal Lelchook, one of David's daughters, seeks an award of damages for emotional distress in the amount of $6,250,000.   See Pl. Mem. at 3-4.

Michal states that she was "extremely close" with her father, see Declaration of Michal Lelchook ("Michal Decl.") ¶ 4, DE #163-4, who was killed when she was 23 years old, see id. ¶¶ 2-3.   Because of David's death, Michal has "experienced extraordinary grief, mental anguish, and emotional distress," which have continued to this day.   See id. ¶ 4.   Even now, she is haunted by the feeling that her father's murder was "the worst thing in the world that could have happened to [her]."   Id. ¶ 6.   Michal feels that she is "directionless in life," "stuck at the time" of her father's murder and unable to "move on."   Id. ¶ 8.   The "extreme distress and anger" she has experienced since her father's death has made it difficult to carry out daily activities, including maintaining employment.   See id. ¶ 10.   She also withdraws from social interactions because of overwhelming pain and sadness, leaving her to live a life of

24

solitude.  See id. ¶ 11.

Although Michal received psychiatric treatment for some time, it was "too painful" for her to continue.  See id. ¶ 9.  She did, however, seek treatment from alternative therapies. See id.  Despite these treatments, the significant effects of her father's murder persist:  She still suffers from hypersensitivity to noises and has "flashbacks" "frequent[ly]" of her father's death, including when she "identified [her] father's body in the morgue" and saw "the site of [her family's] destroyed house."  See id. ¶ 12.

The evidence submitted by plaintiffs demonstrates that Michal still experiences significant emotional distress as a result of her father's death and the circumstances surrounding her father's death.  See Psychiatric Evaluation of Michal Lelchook by Rael Strous MD at 9, DE #162-1 at ECF p. 56.  Despite the passage of more than a decade, Michal is socially isolated, has trouble maintaining consistent employment, and, despite treatment, has been unable to obtain relief from her emotional distress.  See Michal Decl. ¶¶ 9-12.

The child of a parent killed in a terrorist attack ordinarily is entitled to $5 million under the *Heiser* framework.  This Court agrees with Judge Contreras' award in the D.C. Action, see Lelchook, 2019 WL 4673849, at *5-6, and finds that an enchancement of 25 percent is appropriate given the extreme impact upon Michal's mental health, and is consistent with awards in similar cases, see Flanagan v. Islamic Republic of Iran, 87 F.Supp.3d 93, 118 (D.D.C. 2015) (awarding a 25% enhancement to the baseline for each member of the victim's family where plaintiffs experienced "extraordinarily severe pain and suffering following [the victim's] death"); Estate of Brown v. Islamic Republic of Iran, 872 F.Supp.2d 37, 43 (D.D.C.

25

2012) (awarding enhanced damages to the sister of the deceased victim where she "suffered a nervous breakdown . . . for which she sought medical treatment and was prescribed medication for approximately one year"); Baker v. Socialist People's Libyan Arab Jamahirya, 775 F.Supp.2d 48, 83 (D.D.C. 2011) (awarding an upward departure of 25% where the sister of the deceased victim "had to be hospitalized for asthma and shock . . . and has battled depression ever since"); Valore, 700 F.Supp.2d at 86 (solatium damages increased by 25% due to aggravating circumstances).   Therefore, this Court respectfully recommends awarding Michal Lelchook $6.25 million.

### 4.  Yael Lelchook

Yael Lelchook, Michal's sister, also requests an award of $6.25 million.   See Pl. Mem. at 3-4.

Like Michal, Yael was "extremely close" to her father, Yael Decl. ¶ 4, who was killed when she was 25 years old, see id. ¶¶ 2-3.   Her father's death has caused her extraordinary grief, mental anguish and emotional distress.   See id.¶ 4.   She learned of her father's death when she saw a "body bag with [her] father on the news," whereupon she was so distraught that she "immediately started to scream."   Id.   For six months after her father's death, she was unable to sleep or continue her studies.   Id. ¶ 6.   For the first two years after he died, Yael could not consistently sleep through the night without "intense" nightmares about her father's murder.   See id. ¶ 7.   Yael reports that her "life was controlled" by the terrorist attack that killed her father.   See id. ¶ 8.   While she "went through the motions" of living, she could not form any close relationships and was chronically angry.   See id.

Michal received psychiatric counseling for 3.5 years.  See id. ¶ 5.  She feels that she cannot "move-on" from her father's death and has "pessimistic and apathetic" feelings towards her own life.  See id. ¶ 9.  Her father's death also negatively affected her relationships with her mother and her sister, leaving in her feeling estranged.  See id. ¶ 10.

As reflected in plaintiffs' submissions, Yael clearly experienced significant emotional suffering as a result of the attack.  The manner in which Yael learned of her father's death exacerbated her suffering, and she was so shocked from the event that she cannot recall more than a "blur."  Id. ¶ 4.  The psychiatric evaluation describes Yael as having had a "deep depressive grief response to the loss of her father."  Expert Psychiatric Evaluation of Yael Lelchook by Rael Strous, MD at 4, DE #162-1 at ECF p. 23.  Under the circumstances, this Court recommends awarding the same upward departure adopted by Judge Contreras in the D.C. Action, see Lelchook, 2019 WL 4673849, at *6, and thus the same damages award, $6.25 million, as that recommended by this Court for Yael's sister, Michal, for suffering the same loss.

