UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

ESTER LELCHOOK, *et al.*,

                         Plaintiff,                     Civ. No. 16-7078-ILG-RLM

                      -against-

THE ISLAMIC REPUBLIC OF IRAN, *et al.*,

                        Defendants.

-------------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT BY DEFAULT AGAINST DEFENDANTS BANK SADERAT IRAN AND ISLAMIC REPUBLIC OF IRAN

## PRELIMINARY STATEMENT

Defendants Bank Saderat Iran ("BSI") and Islamic Republic of Iran ("Iran") defaulted this action, and this Court has already examined and determined the amount of plaintiffs' damages, upon entering judgment against defendant Bank Saderat PLC ("BSPLC"). (DE 180, 183, 185). Plaintiffs therefore respectfully move, pursuant to Fed. R. Civ. P. 55(b)(2), for entry of judgment by default against defendants BSI and Iran, in the amounts awarded against BSPLC.[1]

## RELEVANT BACKGROUND

This is a civil damages action under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333 and the terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A,

---

[1] On October 13, 2022, this Court denied the individual claims of plaintiff Ester Lelchook against BSPLC, because she lacks U.S. citizenship. (DE 185). Ester Lelchook has respectfully appealed that decision (DE 187). As noted below, while Ester fully recognizes that this Court has just ruled against her on this issue, she reserves her right to seek recovery on her individual claims (depending of the outcome of that appeal) and accordingly is respectfully constrained to reassert those claims here against BSI, in order to avoid waiver and preserve her appellate rights.

arising from the murder of U.S. citizen David Martin Lelchook by the Hezbollah terrorist organization on August 2, 2006. The decedent was killed by a rocket fired by Hezbollah, while riding his bicycle on a kibbutz in northern Israel. The plaintiffs are the estates of the decedent and his late mother,[2] and the decedent's widow, two daughters, and brother.

Plaintiffs alleged in their complaint, on the basis of multiple official statements issued by the U.S. Treasury Department, that the defendants transferred at least $50 million to Hezbollah in the years immediately prior to Mr. Lelchook's murder. (DE 81 at ¶¶ 47-48; 110-113; 188; 199).

## DISCUSSION

### A. DEFAULT JUDGMENT SHOULD ENTER AGAINST BSI

Defendant BSI was served with process in this action but failed to appear. (DE 25, 41). Accordingly, pursuant to Fed. R. Civ. P. 55(a), its default was entered. (DE 44).[3]

BSI's default establishes its liability in this case, since "a party's default is deemed as an admission of all well-pleaded allegations of liability." *Trustees of the Local 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc.*, 2018 WL 4268907, at *3 (E.D.N.Y. Aug. 8, 2018), *R&R adopted*, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018). The allegations against BSI contained in plaintiffs' First Amended Complaint ("FAC") are detailed, extensive and extremely well-pleaded. DE 81,

---

[2] Mr. Lelchook's mother, plaintiff Doris Lelchook, was alive when her son was murdered and when this case was filed, and passed away only on December 5, 2018. On February 14, 2019, the Court substituted Alexander Lelchook, as the Executor of the Estate of Doris Lelchook, as a plaintiff in place of the late Doris Lelchook. *See* Electronic Order, 2/14/2019.

[3] BSI was once owned by Iran but was privatized in 2009, and is therefore not subject to the FSIA; rather, it is subject to service and suit under the ATA, like any other non-sovereign defendant. *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 198-99 (D.D.C. 2013), *aff'd in relevant part*, 896 F.3d 501 (D.C. Cir. 2018) (finding that Iran has owned "less than half of BSI's shares since 2009," that BSI is therefore "not an "agency or instrumentality" of Iran, and dismissing FSIA claims against BSI).

2

*passim*. As noted, they are based on information about BSI's provision of vast sums to Hezbollah, which was publicly disclosed by the United States Treasury. (*Id*. at ¶¶ 47-48; 110-113; 188; 199).

Indeed, this Court has *already* found, after conducting its own detailed analysis, that the FAC's allegations against BSPLC—which are identical to those against BSI—state valid claims under the ATA for both primary and secondary liability. (DE 156, *passim*).