## IV.  Set-Off

By its 6/1/20 Order, this Court directed plaintiffs to identify any settlements or judgments that plaintiffs obtained for the same injuries and to address whether it is appropriate for the Court to apply a set-off for amounts collected against those judgments or settlements. See 6/1/20 Order at 3.  In response, plaintiffs identified settlement proceeds they each received in a related action, Lelchook v. Commerzbank, AG, 10-cv-5795 (S.D.N.Y.), and the uncollected judgment entered in their favor in Lelchook v. Syrian Arab Republic, 16-cv-01550

27

(D.D.C.).  <u>See</u> Declaration of Noel Nudelman (July 19, 2020) ("Nudelman Decl."), DE

#171, #173.  In addition, they contend that it would not be appropriate to apply an offset in

this case.  <u>See</u> Supp. Mem. at 13-16.  First, plaintiffs contend that by defaulting, BSPLC

failed to carry its burden of asserting and proving its entitlement to an offset.  <u>See</u> <u>id.</u> at 13-

14.  Second, plaintiffs argue that as an intentional tortfeasor, BSPLC is not permitted an offset

under the common law.  <u>See</u> <u>id.</u> at 14.  Third, plaintiffs contend that, at most, a set-off for a

settling defendant's proportionate share would be allowable under federal law, and here, since

Commerzbank's proportionate liability has never been established, there can be no offset.  <u>See</u>

<u>id.</u> at 14-15.  Having considered plaintiffs' supplemental submissions, this Court recommends

against applying an offset.

       Courts in this District have reached different conclusions in considering whether to

apply, *sua sponte*, a set-off on behalf of a defaulting defendant for amounts paid to plaintiffs by

settling co-defendants.  Some courts have held that a defaulting defendant has waived its

entitlement to such a defense; those courts have "reasoned that it is the defendant's burden to

demonstrate the extent to which the recovery against it would be duplicative of the plaintiff's

recovery from settling defendants" and, in the default setting, a defaulting defendant "cannot

satisfy this burden."  <u>Allstate Ins. Co. v. Yehudian</u>, No. 14-CV-4826 (JS) (AKT), 2018 WL

1767873, at *19 (E.D.N.Y. Feb. 15, 2018) (quotations omitted), <u>adopted</u>, 2018 WL 1686106

(E.D.N.Y. Mar. 31, 2018); <u>see</u> <u>Gov't Emps. Ins. Co. v. Simakovsky</u>, No. 14-CV-3775

(KAM)(SMG), 2015 WL 5821407, at *13 (E.D.N.Y. Oct. 5, 2015) (quotations omitted)

(collecting cases).  Other courts have reduced awards on default judgment by the amounts

received in settlement from co-defendants with whom the defaulting defendants were jointly

and severally liable.   See Gov't Emps. Ins. Co. v. Ajuda, 15-CV-5199 (MKB), 2018 WL

7252961, at *9-10 (E.D.N.Y. Dec. 18, 2018), adopted, 2019 WL 276201 (E.D.N.Y. Jan. 22,

2019); Pierre v. Planet Auto., Inc., 13-CV-0675 (MKB)(JO), 2018 WL 1385906, at *3

(E.D.N.Y., Feb. 21, 2018), adopted, 2018 WL 1385882 (E.D.N.Y. Mar. 19, 2018).   Those

courts have largely relied on the principle that plaintiffs should not receive a windfall for their

federal claims, and that, under federal common law, the right to set-off is not an affirmative

defense that is waived by defaulting.   See Ajuda, 2018 WL 7252961, at *10; Allstate Ins.

Co. v. Polack, No. 08-CV-0565 (ADS)(ETB), 2012 WL 4489282, at *7 (E.D.N.Y. Sept. 12,

2012), adopted, 2012 WL 4490775 (E.D.N.Y. Sept. 28, 2012).

The circumstances in this case weigh against reducing the damages awarded to plaintiffs

to account for settlements received from Commerzbank.   First, BSPLC litigated this matter

for several years in various jurisdictions before ultimately discharging its counsel and

intentionally defaulting in this case.   When BSPLC determined not to further participate in the

proceedings in this case, this Court ensured that BSPLC was warned that the consequence

would be "entry of a default judgment of the Court establishing plaintiffs' claims against

BSPLC in this case."   8/16/18 Ltr. at 1-2.   Plaintiffs served BSPLC with each of its inquest

damages submissions.   BSPLC failed to seek an offset despite ample opportunity to do so.