The Court may also ensure that it has subject matter and personal jurisdiction before entering default judgment. *Hamburg-Sud N. Am., Inc. v. Bomix Industria de Embalagens Ltda.*, 2017 WL 9482108, at *4 (E.D.N.Y. Nov. 3, 2017), *report and recommendation adopted*, 2017 WL 6606896 (E.D.N.Y. Dec. 26, 2017) ("[B]efore a court grants a motion for default judgment, it may *sua sponte* assure itself that it has subject matter jurisdiction over the proceeding."); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant.") (brackets and citation omitted). There is no question that the Court has both subject-matter jurisdiction over this action and personal jurisdiction over BSI.

This action is brought under a federal cause of action, 18 U.S.C. § 2333, and the Court therefore has original subject-matter jurisdiction. As for personal jurisdiction, when a court decides to consider personal jurisdiction in the context of a motion for default judgment, "although the plaintiffs retain the burden of proving personal jurisdiction, they can satisfy that burden with a prima facie showing, and may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *D'Amico Dry D.A.C. v. Primera Mar. (Hellas)*, 348 F. Supp. 3d 365, 389 (S.D.N.Y. 2018) (cleaned up).

Plaintiffs clearly and easily satisfy a "prima facie showing" of personal jurisdiction over BSI, for several interrelated reasons. First, the allegations of the FAC against BSI, including the

3

allegations relating to personal jurisdiction, are identical to the FAC's allegations against BSPLC. (*Id.*, at ¶¶ 18, 127-152). Second, this Court has found that the allegations of the FAC were sufficient to establish personal jurisdiction over BSPLC:

> [T]he amended complaint in *Lelchook* contained allegations that identified connections between BSPLC's conduct and the United States. Specifically, the amended complaint identified two of the plaintiffs as residents of Massachusetts, meaning that their injuries were suffered within the United States, and it alleged that BSPLC utilized New York's banking system in order to conduct the financial transfers that led to plaintiffs' injuries. *See* Am. Compl. [ECF No. 81] ¶¶ 8-9, 17-18, 133, 139, 144-49, and 152, *Lelchook v. Islamic Republic of Iran*, Case No. 16-CV-7078 (ILG) (RLM) (E.D.N.Y. Sept. 9, 2016). Because the Court took all of the amended complaint's factual allegations as true, *Lelchook*, 393 F. Supp. 3d at 264, it could find that sufficient minimum contacts existed between BSPLC and the United States to permit the exercise of personal jurisdiction without "offend[ing] 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463)."

*Kaplan v. Central Bank*, 2022 WL 1120455, at *7 (E.D.N.Y. Apr. 14, 2022).

Since the selfsame allegations were found sufficient for the exercise of personal jurisdiction over BSPLC, they are clearly also sufficient to establish a "prima facie showing" (at least) of personal jurisdiction over BSI.

Third, plaintiffs' jurisdictional allegations are supported by strong evidence in the record. Before it was transferred to this Court from the District of Massachusetts, BSPLC moved to dismiss this action for lack of personal jurisdiction. Plaintiffs' opposition to the motion was supported by detailed expert declarations and extensive documentary evidence showing that the $50 million transferred to Hezbollah by the defendants in this action, were routed through the U.S. banking system. (*See* DE 90 (Opp. Memo at 6-7; 19); (Declaration of Carole Basri; Declaration of Gary N. Kleiman; Declaration of Patrick L. Clawson); DE 91 (Exhibits E though I); DE 94 at 9-12).

4

Fourth, Chief United States District Judge Patti B. Saris denied BSPLC's motion to dismiss and transferred this action to this Court, after considering plaintiffs' allegations and evidence and finding that "plaintiffs have presented facts … that would plausibly support jurisdiction in New York," and that "there is likely personal jurisdiction in New York." (DE 110 at 13, 16).

Notably, in support of this conclusion, Judge Saris cited *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893 (N.Y. 2012), which the Second Circuit endorsed, and found consistent with Due Process, in *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013). Therefore, this Court has personal jurisdiction over BSI, pursuant to *Licci* and its progeny. *See e.g. Bartlett v. Société Générale de Banque Au Liban SAL*, 2020 WL 7089448, at *4-6 (E.D.N.Y. Nov. 25, 2020); *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *4-9 (S.D.N.Y. Jan. 21, 2020).[4]

Since subject-matter jurisdiction, personal jurisdiction over BSI, and BSI's liability have been established, all that remains is the question of plaintiffs' damages. This question has already been answered by this Court, when it entered default judgment against BSPLC. After carefully examining plaintiffs' evidentiary submissions on damages, this Court entered judgment for the plaintiffs in the following amounts (after trebling):

| | |
|---|---|
| **Ester Lelchook (as representative of decedent's estate):** | **$899,958** |
| **Alexander Lelchook:** | **$7,500,000** |
| **Estate of Doris Lelchook:** | **$15,000,000** |
| **Michal Lelchook:** | **$18,750,000** |
| **Yael Lelchook:** | **$18,750,000** |

(DE 180 at 3-4; 181).