Considering BSPLC's conduct in this litigation, it would be inappropriate to award BSPLC a

set-off *sua sponte*.   See Kotuwage v. NSS Petroleum Inc., 15-CV-4374 (FB) (ST), 2018 WL

1189332, at *13 (E.D.N.Y. Feb. 8, 2018) (opining that "considerations of fairness uniquely

compel that Defendant [] not receive an offset[,]" where attorney entered an appearance but "failed to provide this court with evidence or argument in support of an offset"), adopted, 2018 WL 1187397 (E.D.N.Y. Mar. 7, 2018); State Farm Auto. Ins. Co. v. Grafman, 968 F.Supp.2d 480, 484 (E.D.N.Y. 2013) (holding that defendants' litigation conduct resulting in entry of default "squandered their opportunities to convince the court that they should be held liable to plaintiff for anything less than the total amount of damages sought"); see also Chloe v. Zarafshan, No. 1:06–cv–03140–RJH–MHD, 2009 WL 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 5, 2009) (noting that defendant defaulted twice: "first in failing to answer the complaint, and second in failing to respond to the damages inquest").

The Second Circuit's decision in Restivo v. Hessemann, 846 F.3d 547, 581–87 (2d Cir. 2017), is also instructive.   In Restivo, a section 1983 case, the Second Circuit affirmed the district court's denial of a non-settling defendant's request for a set-off in the amount of a $2.2 million settlement with New York State.   The appellate court found that New York's provision for a *pro tanto* (dollar-for-dollar) set-off is inconsistent with the deterrent goal of section 1983 because it would allow the "nonsettling tortfeasors to bear less than the full cost of the harm they inflicted if settling tortfeasors settle for more than their proportional share of liability." Id. at 586.   Analogous to the default context here, the Circuit also relied on the non-settling defendant's failure "to introduce evidence tending to show that the State bore a share of the responsibility for [the section 1983 violation], nor did he request an instruction that the jury should determine the State's proportionate share of liability or consider the effect of a prior settlement when determining damages."   Id. at 586.

Here, under the terms of a confidential settlement pursuant to which Commerzbank resolved plaintiffs' claims, the bank denied "'any admission of liability.'"  Nudelman Decl. ¶¶ 4, 7 (quoting Settlement Agreement).   Therefore, to apply a set-off for the amounts plaintiffs obtained from Commerzbank might result in BSPLC escaping its proportional share of liability, a consequence contrary to Congress' purposes in enacting the ATA.  See generally Restivo, 846 F.3d at 586 ("[w]e must always be conscious that one of the functions of section 1983, if not the primary function, is therapeutic, seeking to eradicate the disease of violations of federal rights under color of state law") (internal quotation marks and citation omitted).   In these circumstances, "the law contains no rigid rule against overcompensation" and "making tortfeasors pay for the damage they cause can be more important than preventing overcompensation."  McDermott, Inc. v. AmClyde, 511 U.S. 202, 219 (1994).

Finally, the fact that Commerzbank is not BLPC's co-defendant, but was sued in a different litigation in a different jurisdiction, further weighs against applying an offset.  See Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC, -- F.Supp.3d --, 2020 WL 4570110, at *39 n.27 (D. Conn. Aug. 7, 2020) (in housing discrimination case, recognizing the reduced rationale for applying settlement funds as an offset where the defendants were not sued in the same action).

## V.  Treble Damages

Under the ATA, a successful plaintiff "shall recover threefold the damages he or she sustains."  28 U.S.C. § 2333(a).  Thus, this Court recommends that plaintiffs' damages be trebled.  See, e.g., Rosenberg, 2016 U.S. Dist. LEXIS 87724, at *107 (trebling economic and

solatium damages under the ATA); *In re* Terrorist Attacks on Sept. 11, 2001, No. 03 MDL 1570(GBD)(FM), 2011 WL 4903584, at *4 (S.D.N.Y. Oct. 14, 2011) (recommending award of treble damages under the ATA), adopted, 2011 WL 6318975 (S.D.N.Y. Dec. 16, 2011).

Accordingly, Ester Lelchook, acting as the legal representative of David Lelchook's Estate, is entitled to $899,958 in economic damages; Alexander Lelchook is entitled to $7,500,000; the Estate of Doris Lelchook is entitled to $15,000,000; Michal Lelchook is entitled to $18,750,000; and Yael Lelchook is entitled to $18,750,000.

## CONCLUSION

For the foregoing reasons, this Court recommends that plaintiffs' motion for a default judgment be granted against BLSPC as follows: an award of (trebled) economic damages in the amount of $899,958 to Ester Lelchook, acting as the legal representative of David Lelchook's Estate; and (trebled) compensatory damages in the aggregate amount of $60,000,000, with $7,500,000 allocated to Alexander Lelchook, $15,000,000 allocated to the Estate of Doris Lelchook, and separate awards of $18,750,000 allocated to Michal and to Yael Lelchook, respectively. This Court further recommends that Ester Lelchook's individual claim under the ATA be dismissed.

Any objections to the recommendations contained herein must be filed with Judge Glasser on or before December 10, 2020. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

Plaintiffs are directed to promptly serve BSPLC with a copy of this Report and Recommendation, and to file proof of service.

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**            November 23, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**