---

[4] If for any reason the Court were to find that it lacks personal jurisdiction under New York law, it nonetheless could and should exercise jurisdiction under Fed. R. Civ. P. 4(k)(2), which applies to actions asserting "a claim that arises under federal law," where "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," provided that exercise of jurisdiction is consistent with Due Process.

Plaintiffs therefore respectfully request that the Court enter judgment in their favor against BSI in these same amounts.

Plaintiff Ester Lelchook, the widow of the decedent, sought an ATA damages award against BSPLC in her individual capacity, as the "survivor" of a U.S. national, in the amount of $12.5 million (before trebling). (DE 162-163; 172 at 6-12). The magistrate judge recommended against such an award on the ground that Ester is not herself a U.S. national. (DE 177). Plaintiffs objected to that recommendation (DE 179), but the Court overruled their objection and adopted the magistrate's recommendation. (DE 185). Ester Lelchook has appealed that decision. (DE 187).

Ester fully understands that the Court has recently ruled against her on this issue, but in order to avoid waiver and maintain her appellate rights in respect thereto, she is constrained to respectfully reassert her claim to an individual ATA award against BSI. Therefore, for the reasons asserted and on the basis of the evidence presented in her previous filings of record regarding BSPLC (DE 162-163; 172; 179), plaintiff Ester Lelchook respectfully requests an award against BSI in her individual capacity, in the amount (before trebling) of $12.5 million.

### B. DEFAULT JUDGMENT SHOULD ENTER AGAINST IRAN

Defendant Islamic Republic of Iran is a sovereign state, and it was served with process in this action through diplomatic channels, pursuant to § 1608(a)(4) of the FSIA. (DE 76).[5] Iran failed

---

[5] Plaintiffs made service under § 1608(a)(4) after their attempt to serve under § 1608(a)(3) failed. (DE 25; 37). Subsections 1608(a)(1)-(2) are inapplicable to Iran. "[D]elivery of the summons and complaint either 'in accordance with any special arrangement for service between the plaintiff and the foreign state' under § 1608(a)(1) or 'in accordance with an applicable international convention on service of judicial documents" under § 1608(a)(2)—were not available to Plaintiffs … No 'special arrangement' governs service between Plaintiffs and Iran, and 'Iran is not party to an international convention on service of judicial documents.'" *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 88 (D.D.C. 2018) (citation omitted).

to defend or appear, and its default was therefore entered pursuant to Fed. R. Civ. P. 55(a). (DE 86).

Iran has been designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)) since 1984. This Court therefore has original subject-matter jurisdiction over plaintiffs' damages action against Iran under FSIA § 1605A(c), and its personal jurisdiction over Iran was established by service of process pursuant to § 1608(a)(4). "[P]ersonal jurisdiction under the FSIA is established by way of 'subject matter jurisdiction plus service of process equals personal jurisdiction.'" *Lovati v. Bolivarian Republic of Venezuela*, 2020 WL 6647423, at *1 (S.D.N.Y. Nov. 11, 2020) (quoting *Seetransport Wiking Trader v. Navimpex Centrala Navala*, 989 F.2d 572, 579 (2d Cir. 1993)).

In respect to liability, § 1608(e) of the FSIA provides that: "No judgment by default shall be entered by a court of the United States or of a State against a foreign state … unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This "evidence satisfactory to the court" standard "may be met through uncontroverted factual allegations, which are supported by documentary and affidavit evidence." *In re Terrorist Attacks on Sept. 11, 2001*, 2012 WL 3090979, at *2, n.1 (S.D.N.Y. July 30, 2012) (cleaned up), *report and recommendation adopted*, 2012 WL 4711407 (S.D.N.Y. Oct. 3, 2012). In other words, "[i]n evaluating the Plaintiffs' proof, the Court may accept as true the plaintiffs' uncontroverted evidence" and "the plaintiffs may establish proof by affidavit." *In re Terrorist Attacks on Sept. 11, 2001*, 2011 WL 13244047, at *2 (S.D.N.Y. Dec. 22, 2011) (cleaned up).

Plaintiffs have far more than "satisfactory" evidence of Iran's liability for the decedent's murder. Decedent was murdered in a Hezbollah rocket attack that "was one of thousands of rocket and missile attacks against civilians in Israel carried out by Hezbollah between July 12 and August

14, 2006 (hereinafter: the "Hezbollah Rocket Barrage")." (DE 81, ¶ 1). Iran and the other defendants "provided extensive material support and resources to Hezbollah, that caused, enabled and facilitated the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein." (*Id*, ¶ 3; *see also* ¶¶ 20-58; 109-120; 153-180).

Iran was *already* found liable under FSIA § 1605A(c) for providing material support and resources for the 2006 Hezbollah Rocket Barrage, in *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 55 F. Supp. 3d 189 (D.D.C. 2014). This fact was asserted in the FAC at ¶ 29: "[T]he District Court for the District of Columbia found that Iran is liable under FSIA § 1605A for the very same Hezbollah Rocket Barrage that is at issue here. *See Kaplan v. Central Bank of Iran*, 55 F. Supp. 3d 189, 197 (D.D.C. 2014)."

Like the plaintiffs here, the *Kaplan* plaintiffs were "American nationals who were victims of the Hezbollah terrorist organization's rocket attacks in Israel that occurred during the period of July 12, 2006 through August 14, 2006." *Id*. at 191 (cleaned up). After Iran defaulted, the *Kaplan* plaintiffs submitted expert declarations, and the court held an evidentiary hearing on liability on May 27, 2014. The *Kaplan* court found on the basis of this evidence and testimony that "there can be no doubt that .... Iran provided material support to Hezbollah," and that "Plaintiffs have established to this Court's satisfaction, pursuant to 28 U.S.C. § 1608(e), that … Iran [is] liable for damages because [it] provided material support and assistance to the Hezbollah terrorists who fired the rockets at Israel that caused plaintiffs' injuries." *Id*. at 200.

Because *Kaplan* was a default judgment, the plaintiffs here cannot rely on the decision in *Kaplan* holding Iran liable for the Hezbollah Rocket Barrage to assert offensive collateral estoppel. *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 18 (D.D.C. 2001) ("default judgments … are normally not given preclusive effect under the collateral estoppel doctrine because the issues

in the cases have not been actually litigated."). Even so, Fed. R. Evid. 201 allows courts to take judicial notice of adjudicative facts "not subject to reasonable dispute." Fed. R. Evid. 201(b); *see Opati v. Republic of Sudan*, 60 F. Supp. 3d 68, 73 (D.D.C. 2014) (stating "[c]ourts in this district have done so frequently in the FSIA context.").

Therefore, the Court *can* "accept affidavits from the experts who testified in the earlier case" as well as "the transcript from the earlier case." *Weinstein*, 175 F. Supp. 2d at 21-22. "The objective issue of what that evidence was—rather than the subjective determination of what that evidence means—is thus a proper exercise of judicial notice." *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010).

Thus, because the same state-sponsored terrorist attacks, or series of attacks, often give rise to multiple FSIA actions, brought by different plaintiffs at different times, federal courts hearing such FSIA suits frequently—indeed typically—rely on the evidence submitted in the first case:

> [R]ather than require litigants to present such evidence anew in each lawsuit stemming from the same terrorist attack, courts have determined that the proper approach is one that permits courts in subsequent related cases to rely upon the evidence presented in earlier litigation without necessitating the formality of having that evidence reproduced, so that courts may reach their own independent findings of fact predicated on judicial notice of the evidence presented in the earlier cases.
>
> Thus, the factual evidence developed in other cases involving the same conduct by the same defendants is admissible and may be relied upon in this case. At the same time, the judicial findings derived from those facts are not dispositive here since courts must reach their own, independent findings of fact in the cases before them. Persuaded that this common-sense approach is both efficient and sufficiently protective of the absent defendants' interests, this Court will adopt it.

*Akins v. Islamic Rep. of Iran*, 332 F. Supp. 3d 1, 10-11 (D.D.C. 2018) (cleaned up) (citing cases).

Plaintiffs therefore request that the Court permit them to establish Iran's liability in this action on the basis of the liability evidence that was admitted and relied upon by the *Kaplan* court.

Plaintiffs submit that evidence so that this Court can "reach [its] own, independent findings of fact," as it must. *Akins*, 332 F. Supp. 3d at 11. Reliance on the evidence from *Kaplan* is particularly appropriate, since the *Kaplan* court found that Iran's liability had been "established by clear and convincing evidence." The *Kaplan* court explained that it had "require[d the] plaintiffs to establish their right to relief by clear and convincing evidence" and that the "'clear and convincing' standard of proof is the standard required in the District of Columbia to support a claim for punitive damages, and is sufficient to establish a prima facie case in a contested proceeding." *Id.* at 192-193.

Accordingly, all the items of liability evidence that were admitted and relied upon by the *Kaplan* court, *i.e.*, the liability hearing transcript and four expert declarations, are annexed to the attached Declaration of Robert J. Tolchin, in support of the instant motion.

Additionally, detailed evidence of record in this action regarding Iran's provision of material support and resources to Hezbollah during the relevant period is also contained in the Declaration of Patrick L. Clawson (DE 90) at ¶¶ 20, 23-24, 32, 42-45, 55, 69, 74, 76-77.

Therefore, this Court can and should find Iran liable to the plaintiffs in this action, on the basis of the evidence from *Kaplan* and the Clawson Declaration (DE 90).[6]

In respect to damages, plaintiffs request that the Court award them damages against Iran in the same amounts awarded them against BSPLC (and which they seek against BSI), but without trebling—as follows:

---

[6] The fact that the decedent was murdered in the Hezbollah Rocket Barrage, and that the decedent was and all plaintiffs (other than Ester Lelchook) are U.S. citizens, are supported by plaintiffs' declarations submitted in support of their motion for default judgment against BSPLC. (DE 162-163). Additionally, copies of the U.S. birth certificates of plaintiffs Alexander and Doris Lelchook, and the U.S. passports of the decedent and of plaintiffs Michal and Yael Lelchook, are attached to the Tolchin Declaration.

| | |
|---|---|
| **Ester Lelchook (as representative of decedent's estate):** | **$299,986** |
| **Alexander Lelchook:** | **$2,500,000** |
| **Estate of Doris Lelchook:** | **$5,000,000** |
| **Michal Lelchook:** | **$6,250,000** |
| **Yael Lelchook:** | **$6,250,000** |

Because the FSIA's private right of action for terrorist attacks, 28 U.S.C. § 1605A(c), does not presently grant a remedy to "survivors" of U.S. nationals, plaintiff Ester Lelchook does not seek an award against Iran in her individual capacity.

While the FSIA does not have a trebling provision like the ATA, it does specifically provide for punitive damages. 28 U.S.C. § 1605A(c)(4). ("damages may include economic damages, solatium, pain and suffering, and punitive damages"). Punitive damage awards under the FSIA serve multiple purposes:

> By creating these rights of action, Congress intended that the Courts impose a substantial financial cost on states which sponsor terrorist groups whose activities kill American citizens. This cost functions both as a direct deterrent, and also as a disabling mechanism: if several large punitive damage awards issue against a foreign state sponsor of terrorism, the state's financial capacity to provide funding will be curtailed.

*Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 33 (D.D.C. 1998).

Therefore, in addition to the traditional focus of punitive damages upon individual punishment and general deterrence, this law emphasizes specific deterrence of the transgressing state sponsors of terrorism so that future sponsorship may be prevented.

In this case, the evidence shows that Iran continuously supported, aided, and abetted a notorious terrorist organization whose modus operandi includes the targeting, brutalization and murder of American citizens and others. The character of these acts suggests a significant award of punitive damages. *Cf. Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222, 235 (D.D.C.

2002) (finding the character of the defendant's act—providing material support and resources to terrorist organizations—supported a punitive damage award of $300,000,000.00).

Plaintiffs respectfully request that the Court award them the largest amount of punitive damages which the Court deems appropriate, in order to realize the twin goals of the FSIA's terrorism exception, *i.e.* "both as a direct deterrent, and also as a disabling mechanism" for Iran's "financial capacity to provide funding" for terrorism. *Flatow*, 999 F. Supp. at 33.

**WHEREFORE**, the instant motion should be granted.

Dated:  Brooklyn, New York
November 30, 2022

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for the Plaintiffs*

by:  _____
Robert J. Tolchin

829 East 15th Street
Brooklyn, New York 11230
718-855-3627